**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No. 20-cv-24897-CMA**

SHTERNA PINCHASOV, Individually and on Behalf of
All Other Similarly Situated Plaintiffs,

      v.

ROBINHOOD FINANCIAL LLC,

          Defendant.

_____/

**DEFENDANT ROBINHOOD FINANCIAL LLC'S MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

I.      ROBINHOOD'S SELF-DIRECTED TRADING PLATFORM. ...................................... 2

II.     REGULATORY HALTS................................................................................................ 3

III.    PLAINTIFF'S CLAIMS. ............................................................................................... 4

ARGUMENT ........................................................................................................................ 4

I.      PLAINTIFF FAILS TO PLEAD A DUTY. ................................................................... 5

        A.      Plaintiff Does Not Allege Facts Giving Rise to a Duty of Care. ........................... 5

        B.      Plaintiff Does Not Allege Facts Giving Rise to a Fiduciary Duty......................... 6

II.     PLAINTIFF'S CLAIMS ARE BARRED BY THE CUSTOMER AGREEMENT. .......... 7

CONCLUSION..................................................................................................................... 8

## <u>TABLE OF AUTHORITIES</u>

CASES

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
    70 Cal. Rptr. 3d 199 (Cal. Ct. App. 2007) ...............................................................................6

*Arch Ins. Co. v. NCL (Bahamas), Ltd.*,
    No. 11-cv-20577, 2012 WL 4896045 (S.D. Fla. Oct. 15, 2012) ...............................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................4

*Brown v. Cal. Pension Adm'rs & Consultants, Inc.*,
    52 Cal. Rptr. 2d 788 (Cal. Ct. App. 1996) ..............................................................................6

*Cooper v. Meridian Yachts*,
    575 F.3d 1151 (11th Cir. 2009) ..............................................................................................5

*Franklin v. Ocwen Loan Servicing, LLC*,
    No. 17-cv-02702, 2017 WL 4922380 (N.D. Cal. Oct. 31, 2017) ............................................5

*Gomes v. Portfolio Recovery Assocs., LLC*,
    No. 18-cv-21872, 2018 WL 4179059 (S.D. Fla. Aug. 22, 2018) ............................................3

*Greenwood Nursery, Inc. v. Home Depot, U.S.A., Inc.*,
    No. 08-cv-216, 2008 WL 4181186 (N.D. Ga. Sept. 4, 2008) ..................................................2

*Hegyes v. Unjian Enters., Inc.*,
    286 Cal. Rptr. 85 (Cal. Ct. App. 1991) ..................................................................................5

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) ..............................................................................................2

*Kesner v. Super. Ct.*,
    384 P.3d 283 (Cal. 2016) ........................................................................................................5

*Koens v. Royal Caribbean Cruises, Ltd.*,
    774 F. Supp. 2d 1215, 1220 (S.D. Fla. 2011) .........................................................................5

*Lewis v. YouTube, LLC*,
    197 Cal. Rptr. 3d 219 (Cal. Ct. App. 2015) ...........................................................................8

*Petersen v. Sec. Settlement Corp.*,
    277 Cal. Rptr. 468 (Cal. Ct. App. 1991) ................................................................................6

*SFM Holdings v. Bank of Am. Sec.*,
    600 F.3d 1334 (11th Cir. 2010) ..................................................................2, 6

*Stewart v. J.P. Morgan Chase & Co.*,
    No. 02 Civ. 1936, 2004 WL 1823902 (S.D.N.Y. Aug. 16, 2004) ....................... 6-7

*Tunkl v. Regents of Univ. of Cal.*,
    383 P.2d 441 (Cal. 1963) ...............................................................................8

*Universal Express, Inc. v. S.E.C.*,
    177 F. App'x 52 (11th Cir. 2006) ....................................................................3

*Warren Tech., Inc. v. UL LLC*,
    962 F.3d 1324 (11th Cir. 2020) ...................................................................4, 6

### OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1

FINRA Rule 5260 ..................................................................................................4

NASDAQ Rule 4120(c) ..........................................................................................4

New York Stock Exchange Listed Company Manual § 202.07 ...................................4

Defendant Robinhood Financial LLC ("Robinhood") submits this memorandum in support of its motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's claims are based entirely on the incorrect premise that Robinhood – a provider of an online trading platform for self-directed investing – is obligated, in the event that a stock exchange temporarily halts trading in an individual stock, to override its customers' directions by cancelling any trade order placed prior to the halt and blocking any effort to use its platform to place or modify trade orders for that stock.  The Court should dismiss the Complaint because Plaintiff does not, and cannot, allege any basis for such a duty.

