UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-24897-CIV-ALTONAGA/Torres

**SHTERNA PINCHASOV**,

    Plaintiff,

v.

**ROBINHOOD FINANCIAL, LLC**,

    Defendant.

_____ /

## ORDER

**THIS CAUSE** is before the Court on Plaintiff, Shterna Pinchasov's Motion for Remand [ECF No. 24], filed on December 30, 2020. Defendant, Robinhood Financial, LLC filed a Response in Opposition [ECF No. 33], to which Plaintiff filed a Reply [ECF No. 35]; Defendant concluded with a Sur-Reply [ECF No. 37]. The Court has carefully considered the Complaint [ECF No. 1-1], the parties' written submissions, and applicable law. As further explained, the Court has subject matter jurisdiction over this action, and the Motion is thus denied.

### I.    BACKGROUND

**A.    Plaintiff's Allegations**

Plaintiff — a customer of Defendant — brings this putative class action against Defendant, a securities broker-dealer, for Defendant's failure to inform its customers of stock trading halts, causing financial losses to Plaintiff and other customers. (*See generally* Compl.).

Defendant operates an online trading platform through which it buys and sells securities on behalf of its users. (*See id.* ¶¶ 2–3, 5). Defendant's online interface provides financial information to customers, including stock pricing and market data. (*See id.* ¶¶ 5–6, 12). Customers place trade orders on Defendant's platform, which are then executed on a stock exchange. (*See*

*id.* ¶¶ 2–3, 5–6). Distinguishing itself from other trading interfaces, Defendant promotes itself as "approachable" to the inexperienced trader. (*Id.* ¶¶ 8–11).

Exchanges occasionally issue halts on certain stocks, suspending trading for a short period of time. (*See id.* ¶ 17). A "T1 Halt" suspends trading on a stock when a company "is pending the release of material news which is likely to lead to abnormal volatility in said company's stock price." (*Id.*). No trades are executed on the halted stock during the temporary suspension. (*See id.*).

In March 2020, a T1 Halt was placed on Hertz Corporation stock. (*See id.* ¶ 18). Defendant's trading platform did not inform online customers of the halt, and during the temporary suspension, Plaintiff and other customers ordered trades involving the Hertz stock without notice of the halt. (*See id.*). When the T1 Halt was lifted, Defendant executed Plaintiff's pending Hertz stock orders, the price of which "had dropped significantly" — resulting in large losses to Plaintiff and other customers. (*Id.* ¶ 19). Plaintiff contends Defendant "should have . . . cancelled, terminated or otherwise halted[]" the trading of Hertz stock during the T1 Halt. (*Id.* (alterations added)). This failure affects all of Defendant's customers trading stocks under T1 Halts because Defendant's interface systemically fails to inform customers of relevant T1 Halts, instead allowing online customers to place orders on halted stocks. (*See id.* ¶¶ 22, 43–45).

**B. Procedural History**

Plaintiff filed this action in the Circuit Court of the 11th Judicial Circuit of Florida in and for Miami-Dade County. (*See generally* Compl.). In Count I, Plaintiff alleges Defendant was negligent toward its customers by failing to provide T1 Halt information and prevent customers from ordering trades on the halted stock. (*See id.* ¶¶ 52–58). In Count II, Plaintiff claims Defendant breached its fiduciary duty to its customers when it failed to inform them of the T1 Halt and prevent them from using its interface on the halted stock. (*See id.* ¶ 60–63).

Defendant removed the action, alleging federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). (*See generally* Notice of Removal). Plaintiff now moves to remand, claiming two of the CAFA's exceptions to federal jurisdiction apply to her claims. (*See generally* Mot.; Reply).

## II. STANDARDS

When removal is contested, the removing party must establish subject matter jurisdiction before a case can proceed on the merits. *See Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("[T]he party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." (alteration added)). This is because "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994) (alteration added).

The CAFA provides federal district courts with original jurisdiction over class actions satisfying the following requirements at the time such lawsuits are filed: (1) the total amount in controversy, aggregating the claims of the individual class members, exceeds $5,000,000, exclusive of interests and costs; (2) any member of the putative class is a citizen of a state different from any defendant; and (3) there are at least 100 putative class members. *See* 28 U.S.C. §§ 1332(d)(2), (5); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

Generally, courts should strictly construe the requirements of removal jurisdiction and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). However, "no antiremoval presumption attends cases invoking [the] CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (alteration added; citations omitted). The Eleventh Circuit recognizes *Dart Cherokee Basin Operating Co.* removed "any presumption in favor of remand in deciding CAFA jurisdictional questions." *Dudley v. Eli*

*Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014) (citation omitted); *see also Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) ("[T]here is no presumption against removal in CAFA cases." (alteration added; citing *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89)).