A T1 Halt – a temporary suspension of trading pending the release of material news about a company – allows investors time to digest the material news so that they can determine whether to adjust their position by entering orders to be executed once trading resumes or canceling pending orders that have not been executed.  When trading resumes, the stock price could go up or down, depending on the news.  As a result, automatically cancelling all pre-halt trade orders could deprive customers of the opportunity to get the best price available for some period of time.  It is therefore unsurprising that Plaintiff is unable to allege any basis for her claimed duty.  Plaintiff's conclusory assertion that Robinhood breached "the standard of care expected from similar professionals in the community" is unsupported by any authority, much less any factual allegation that any other broker-dealer takes such actions in the face of a temporary suspension of trading.  Plaintiff's equally conclusory assertion that Robinhood owes Plaintiff a fiduciary duty ignores the fact that Robinhood accounts are entirely self-directed and that Robinhood does not provide investment advice.

Plaintiff's claims are also barred by the clear and unambiguous terms of her contract with Robinhood.  Under the Customer Agreement, Plaintiff agreed that her use of the Robinhood trading platform was at her own "sole risk."  She further agreed that Robinhood does not provide investment advice and would have "no liability . . . or responsibility whatsoever" for any trading

1

losses, and specifically any losses resulting from a "suspension of trading" by an exchange, such as a T1 Halt – an agreement that squarely bars her claims.

The Court should dismiss the Complaint in its entirety, with prejudice.

## STATEMENT OF FACTS[1]

### I.     ROBINHOOD'S SELF-DIRECTED TRADING PLATFORM.

Robinhood is a broker-dealer registered with the Securities and Exchange Commission. (Compl. ¶ 2.)  Robinhood allows customers to invest in securities, commission-free, through an online trading platform.  (Compl. ¶¶ 3, 5, 12, 33.)  When a customer opens an account with Robinhood, he or she enters into a Customer Agreement with Robinhood.  A copy of the Customer Agreement is attached as Exhibit A to the accompanying Declaration of Elliot Greenfield ("Ex. A").[2]

The Customer Agreement expressly states that customer accounts are "self-directed," that each customer is "solely responsible for any and all orders" in his or her account, and that all orders are "unsolicited" and based on the customer's "own investment decisions."  (Ex. A § 5(A).)  Customers agree that Robinhood does not "provide investment advice," "recommend any security, transaction or order," "solicit orders," or "make discretionary trades."  (Ex. A § 5(A).)  Customers also acknowledge that any "research materials or similar information" that Robinhood provides "are intended for informational and educational purposes only" and "do not constitute a recommendation to enter into any securities transactions."  (Ex. A § 5(A); *see also*

---

[1]    The factual allegations in the Complaint are taken as true solely for purposes of this motion.

[2]    The Court may consider the Customer Agreement in deciding this motion to dismiss because the relationship giving rise to Plaintiff's claims derives from that contract.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (holding that documents "central" to plaintiff's claims and whose authenticity is not contested may be considered on a motion to dismiss); *see also SFM Holdings v. Bank of Am. Sec.*, 600 F.3d 1334, 1337 (11th Cir. 2010) (holding that contract between plaintiff investors and defendant investment advisors, though not attached to plaintiff's complaint, was properly considered at the motion-to-dismiss stage and that "relationship-forming contracts are central to a plaintiff's claim"); *Greenwood Nursery, Inc. v. Home Depot, U.S.A., Inc.*, No. 08-cv-216, 2008 WL 4181186, at *2 (N.D. Ga. Sept. 4, 2008) (considering contract on motion to dismiss, despite lack of breach of contract claim, "because the [contract] governs the entire business relationship between the Plaintiff and Defendant").

*id.* § 15.)  Because Robinhood accounts are entirely "self-directed," Robinhood is authorized only to carry out customers' "directions."  (Ex. A § 4.)

Customers also acknowledge their understanding that, "during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order."  (Ex. A § 13.)  Customers expressly agree that if they place market orders, they "agree to pay or receive the prevailing market price at the time" that the "market order is executed," and that the execution price "may be significantly higher or lower than anticipated at the time" the order was placed.  (Ex. A § 13.)