### III.   DISCUSSION

Plaintiff does not dispute the present action satisfies the CAFA's basic jurisdictional requirements.[1]  (*See* Mot. 8).  Instead, Plaintiff argues the Court lacks jurisdiction under two CAFA exceptions.  (*See generally* Mot.; Reply).  Under these exceptions, CAFA jurisdiction:

> shall not apply to any class action that solely involves a claim— [(1)] concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 and section 28(f)(5)(E) of the Securities Exchange Act of 1934; . . . [or (2)] that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933) . . . and the regulations issued thereunder).

28 U.S.C. §§ 1332(d)(9)(A), (C) (alterations added; citations and footnote call numbers omitted). These two exceptions are respectively called the "covered security exception" and "securities-related exception."  *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 331 (4th Cir. 2019) (quotation marks and footnote call number omitted).

Parties invoking statutory exceptions to jurisdiction "bear the burden of showing that at least one of the exceptions does apply."  *Hunter v. City of Montgomery, Ala.*, 859 F.3d 1329, 1335 (11th Cir. 2017) (citations omitted).  Thus, on a motion to remand, "[o]nce [the] CAFA's initial jurisdictional requirements have been established by the party seeking removal . . . the burden shifts to the party seeking remand to establish that one of [the] CAFA's express jurisdictional exceptions applies."  *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010)

---

[1] Defendants allege jurisdiction under the CAFA: (1) more than $5,000,000, exclusive of interests and costs, are in controversy (*see* Notice of Removal ¶¶ 7–9); (2) a member of each putative class is a citizen of a different state than Defendant's (*see id.* ¶¶ 10–11); and (3) there are at least 100 putative class members in each class (*see id.* ¶¶ 11–15).

(alterations added; citations omitted); *accord Dominion Energy, Inc.*, 928 F.3d at 335–36 ("Under [the] CAFA, the removing party bears the burden of establishing federal jurisdiction over a class action, but the party seeking remand has the burden of proving that one of [the] CAFA's three exceptions to removal applies." (alterations added; citations omitted)).

After examining the CAFA's legislative history, the Eleventh Circuit described the CAFA's grant of jurisdiction as "broad . . . with only narrow exceptions." *Evans*, 449 F.3d at 1164 (alteration added; citation omitted). It follows that courts should "construe and apply [the] CAFA's grant of federal jurisdiction broadly, and to apply the three removal exceptions in a narrow fashion." *Dominion Energy, Inc.*, 928 F.3d at 336 (alteration added; citations and footnote call number omitted); *accord Westerfeld*, 621 F.3d at 822 (The "CAFA grants broad federal jurisdiction over class actions and establishes narrow exceptions to such jurisdiction." (citation omitted)).

The Court considers whether Plaintiff has met her burden to show the covered security and securities-related exceptions apply, discussing each in turn.

**A.     The Covered Security Exception**

Plaintiff argues the covered securities exception applies to her claims because Hertz stock is, by definition, a covered security. (*See* Reply 6). The covered security exception, however, only "carves out class actions for which jurisdiction exists elsewhere under federal law, such as under the Securities Litigation Uniform Standards Act ('SLUSA'), *i.e.*, state-law fraud claims in connection with the purchase or sale of securities traded on a national stock exchange[.]" *Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) (alteration added; citation omitted); *accord Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012).

Plaintiff falls short of showing the covered security exception's applicability, relying only on the fact that Hertz stock satisfies the definition of "covered security." (Reply 6). Plaintiff cites

5

no authorities expanding the covered security exception to include Plaintiff's negligence and breach-of-fiduciary-duty claims — indeed, Plaintiff altogether neglects to discuss authorities applying the exception.