In accordance with the self-directed nature of the Robinhood platform, customers agree that their use of it is at their own "sole risk" and that Robinhood will not be liable to them "under any circumstances" or "have any responsibility whatsoever" for, among other things, any "consequential damages" including "trading losses, damages, [or] loss of profits."  (Ex. A § 17.) That limitation of liability extends to liability "asserted on the basis of contract, tort (including negligence), or otherwise."  (Ex. A § 17.)

In particular – as is relevant to this lawsuit – the Customer Agreement specifically provides that Robinhood "will have no liability . . . or responsibility whatsoever" for any losses resulting from "exchange rulings or suspension of trading."  (Ex. A § 17.)

## II.    REGULATORY HALTS.

Securities exchanges, such as the New York Stock Exchange and the Nasdaq Stock Market, have the authority to suspend trading in a security for various reasons.  As relevant here, a "T1 Halt" – or "news pending" halt – is a temporary suspension of trading in a security that occurs "when a company has pending news that may affect the security's price."[3]  (Compl. ¶ 17.)

---

[3]    *See Trading Halts and Delays*, U.S. Securities and Exchange Commission (July 23, 2010), https://www.sec.gov/fast-answers/answerstradinghalthtm.html.  The Court may take judicial notice of materials on the SEC website.  *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (courts may take judicial notice of "public documents" at the motion to dismiss stage); *Gomes v. Portfolio Recovery Assocs., LLC*, No. 18-cv-21872, 2018 WL 4179059 at *5 (S.D. Fla. Aug. 22, 2018) (information on government websites constitutes "public records" for the purposes of judicial notice).

Suspension of trading "typically lasts less than an hour," and allows market participants to have "time to assess the impact of the news."[4]

Once a trade halt is implemented to "permit the dissemination of [the] material news," the exchange itself will announce the halt.[5]  Brokers are prohibited from processing orders in that stock until the halt is over and trading reopens.[6]  Once the material news has been fully disseminated, the exchanges notify the public a few minutes prior that the halt is ending.[7]

## III.    PLAINTIFF'S CLAIMS.

Plaintiff asserts claims for negligence and breach of fiduciary duty based on allegations that Robinhood should have notified its customers of a T1 Halt that suspended trading in the stock of the Hertz Corporation in March 2020 and should have cancelled all trade orders in Hertz stock that were submitted prior to the halt.  (Compl. ¶¶ 18, 22, 51-63.)  Plaintiff alleges that she suffered economic losses when her pre-halt trade order was executed after the T1 Halt was lifted and "the market price of the stocks dropped significantly."  (Compl. ¶ 19.)

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Furthermore, on a motion to dismiss, the Court "is not required to credit conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts."  *Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020) (internal quotations omitted).

---

[4]    *See Trading Halts and Delays*, U.S. Securities and Exchange Commission (July 23, 2010), https://www.sec.gov/fast-answers/answerstradinghalthtm.html.

[5]    NASDAQ Rule 4120(c); New York Stock Exchange Listed Company Manual § 202.07.

[6]    FINRA Rule 5260.

[7]    NASDAQ Rule 4120(c); New York Stock Exchange Listed Company Manual § 202.07.

Plaintiff's claims are governed by California law pursuant to the choice-of-law provision of the Customer Agreement, which is broadly written to encompass disputes related to the Customer Agreement itself as well as any Robinhood customer account transactions.  (Ex. A § 36(K).)  *See Cooper v. Meridian Yachts*, 575 F.3d 1151, 1162 (11th Cir. 2009) (instructing courts to examine the scope of the choice-of-law provision and holding that a broadly written provision applies to tort claims).  Here, Plaintiff's claims are based solely on transactions made through Robinhood's trading platform.  (Compl. ¶¶ 18-20.)  Dismissal would also be required under Florida law for the same reasons stated below.

## I.     PLAINTIFF FAILS TO PLEAD A DUTY.

Plaintiff's claims must be dismissed for the simple reason that she fails to allege any basis for a duty to inform customers of T1 Halts or to cancel trade orders placed prior to a T1 Halt.  As a threshold matter, although broker-dealers operate in a highly-regulated industry, Plaintiff identifies no law, rule, or regulation that imposes such a duty.  Nor does Plaintiff identify any other factual basis that could give rise to claims for negligence or breach of fiduciary duty.