*Dominion Energy* is instructive. *See generally* 928 F.3d 325. The *Dominion Energy* plaintiffs brought class actions in state courts alleging aiding and abetting breach-of-fiduciary-duty claims relating to stocks during a merger. *See id.* at 329. The defendants removed under the CAFA, consolidating the cases in one district court; in requesting remand, the plaintiffs argued that the covered security exception applied. *See id.* at 329, 336 n.10. The district court granted the motions to remand, and the defendants appealed. *See id.* at 329. Upon review, the Fourth Circuit reasoned the covered security exception generally only applies to state-law fraud claims and thus "explicitly recognized" — notwithstanding the plaintiffs' abandonment of the argument — "the covered security exception is inapplicable to the [breach-of-fiduciary-duty] claims alleged[.]" *Id.* at 336 n.10 (alterations added; citing *Cardarelli*, 527 F.3d at 30). The *Dominion Energy* court concluded none of the CAFA's exceptions applied and reversed the district court's remand orders. *See id.* at 343.

Mindful of the obligation to apply the CAFA's exceptions narrowly — and persuaded by the rationale provided in *Dominion Energy*, *Appert*, and *Cardarelli* — the Court determines Plaintiff's negligence and breach-of-fiduciary claims do not fall within the covered security exception.

**B.    The Securities-Related Exception**

The CAFA exempts from federal jurisdiction actions involving claims which "relate[] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security[.]" 28 U.S.C. § 1332(d)(9)(C) (alterations added). The securities-related exception does not apply to "any and all claims that relate to any security," because such a broad

6

reading would render meaningless the other two securities exceptions in section 1332(d)(9). *Appert*, 673 F.3d at 620 (internal quotation marks omitted; citing *Cardarelli*, 527 F.3d at 31). Rather, determining whether the securities-related exception applies requires identifying "the source of the right that the plaintiff's claim seeks to enforce." *Greenwich Fin. Serv. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 29 (2d Cir. 2010). The exception would then apply if the source of the right "arises from an appropriate instrument," *id.*, or "duties superimposed by state law *as a result of the relationship created by or underlying a security*." *Dominion Energy, Inc.*, 928 F.3d at 341 (alteration adopted; emphasis added; internal quotation marks omitted; quoting *Eminence Inv'rs, LLLP v. Bank v. N.Y. Mellon*, 782 F.3d 504, 510 (9th Cir. 2015)).

Plaintiff argues the securities-related exception applies because Defendant "owed a duty to Plaintiff and the Class Members as its [sic] fiduciary to inform them of information surrounding certain stocks, as it advertised to, and provided this service for, its customers. . . . This duty included informing customers of T1 Halts." (Mot. ¶ 22 (alteration added; quoting Compl. ¶ 60)). Plaintiff also contends she is bringing this action "based on her status as a holder of Hertz stock" and therefore Defendant's duty to Plaintiff "arose because of Plaintiff's ownership of the stock." (*Id.* ¶ 26).

In support, Plaintiff relies on *Greenwich Financial Services Distressed Mortgage Fund 3 LLC*, 603 F.3d 23, and *BlackRock Financial Management Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 178 (2d Cir. 2012).[2] In *Greenwich Financial Services Distressed Mortgage Fund 3 LLC*, holders of mortgage-backed securities sued to force lenders to buy back

---

[2] (*See* Mot. ¶ 25 (citing *Greenwich Fin. Serv. Distressed Mortg. Fund 3, LLC*, 603 F.3d at 29); Reply 3 (citing *Greenwich Fin. Serv. Distressed Mortg. Fund 3, LLC*, 603 F.3d at 29; and *BlackRock Fin. Mgmt. Inc.*, 673 F.3d at 179)).

loans pursuant to pooling and service agreements — agreements defining the rights, duties, and obligations of parties administering mortgage securities. *See* 603 F.3d at 25. Despite the plaintiffs not being parties to the pooling and service agreements, the *Greenwich Financial Services* court applied the securities-related exception, finding the *sources* of the security holders' claims were the pooling and service agreements, instruments separate from the securities themselves but nevertheless enumerating security holders' rights. *See id.* at 29. Similarly, in *BlackRock Financial Management Inc.*, the Second Circuit found the plaintiffs' claims to enforce "duties and obligations arising from the [pooling and service agreements] and [corresponding] fiduciary duties superimposed by state law" triggered the securities-related exception. *BlackRock Fin. Mgmt. Inc.*, 673 F.3d at 178 (alterations adopted; other alterations added; internal quotation marks omitted)). In both *Greenwich Financial Services* and *BlackRock Financial Management*, the sources of the rights the plaintiffs sought to enforce were agreements defining how trustees administered mortgage securities — creating relationships *between the trustees and the securities holders*, thus satisfying the securities-related exception.