### A.     Plaintiff Does Not Allege Facts Giving Rise to a Duty of Care.

Plaintiff's negligence claim fails because she does not allege facts giving rise to a duty to cancel trade orders placed prior to a T1 Halt or prevent customers from using Robinhood's trading platform during a T1 Halt.  *See Kesner v. Super. Ct.*, 384 P.3d 283, 290-91 (Cal. 2016) (pleading negligence requires breach of a legal duty); *Hegyes v. Unjian Enters., Inc.*, 286 Cal. Rptr. 85, 88 (Cal. Ct. App. 1991) ("A complaint which lacks allegations of fact to show that a legal duty of care was owed is fatally defective."); *Franklin v. Ocwen Loan Servicing, LLC*, No. 17-cv-02702, 2017 WL 4922380, at *2-3 (N.D. Cal. Oct. 31, 2017) (dismissing negligence claim for failure to plead facts "sufficient to show the defendant owed the plaintiff a legal duty of care"); *Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1220 (S.D. Fla. 2011) (dismissing negligence claim under Florida law and holding that "merely pleading the existence of . . . duties without providing a factual basis for their imposition is insufficient to state a cause of action").

5

Plaintiff's conclusory assertion that Robinhood breached "the standard of care expected from similar professionals in the community" is insufficient to withstand a motion to dismiss. (Compl. ¶¶ 53-54.)  *Warren Tech.*, 962 F.3d at 1328.  Nowhere in the Complaint does Plaintiff allege any facts indicating that other broker-dealers cancel pre-halt trade orders or prevent customers from using their platforms during T1 Halts.

### B.      Plaintiff Does Not Allege Facts Giving Rise to a Fiduciary Duty.

Plaintiff's assertion of a fiduciary duty also fails, as she does not – and cannot – allege that Robinhood provides investment advice, makes investments on behalf of customers, or provides any other services that might give rise to a fiduciary duty.  Plaintiff again relies on wholly conclusory assertions of a fiduciary duty, unsupported by any factual allegations. (Compl. ¶ 60.)  *See Brown v. Cal. Pension Adm'rs & Consultants, Inc.*, 52 Cal. Rptr. 2d 788, 796-97 (Cal. Ct. App. 1996) (holding that plaintiff failed to plead a fiduciary relationship where there were no facts alleged demonstrating defendants had any "responsibility to advise [customers] with regard to the wisdom of their investment choices"); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 70 Cal. Rptr. 3d 199, 214-15 (Cal. Ct. App. 2007) (holding that plaintiff failed to plead a fiduciary duty in the absence of factual allegations demonstrating that defendant broker "was an adviser to the customer about investment decisions").

Because Plaintiff's account is self-directed, there is no fiduciary relationship between Robinhood and Plaintiff.  *See Brown*, 52 Cal. Rptr. 2d at 793-94 (holding that investors in self-directed IRA failed to state a claim for breach of fiduciary duty where the written agreement "unambiguously limited" defendants' duties to plaintiffs and advised that plaintiffs "were to make their own investment choices"); *Petersen v. Sec. Settlement Corp.*, 277 Cal. Rptr. 468, 473 (Cal. Ct. App. 1991) (holding that no fiduciary duty arises where a broker's relationship with a customer is "confined to the simple performance of transactions ordered by a customer"). California law on this issue is consistent with decisions in courts across the country.  *See*, *e.g.*, *SFM Holdings*, 600 F.3d at 1339 (affirming dismissal of fiduciary duty claim where contract made clear that defendant "was not acting as an adviser" or "provid[ing] investment advice to the customer"); *Stewart v. J.P. Morgan Chase & Co.*, No. 02 Civ.1936, 2004 WL 1823902, at *12

(S.D.N.Y. Aug. 16, 2004) (stating that "courts have consistently held that" no fiduciary relationship arises "where a brokerage client has a self-directed account") (citing cases).

The Customer Agreement is unambiguous on this point:  Customer accounts are "self-directed," each customer is "solely responsible for any and all orders" in his or her account, and all orders are "unsolicited" and based on the customer's "own investment decisions."  (Ex. A § 5(A).)  Robinhood does not "provide investment advice," "recommend any security, transaction or order," "solicit orders," or "make discretionary trades."  (Ex. A § 5(A).)   Plaintiff points to the fact that the Robinhood website has helpful links to articles about investing as well as an "Investing Basics" section on its website (Compl. ¶¶ 10-11), but the Customer Agreement includes an express acknowledgment that any "research materials or similar information" Robinhood provides "are intended for informational and educational purposes only" and "do not constitute a recommendation to enter into any securities transactions."  (Ex. A § 5(A); *see also id.* § 15.)  The Customer Agreement makes clear that Robinhood has no obligation to monitor account holdings in order to provide news or information about individual securities or to offer investment advice, much less to cancel all trade orders placed prior to a T1 Halt.