The Court is unpersuaded by Plaintiff's argument, and her authorities are inapposite. Despite Plaintiff declaring in her Motion the Hertz security as the source of her action, Plaintiff's allegations reveal otherwise. The proposed class includes "[a]ll former and current Customers of Robinhood . . . who were affected by Robinhood's failure to prevent customers from using its interface for stocks which were subject to a T1 Halt" — *not merely Hertz shareholders.* (Compl. ¶ 40 (alterations added)). Plaintiff also describes Defendant's purported duties as owed to all its customers because Defendant was their securities broker. (*See* Compl. ¶ 13 ("[Defendant's] duty of care is owed by [Defendant] to *all of its customers*." (alteration and emphasis added))). Unlike the relationships arising from pooling and service agreements in *Greenwich Financial Services*

8

and *BlackRock Financial Management*, Plaintiff's customer-broker relationship with Defendant is not a relationship "created by or underlying a security[,]"[3] but rather a relationship arising solely from Plaintiff's decision to be Defendant's customer (*see* Compl. ¶ 37).

Plaintiff's negligence and breach-of-fiduciary-duty claims appear rooted in customer protection, rather than a relationship created by or underlying a security.[4] This is illustrated by considering the duty Plaintiff alleges Defendant owes its customers — to notify customers of T1 Halts and prevent trades from being placed on halted stocks. This duty would presumably be owed to customers whether or not the customers were shareholders of the halted stocks. Plaintiff therefore fails to show the source of Defendant's duties is a relationship created by or underlying a security.

Plaintiff also argues her claims seek to enforce duties imposed on persons who administer securities because Defendant, a broker-dealer, administers securities. (*See* Mot. ¶¶ 21–24 (quoting *Dominion Energy, Inc.*, 928 F.3d at 331); *see also* Reply 3–4). But Plaintiff's argument misses the mark. Even if Defendant "administers" securities, which Plaintiff fails to show,[5] the source of the alleged duties must still arise from an appropriate instrument or relationship created by or

---

[3] *Dominion Energy, Inc.*, 928 F.3d at 341 (alteration adopted; last alteration added; internal quotation marks and citation omitted).

[4] For example, broker-dealers owe customers a "duty of best execution," rooted in "the common law agency duty of loyalty" and codified in FINRA's rules. FINRA, Regulatory Notice 15-46 (2015). This duty serves to protect customers by obligating broker-dealers to "exercise reasonable care to obtain the most advantageous term for the customer." *Id.*; *see also* FINRA Rule 5310 (stating a broker-dealer "shall use reasonable diligence to ascertain the best market for the subject security and buy or sell in such market so that the resultant price to the customer is as favorable as possible under prevailing market conditions"). This duty arises from a *broker-customer relationship*, not a relationship created by or underlying a security.

[5] Plaintiff insists the Court should apply the ordinary meaning of "administer," claiming Defendant administers securities by "carrying out and overseeing" the buying and selling of stocks. (Reply 5). To the extent Defendant administers anything, however, it appears Defendant administers securities trade orders, not the securities themselves. (*See* Compl. ¶¶ 2–3 (alleging Defendant is a broker-dealer "in the business of buying and selling securities . . . on behalf of its customer[s]" (alterations added))).

underlying a security. *See Greenwich Fin. Serv. Distressed Mortg. Fund 3, LLC*, 603 F.3d at 29 ("The focus of the inquiry is on the source of the right that the plaintiff's claim seeks to enforce."); *Blackrock Financial Management*, 673 F.3d at 179 ("[D]uties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the [securities-related exception]." (alterations added)).

The Court declines to apply the securities-related exception; Plaintiff has not met her burden to show her claims seek to enforce duties relating to a security or imposed on persons administering securities. *See, e.g.*, *Cardarelli*, 527 F.3d at 31–32 (refusing to apply the securities-related exception to state-law consumer fraud claims brought by purchasers of securities against the sellers of those securities).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff fails to show the CAFA's covered security or securities-related exception applies. Accordingly, it is

**ORDERED** and **ADJUDGED** that Plaintiff, Shterna Pinchasov's Motion for Remand **[ECF No. 24]** is **DENIED**. Plaintiff must respond to Defendant's Motion to Dismiss **[ECF No. 21]** by February 26, 2021.

**DONE AND ORDERED** in Miami, Florida, this 16th day of February, 2021.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record