## II.    PLAINTIFF'S CLAIMS ARE BARRED BY THE CUSTOMER AGREEMENT.

Plaintiff's claims must also be dismissed for the independent reason that they are barred by the Customer Agreement.  *First*, although Plaintiff alleges that she lost money because her pre-halt trade order in the stock of the Hertz Corporation was executed after the trading resumed and the market price had "dropped significantly" (Compl. ¶ 19), Plaintiff acknowledged in the Customer Agreement her understanding that, "during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order."  (Ex. A § 13.)  Plaintiff also agreed that, when she places a market order, she "agree[s] to pay or receive the prevailing market price at the time" that the "market order is executed," and that the execution price "*may be significantly higher or lower than anticipated* at the time" the order was placed.  (Ex. A § 13 (emphasis added).)

*Second*, Plaintiff expressly agreed that her use of the Robinhood trading platform was at her own "*sole risk*" and that Robinhood will not be liable to her "under any circumstances" or

"have any responsibility whatsoever" for, among other things, any "consequential damages" including "*trading losses*, damages, [or] loss of profits." (Ex. A § 17 (emphasis added).) That limitation of liability extends to liability "asserted on the basis of contract, tort (including negligence), or otherwise." (Ex. A 17.) Plaintiff thus agreed that Robinhood cannot be held liable for her alleged trading losses. (Compl. ¶¶ 19, 57, 61.)

*Third*, there can be no doubt that that the limitation of liability extends to the facts of this case, as Plaintiff specifically agreed that Robinhood "will have no liability . . . or responsibility whatsoever" for any losses resulting from "exchange rulings or *suspension of trading*." (Ex. A § 17 (emphasis added).) Losses allegedly resulting from a T1 Halt – a "suspension of trading" by a stock exchange – fall squarely within that clause. (Compl. ¶ 17.)

"Limitation of liability clauses have long been recognized as valid in California." *See Lewis v. YouTube, LLC*, 197 Cal. Rptr. 219, 224 (Cal. Ct. App. 2015) (internal quotation omitted). Such clauses are particularly appropriate where, as here, "one party is offering a service for free to the public." *Id.* California courts generally uphold exculpatory clauses so long as they are not contrary to public policy under specified criteria, such as whether the "party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public." *Tunkl v. Regents of Univ. of Cal.*, 383 P.2d 441, 445 (Cal. 1963) (finding an exculpatory clause in a contract between a hospital and its patients against public policy). Here, Plaintiff does not allege that Robinhood's services are of great public importance or that she did not have a choice of trading platforms to use for her investments. Florida courts also find exculpatory clauses valid and enforceable where, as here, the "intention is made clear and unequivocal." *Arch Ins. Co. v. NCL (Bahamas), Ltd.*, No. 11-cv-20577, 2012 WL 4896045, at *4 (S.D. Fla. Oct. 15, 2012).

## CONCLUSION

For the reasons set forth herein, the Court should grant Defendant's motion to dismiss.

Dated:  December 21, 2020                Respectfully submitted,

By: */s/ Grace L. Mead*_____ _____
Grace Mead
Florida Bar No. 49896
Ryan Thornton
Florida Bar No. 99195
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street
Suite 2200
Miami, Florida 33130
Telephone: 305-789-3559
Email: gmead@stearnsweaver.com
Email: rthornton@stearnsweaver.com

Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York  10022
Telephone: 212.909.6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By:___*Grace L. Mead*_____
        GRACE L. MEAD

**SERVICE LIST**

Michael A. Citron, Esq.
Florida Bar No.: 105083
MAC LEGAL, P.A.
3100 N 29th Ct., Suite 100
Hollywood, Florida 33020
Telephone: (954) 395-2954
Michael@maclegalpa.com – Correspondence
Service@maclegalpa.com - Service Address

Igor Hernandez, Esq.
Florida Bar No. 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Phone (305) - 780 – 6058
service@CHGLawyers.com
ihernandez@chglawyers.com

R. Levy, Esq.
Florida Bar No.: 15452
Venessa Valdes Solis, Esq.
Florida Bar No. 77122
LEVY & PARTNERS, PLLC
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Telephone: (954) 727-8570
elevy@lawlp.com – Service Address
venessa@lawlp.com – Service Address
Maritza@lawlp.com – Service Address