**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
(Miami Division)

**CASE NO. 20-CV-24897-CMA**

SHITERNA PINCHASOV, Individually and
on Behalf of All Others Similarly Situated,

      Plaintiff(s),

          v.

ROBINHOOD FINANCIAL LLC,

      Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

### A. INTRODUCTION

Defendant Robinhood's Motion to Dismiss [D.E. 21] (the "Motion") entirely and perhaps conveniently confounds Plaintiff's claim here. D.E. 1-1. Defendant's Motion attempts to insulate itself from liability for common law negligence despite an unmistakable parade of assurances it strategically uses to lure novice market participants like Plaintiff (the "novices") into using its "deliberately engineered" investment platform. It is that very platform, which failed to provide the specific services Robinhood has repeatedly assured those targeted novices they would receive. Defendant's attempt to avoid liability by and through its Motion, is riddled with foibles that would require in-part this Honorable Court disregard fundamental rules of evidence to consider.

Plaintiff, SHITERNA PINCHASOV, like so many of other Plaintiffs now pursuing litigation against Robinhood, is a novice trader- the precise "target" of Robinhood's "deliberately engineered systems." *Id*. at ¶5.  Despite Robinhood's claims in this Action to the contrary, they

1

repeatedly publish their assurances to their prospective and existing customer-base throughout each of their access points. Whether they be through Defendant's financial trading application, or on Robinhood's website, Defendant goes to great length to undertake responsibilities, duties, for its targeted "newcomer" investor. *Id*. at ¶¶5-12. Robinhood's own words prove that specific duties were undertaken, and as the Complaint sufficiently pleads, those duties were unmistakably breached. D.E. 1-1.[1]

Robinhood in a pseudo- paternalistic manner assures each of their targeted novices that Robinhood is "not the marble office buildings of Wall St.," and instead is "lowering barriers, removing fees, and providing greater access to financial information" to "create a financial system everyone can participate in." *Id*. Defendant's Motion [D.E. 21] appears to try and fall on the proverbial sword of false advertising to side-step its breach of duty by failing to provide novices like Plaintiff even the most basic financial information despite its platform assuring otherwise. And although Defendant claims some sort of inability to interfere with its customer's directions [D.E. 21], both the Customer Agreement that is improperly relied upon by Defendant [D.E. 22-1] to disclaim its negligence by way of its Motion to Dismiss, and the headlines of nearly every publication and news program available worldwide, makes clear that is simply not true. *See e.g.*, 1:21-cv- 20414-CMA at D.E. 1; *Testimony of Vladimir Tenev: February 18, 2021 Hearing Before the United States House of Representatives Comm. on Financial Services*, (2021) (Testimony of Vladimir Tenev), https://docs.house.gov/meetings/BA/BA00/20210218/111207/HHRG-117-BA00-Wstate-TenevV-20210218.pdf at Pp. 2, 7, 9-11; Tory Newmyer, *Congress Presses*

---

[1] While the parent company Robinhood Markets, Inc. may not need to be registered with FINRA as it is a mere parent company that wholly owns a broker-dealer subsidiary, the entities and individuals involved in executing, settling, and clearing trades, as Defendant, Robinhood Financial, LLC, is here, are all licensed and registered with FINRA.

*Robinhood CEO On Company's Role In Gamestop Stock Frenzy* (Feb. 18, 2021), https://www.washingtonpost.com/business/2021/02/18/gamestop-robinhood-citadel-roaring-kitty-hearing-live-updates/. Although Defendant presents in its preliminary statement that canceling pre-halt trade orders could deprive customers, according to Defendant's Chief Executive Officer Vladimir Tenev ("Mr. Tenev"), during his testimony before Congress, shows that Robinhood can restrict customers' trading on a whim, at Defendant's "sole discretion and without prior notice." *Testimony of Vladimir Tenev: February 18, 2021 Hearing Before the United States House of Representatives Comm. on Financial Services*, (2021) at Pp. 10-11. Mr. Tenev's testimony at points invoked the SEC as its guiding principle to welcome broker-dealers like Defendant, restricting trading to avoid offending investor compliance requirements- that is comforting considering that improperly introduced Customer Agreement relied upon by Defendant also assures the targeted novice that "Robinhood will comply with requirements of applicable law regarding the order of posting transactions" [D.E. 22-1 at Pg. 28], something that simply did not happen here.

Defendant asserts that Plaintiff made a "conclusory assertion that Robinhood breached 'the standard of care expected from similar professionals in the community.'" [D.E. 21 at Pg. 5]. Defendant made this assertion despite knowing that other broker-dealers take actions such as those Plaintiff sufficiently alleged the Defendant had failed to do in the face of trading requirements and compliance. *E.g.*, *Testimony of Vladimir Tenev: February 18, 2021 Hearing Before the United States House of Representatives Comm. on Financial Services*, (2021) at Pg. 8 (citing See Mark DeCambre, GameStop and AMC Trading Restricted by TD Ameritrade, Schwab, Robinhood, Others, MarketWatch (Jan. 27, 2021), https://www.marketwatch.com/story/gamestop-amc-trading-is-now-beingrestricted-at-td-ameritrade-11611769804). Ironically, Defendant's

December 21, 2020 Motion [D.E. 21], has been perhaps inadvertently belied by the actions Defendant took in January 2021, regarding GAMESTOP. *Id.* The GAMESTOP fiasco, which elicited Robinhood's trading restrictions, restrictions Defendant's Motion claimed it cannot implement on its "self-directed" financial platform, was as Mr. Tenev testified- to ensure regulatory compliance. *Testimony of Vladimir Tenev: February 18, 2021 Hearing Before the United States House of Representatives Comm. on Financial Services*, (2021) at Pg. 8.   Here too, regulatory compliance was required, but the Defendant's deliberately engineered financial trading platform aimed at a targeted novice investor, failed. That failure harmed Plaintiff and those similarly situated to her. Even still, Plaintiff pushes back on the bare assertion that Defendant's engineered platform, is truly self-directed.  Defendant's "transparency" regarding its discretion to override its customers' orders to ensure regulatory compliance, emphasizes that Robinhood's financial trading platform is not so truly self-directed, after all.

Thus, Plaintiff(s), SHITERNA PINCHASOV, Individually and on Behalf of All Others Similarly Situated, by and through her undersigned counsel, files this response in opposition to Defendant, ROBINHOOD FINANCIAL LLC, Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and ask this Honorable Court deny the Defendant's Motion, or in the alternative should this Honorable Court agree with Defendant, afford Plaintiff the ability to amend its Complaint [D.E. 1-1], as filed.

## B.  LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. See Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint does not need detailed factual allegations, but

"a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. State of Alabama, 30 F.3d 117, 120 (11th Cir. 1994) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1182 (9th Cir. 2016).

## C. ARGUMENTS AND MEMORANDUM OF LAW.

### i.     Plaintiff disputes the authenticity of the Customer Agreement.

Initially, the Court may not consider the Customer Agreement Defendant refers to in its Motion to Dismiss, as Plaintiff disputes the authenticity and validity of same. Although a document not attached to the Complaint may be considered on a Motion to Dismiss, it must be referred to in the Complaint, central to Plaintiff's claim, and undisputed. Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference,

we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."). Defendant states no facts related to how and when this Customer Agreement was disseminated to and/or accepted by Plaintiff, if Plaintiff even saw this Agreement, if it was manually or electronically signed, if it was clickwrap[2], shrinkwrap or browsewrap, if Plaintiff received a final copy or if this Agreement was amended and when, or what the original agreement stated.[3] Because Plaintiff disputes the authenticity and validity of this Agreement, it cannot be considered as part of the Motion to Dismiss. Keh v. Americus & Sumter Cty. Hosp., 377 F. App'x 861, 866 (11th Cir. 2010) (the court denied considering the document under the incorporation by reference doctrine as the opposing party contested the validity of same and therefore it was not undisputed).

Further, the allegations in the Complaint are not linked to or dependent on the Customer Agreement, and the Complaint does not mention or incorporate by reference the Customer Agreement. The causes of action are based on common law. As such, the Agreement is not central to the Plaintiff's claim. Because it is not referred to in the Complaint, or central to Plaintiff's claim, this Court is precluded from reviewing same on a Motion to Dismiss. Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by

---

[2] Even though courts have ruled some clickwrap licenses to be enforceable contracts, it does not follow that every term of every clickwrap license is enforceable. Clickwrap licenses must still meet the criteria for enforceability of a unilateral form contract. For example, see Bragg v. Linden Research, Inc., 487 F.Supp.2d 593 (E.D. Pa. 2007), in which the judge found certain aspects of the Second Life clickwrap agreement "unconscionable, and therefore unenforceable."

[3] While the internet has changed the factual circumstances in which courts must apply these principles, the requirement of "'mutual manifestation of assent, whether by written or spoken word or by conduct, [remains] the touchstone of contract.'" Three paradigmatic contract formation situations arising on the internet, "clickwrap," "shrinkwrap," and "browsewrap" agreements, illustrate the application of the assent requirement in similar circumstances to those at issue here. Savetsky v. Pre-Paid Legal Servs., Inc., Case No. 14-03514 SC, 6 (N.D. Cal. Feb. 12, 2014) (citations omitted).

reference, we may also consider documents attached to the motion to dismiss if they are *referred to in the complaint, central to the plaintiff's claim,* and of undisputed authenticity.") (Emphasis added).

Finally, Defendant's Declaration should not be considered. All affidavits must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence. Macuba v. DeBoer, 193 F.3d 1316, 1322-23 (11th Cir. 1999). Defendant's Declaration is not based on personal knowledge, as there is no indication of same in the Declaration. It does not contain matters admissible into evidence, as the matters therein are irrelevant - the causes of action do not implicate the Agreement, the Declaration nor the Agreement mention that this Agreement is between Plaintiff and Defendant, and there is no indication that Plaintiff ever even saw or agreed to same.  As such, the Agreement and Declaration should be invalidated and not considered as part of the Court's review of the Motion to Dismiss.

    ii.    **Even if the account is self-directed, fiduciary duties still arise.**

Defendant states customer accounts are "self-directed" to show it has no duty to Plaintiff [DE 21 – Pg. 2]. It goes on to point to provisions in the Agreement that equate to each customer being responsible for their own orders and that Defendant does not provide investment advice. Defendant then states that because Defendant accounts are self-directed, it is only authorized to carry out customer directions and owes no other duty to Plaintiff. However, case law shows that fiduciary relationships are a matter of factual inquiry for each case.

> [A] fiduciary relationship may be implied and premised upon the specific factual situation surrounding the transaction and the relationship of the parties. Unless the relationship is formed through an express agreement, whether a fiduciary relationship exists is necessarily fact-specific to a particular case. Therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6) because it is often impossible to say that a plaintiff will be unable to prove the existence of a fiduciary relationship.

<u>Catano v. Capuano</u>, No. 18-20223-Civ-TORRES, 2020 U.S. Dist. LEXIS 23250, at *36-37 (S.D. Fla. Feb. 11, 2020) (citations omitted).

### a. Fiduciary duties arise from the relationship of the parties and the Rules.

Taking Defendant's position as true for purposes of this argument, a self-directed account would be akin to a non-discretionary account, where "the broker acts only upon the customer's instructions and the customer determines all purchases and sales". <u>Prudential Bache Secur., Inc. v. Pitman</u>, Civil Action File No. 1:89-CV-85-JTC, 1991 U.S. Dist. LEXIS 10056, at *10-11 (N.D. Ga. Apr. 4, 1991). Defendant acknowledges in its Motion that "brokers are prohibited from processing orders in that stock until the halt is over and trading reopens"[4]. Since Defendant has a simple duty to process orders for Plaintiff, then it follows that brokers would have a duty to advise Plaintiff of a halt that affects her order or prevent her from placing an order during a halt.

> As long as the customer so directs, the broker may embark upon a course of speculative trading without violating any duty to the customer. The only duties imposed upon the broker in [a non-discretionary account] are *the minimal duty to inform the customer of the risks involved in purchasing or selling a particular security or investment and the duty to not misrepresent any material facts regarding a transaction. The extent of these "informational" duties varies depending upon the intelligence and experience of the customer.*

<u>Prudential Bache Secur., Inc. v. Pitman</u>, Civil Action File No. 1:89-CV-85-JTC, 1991 U.S. Dist. LEXIS 10056, at *10-11 (N.D. Ga. Apr. 4, 1991) (Emphasis added).

Importantly, the duty also arises from an industry norm and Rule. FINRA Rule 5260 states:

> (a) No member or person associated with a member shall, directly or indirectly, effect any transaction or publish a quotation, a priced bid and/or offer, an unpriced indication of interest (including "bid wanted" and "offer wanted" and name only indications), or a bid or offer accompanied by a modifier to reflect unsolicited customer interest, in any security as to which a trading halt is currently in effect. . . .

This is what Plaintiff referred to in her Complaint when she states that Defendant has "a duty of care in accordance with the standard of care used by similar professionals in the community".

---

[4] Defendant does not explain FINRA Rule 5260 correctly. It does not state "prohibited from processing orders"; it states "effect any transaction".

Defendant still had a "quotation, a priced bid and/or offer" up on its website during the T1 Halt at the time Plaintiff made her order, which was how Plaintiff was able to place the market order during the T1 Halt. According to the FINRA Rule, no prices are to be published during the T1 Halt. The FINRA Rule that applies to all broker-dealers, coupled with the inexperience of the investors Defendant specifically advertises to, creates a duty in Defendant to inform Plaintiff, and others similarly situated, of T1 Halts; to prevent investors from placing orders on its website; or at a very minimum, not to place price quotations, bids or offers on stocks on their websites during T1 Halts for specific stocks so investors could not place orders. Currently, when attempting to place a market order on Robinhood's website during a T1 Halt, a notification pops up that states you are not allowed to place the order because a T1 Halt is in place. No such notification or pop up was available when Plaintiff placed her market order during a T1 Halt.

### b. Fiduciary duties arise from the language in the Agreement.[5]

#### 1. Voluntary disclosure of information.

Defendant is already providing informational and educational materials on its website, which is tailored to the novice investor. Further, as Defendant points out in its Motion and through its Customer Agreement in paragraph 13, Defendant informs Plaintiff about market volatility, and how prices could be higher or lower than anticipated when an order was placed. Defendant is voluntarily providing information to Plaintiff and showing that Defendant knows about this known risk. Defendant has taken on the responsibility and duty of informing Plaintiff about this condition and risk, yet it does not complete its responsibility of informing Plaintiff when the condition, *i.e.*, the halts, actually happens. Backman v. Polaroid Corp., 910 F.2d 10, 16 (1st Cir. 1990) (even a

---

[5] Plaintiff makes this argument in an abundance of caution, should the Court decide to review the Customer Agreement as part of Defendant's Motion to Dismiss. However, by making this argument, Plaintiff does not waive its objection to the Agreement being considered for said Motion.

voluntary disclosure of information that a reasonable investor would consider material must be "complete and accurate"). This is especially true when the Agreement does not mention the word "halt" at all.

## 2.   Services provided for by Agreement directly relate to TI Halt.

In addition, and still taking Defendant's argument as true that the Agreement shows Defendant simply places stock orders for its customers, then it follows that Defendant would have a duty to advise customers of a halt that affects those stocks and/or orders. Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 536 (2d Cir. 1999) (even in "cases that have recognized the fiduciary relationship as evolving simply from the broker-client relationship" and "have limited the scope of the fiduciary duty to the narrow task of consummating the transaction requested", a broker has to use reasonable efforts to give investor information regarding "matters relevant to affairs entrusted to the broker"). In this case, according to Defendant, the matters entrusted to the broker are effectuating transactions for Plaintiff. Because the T1 Halt affects the making and completion of that transaction, it follows that Defendant would have a duty to notify Plaintiff of same.

Finally, informing Plaintiff about a halt or otherwise not allowing an order to be placed is consistent with the language in the Agreement, which would show a duty for same. Specifically, paragraph 4, page 6 of the Agreement states that ". . . I appoint Robinhood Financial as My agent for the purpose of carrying out My directions to Robinhood Financial in accordance with the terms and conditions of this Agreement *and any attendant risks* with respect to the purchase or sale of securities." (Emphasis added). As mentioned above, the Agreement states that Defendant can halt trades for any reason at any time, and a relative risk of placing or carrying out a purchase order

would be a stock being subject to a trading halt. As such, Defendant does have a duty to inform Plaintiff of halts, as it directly implicates the attendant risks with respect to the sale of securities.

### iii.    The Plaintiff makes sufficient allegations to show a duty.

Defendant uses California caselaw to present cases to this Court for support for its duty arguments, and supports this choice of law with the Agreement. However, as argued above, the Agreement is not central to Plaintiff's causes of action. The counts are based in common law. Further, Plaintiff disputes the authenticity and validity of same. As such, the choice of law provision in the Agreement is disputed, as well, and this Court should not consider same. Florida law would apply to all tort claims.

If the Court was to consider the choice of law provision in the Agreement, Plaintiff would direct the Court's attention to the section that reads "shall be governed by the laws of the State of California . . . except to the extent governed by the federal securities laws, FINRA Rules, and the regulations, customs and usage of the exchanges or market . . . ." [DE 22-1 at ¶ K]. FINRA Rule 5260 and the custom of the exchanges mandate that no prices are offered or trading take place during a T1 Halt. As such, by its own terms the choice of law provision would not apply to Plaintiff's actions, and Florida law would apply.

As mentioned above, all factual allegations in Plaintiff's Complaint are to be taken as true for the purposes of a Motion to Dismiss. Defendant states that Plaintiff makes the "conclusory assertion" in her Complaint that Defendant breached the standard of care expected from similar professionals in the community.  However, Defendant recognizes in its own Motion that "brokers are prohibited from processing orders in that stock until the halt is over and trading reopens". Even more telling of the duty is the FINRA Rule mentioned above. If it is ubiquitous that brokers cannot quote prices or process orders until halts are over for that stock, and Defendant has a simple duty

11

to effect transactions for Plaintiff, then it follows that brokers would have a duty to advise Plaintiff of a halt that affects her order or the placing of her order.

Further, Plaintiff has alleged in her Complaint that Defendant advertises to the "less knowledgeable trader" and has information on its website specifically tailored to the "newcomer" in stocks. Plaintiff states Defendant's "deliberately engineered systems" were made to encourage "everyone" to participate in trades, and specifically provides information for beginners. [DE 1-1 at ¶¶ 5-11]. This creates a duty between the novice trader, *i.e.*, Plaintiff, and Defendant. Especially when coupled with the FINRA Rule mentioned above and the fact that Defendant's services are to effect transactions for her. This creates a duty for Defendant to provide Plaintiff with further information that directly affects those services[6] Defendant is providing to Plaintiff. Looking at the Complaint in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged enough facts in her Complaint to show a duty. As such, the Complaint should not be dismissed.

Defendant states that "nowhere in the Complaint does Plaintiff allege any facts indicating that other broker-dealers cancel pre-halt trade orders[7] or prevent customers from using their platforms during T1 Halts." However, candidly, this is a case of first impression. Other broker-dealers do not advertise to the "newcomer" investor, and there is no caselaw regarding other broker-dealers allowing orders to be placed during T1 Halts. This is probably why there is no similar situation found in the caselaw. Defendant specifically engineered a platform that would allow everyone to trade, regardless of experience. However, this platform was defectively designed in that it allowed customers to place orders while a T1 Halt was in place. This design defect was a

---

[6] Assuming Defendant's position is taken as true, *i.e.*, that it only effectuates orders.

[7] Candidly, the mention of "pre-halt trade orders" in the Complaint was a scrivener's error. This should have read "trade orders placed during halts". Robinhood allowed Plaintiff to see pricing and to place her order on Robinhood's application during the time a trade halt was in effect. The reference to "pre-halt" trade order can be corrected by interlineation.

breach of Defendant's duty to provide an appropriate platform for Plaintiff to use Defendant's services so trades could be effected - Defendant made something available to Plaintiff for trading when it was specifically not available. Simply because there is not a case on point, does not mean that the Complaint should be dismissed.

> iv.    **Defendant's caselaw is distinguishable.**

Defendant points to certain cases for the proposition that Defendant does not have a fiduciary duty to Plaintiff. However, these cases are inapplicable. Providing tailored investment advice is different than providing basic information (including about known risks) to a novice investor that Defendant already undertook to provide.

The first case Defendant points to is the <u>Brown</u> case. This case dealt with the self-directed individual retirement account (IRA) of a plaintiff, wherein the plaintiff/lender loaned funds to an investor, and continued to do so. This same investor defaulted on payments to other lenders. The trustee and administrator of the plaintiff's IRA did not inform the plaintiff that the investor had defaulted on other lenders' payments (although they had knowledge of same). The court held that the plaintiff "did not and cannot allege facts supporting a cause of action for breach of fiduciary duty" because the trustee and administrator had no duty to advise the plaintiff of the "poor performance of similar investments held by different customers." The <u>Brown</u> case is distinguishable from this case in that Plaintiff herein is not asking for information on <u>other investor's accounts or actions</u>, but is asking for basic information for its own orders.

The next case Defendant refers to is the <u>Apollo</u> case. The causes of action in this case were for fraud, California Corporate statutory fraud, and negligent misrepresentation, and the entire case focuses on those causes of action. In the second amended complaint in the <u>Apollo</u> case, a breach of fiduciary duty count was added. The court determined that, among the various

plaintiffs/investors "in this case, the investors were not Roth's customers and no fiduciary relationship could arise merely from the fact Roth was a licensed broker." Apollo Capital Fund LLC v. Roth Capital Partners, LLC, 70 Cal. Rptr. 3d 199, 215 (Cal. App. 2d Dist., Dec. 2, 2007). It is apparent and goes without saying that if a plaintiff is not a customer of a stockbroker, the broker cannot owe any duty to that plaintiff. However, there was one plaintiff in this case that did allege he was a customer of that stockbroker. That plaintiff was allowed to amend the complaint to allege facts to establish a duty, as the court recognized this was a fact specific inquiry. The Apollo case states that:

> The relationship between any stockbroker and his or her customer is fiduciary in nature, imposing on the former the duty to act in the highest good faith toward the customer. The question is not whether there is a fiduciary duty, which there is in every broker-customer relationship; rather, it is the scope or extent of the fiduciary obligation, which depends on the facts of the case. The specific facts and circumstances presented in a given case that determine the scope of the stockbroker's fiduciary duty include the relative sophistication and experience of the customer; the customer's ability to evaluate the broker's recommendations and exercise an independent judgment thereon; the nature of the account, whether discretionary or nondiscretionary; and the actual financial situation and needs of the customer.

Apollo Capital Fund LLC, 70 Cal. Rptr. 3d at 199.

In the present case, because Plaintiff was a customer of Defendant's, and because Plaintiff has alleged sufficient facts to show the parties' relationship give rise to a duty, this case is distinguishable from Apollo.

The next case Defendant relies on is the Peterson case, which is about two separate entities: a clearing agent and a broker-dealer. However, the appeal is solely based on the summary judgment that was entered in favor of the clearing agent; this case does not mentioning the broker-dealer. In Peterson, the court determines that there is a contract between the clearing agent and broker-dealer, where the clearing agent agreed not to give advice to the customer because this is the duty of the broker-dealer. The court also considered how a clearing agent usually has no duty to give advice

to a customer, given it has no direct access to the customer. These are the reasons that the court held that there was no duty on the part of the clearing agent to the trader. Petersen v. Sec. Settlement Corp., 226 Cal. App. 3d 1445 (Cal. App. 4th Dist., Jan. 18, 1991).  In the present case, Robinhood Financial, LLC is the broker-dealer, and not the clearing agent, according to paragraph 6, page 11 of the Agreement. As such, this case is inapplicable to show whether Defendant would have a duty to Plaintiff.

Finally, Defendant uses the case of SFM Holdings to show that a broker would owe no duty to a customer. However, as in Peterson, this case focuses on Banc of America, which was a "prime" or "clearing" agent, which did not owe fiduciary duties to SFM Holdings because Banc of America was simply a clearing agent. If anything, this case would show that the "executing" brokers, which were the other defendants in SFM Holdings (that were not prime agents), did owe fiduciary duties to their customer. SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1339 (11th Cir., Mar. 11, 2010).

Many of Defendant's cases are about a broker advising a trader about all the risks of all their investment choices and current stocks. Plaintiff is not claiming Defendant had to advise Plaintiff about the risks of all her investments. Plaintiff's claim is more basic than that – Plaintiff's claim is based on the fact that Defendant did not inform her about what the stock exchanges were halting and allowed her to place a market order during a T1 Halt, knowing that they advertise to novice traders and this would affect their services to her, mainly, her purchase order, and that the FINRA Rules do not allow it. Defendant consistently confuses providing "investment advice" with informing Plaintiff of information it has and is required to provide in one form or another. Because the caselaw Defendant refers to is inapplicable, it should not be considered as a basis to grant Defendant's Motion to Dismiss.

Importantly, Defendant's cases point out that Defendant did not control the account, and therefore has no duty. However, as mentioned above, the Agreement is replete with instances where Defendant <u>can</u> retain control, even arbitrarily. The Agreement specifically states that it can stop orders at any time and for whatever reason. [DE 22-1 at Pg. 8, ¶ F] [DE 22-1 at Pg. 14, ¶ 16] (Robinhood has the right to "(i) prohibit or restrict My access to the use of the App or the Website or related services and My ability to trade, (ii) refuse to accept any of My transactions, (iii) refuse to execute any of My transactions, or (iv) terminate My Account.")  This shows that Defendant has the authority and ability to control Plaintiff's account without Plaintiff's input. <u>See generally</u>, <u>Estate of Parr</u>, 2006 WL 2620504 at *4 (court found that broker-dealer did not owe a fiduciary duty to a customer because the broker-dealer did not exercise "control of the account"). Because Defendant maintained control, this shows that the account was <u>not</u> self-directed, despite what Defendant alleges or what its Agreement states. This would contradict Defendant's statements that it owes no duty to Plaintiff because the account was self-directed.

**v.      The limitation of liability clauses in the Agreement are invalid.**

Initially, the limitation of liability clauses should not be considered for this Motion to Dismiss, because as explained above, Plaintiff disputes the authenticity and validity of the Agreement. If this Court were to consider the Agreement and its limitation of liability clauses over Plaintiff's objections, Plaintiff would argue the following (although by making these arguments Plaintiff does not waive its objections to the Agreement nor try this issue by consent).

Defendant states in its Motion that "the Customer Agreement specifically provides that Robinhood 'will have no liability . . . or responsibility whatsoever' for any losses resulting from 'exchange rulings or suspension of trading.'" [DE 21 at Pg. 3]. However, Defendant neglects to explain that "suspension of trading" does not equate to a "trade halt". The SEC mandates

suspensions of trade, which are usually about ten days, while an exchange (NYSE or NASDAQ) mandates trade halts, also known as regulatory halts, which are shorter (though not necessarily only one hour, as Defendant states in its Motion[8]). *FINRA.org*, https://www.finra.org/investors/alerts/when-trading-stops-what-you-need-know-about-halts-suspensions-and-other-interruptions (Updated Feb. 2013)[9]. Although suspension of trading is mentioned in this Agreement, halts are never mentioned. As such, this provision of the limitation of liability clause would have no effect on Plaintiff's claims and the Agreement does not bar same.

Further, although limitation of liability clauses have been recognized in California as valid, there are exceptions. The first applicable exception is when the clause does not specifically exclude negligence, and the second exception is when they are the result of unconscionable bargaining power. Food Safety Net Servs. v. Eco Safe Sys. USA, Inc., 209 Cal. App. 4th 1118, 1126, 147 Cal. Rptr. 3d 634, 642 (2012) ("limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power…."); Peregrine Pharm., Inc. v. Clinical Supplies Mgmt., No. SACV 12-1608 JGB (ANx), 2014 U.S. Dist. LEXIS 105756, at *39-44 (C.D. Cal. July 30, 2014) (negligence must be specifically mentioned for exculpatory clause to be valid).

---

[8] Upon information and belief, the trade halt for Hertz lasted at least twenty-four hours.
[9] The Court may take judicial notice of materials on Finra's website. See Universal Express, Inc. v. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) (courts may take judicial notice of "public documents" at the motion to dismiss stage).

17

In the Agreement, the limitation of liability clauses are divided in two: the capitalized portion[10] [DE 22-1 at Pg. 15] and the lowercase portion[11] [DE 22-1 at Pg. 16]. Both these clauses talk about limitations of liability. Based on California law, for a limitation of liability clause to validly exculpate a party for negligence, this must be specifically stated. <u>Peregrine Pharm., Inc. v. Clinical Supplies Mgmt.</u>, No. SACV 12-1608 JGB (ANx), 2014 U.S. Dist. LEXIS 105756, at *39-44 (C.D. Cal. July 30, 2014).

> 'The law does not look with favor upon attempts to avoid liability or secure exemption for one's own negligence, and such provisions are strictly construed against the person relying upon them.' <u>Burnett v. Chimney Sweep</u>, 123 Cal. App. 4th 1057, 1066, 20 Cal. Rptr. 3d 562 (2004) (quotation omitted). For an agreement to be construed as precluding liability for 'active' or 'affirmative' negligence, there must be express and unequivocal language in the agreement which precludes such liability. An agreement which seeks to limit generally without mentioning negligence is construed to shield a party only for passive negligence, not for active negligence.

<u>Id.</u>

Arguably, only the second clause would apply to the matters alleged in the Complaint because it states it is related to "any matters pertaining to My Account". However, the second clause does not specifically exclude negligence. The first clause, although specifically excluding negligence, limits that section to damages incurred "in connection with the use of the services".

---

[10] … ROBINHOOD, … WILL NOT BE LIABLE TO ME … FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING TRADING LOSSES, DAMAGES, LOSS OF PROFITS, REVENUE, OR GOODWILL) THAT I MAY INCUR **IN CONNECTION WITH MY USE OF THE SERVICE** PROVIDED BY ROBINHOOD OR ANY OF ITS AFFILIATES UNDER THIS AGREEMENT (INCLUDING MY USE OF THE APP, THE WEBSITE, THE MARKET DATA, THE INFORMATION, OR THE CONTENT), BREACH OF THIS AGREEMENT, OR ANY TERMINATION OF THIS AGREEMENT, WHETHER SUCH LIABILITY IS ASSERTED ON THE BASIS OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE …. (Emphasis added).

[11] … Robinhood … shall not be liable for any expenses, losses, costs, damages, liabilities, demands, debts, obligations, penalties, charges, claims, causes of action, penalties, fines and taxes of any kind or nature … by or **with respect to any matters pertaining to My Account**, except to the extent that such Losses are actual Losses and … resulted solely from Robinhood's or any of its affiliates' gross negligence or intentional misconduct. (Emphasis added).

This first clause would arguably not implicate damages incurred for Defendant failing to inform Plaintiff of a T1 Halt or failing to remove price quotations from its site in accordance with FINRA Rules so Plaintiff cannot place an order. Because the possibly applicable second clause does not specifically mention excluding liability for negligence, it is not a valid limitation of liability for negligence in accordance with California law. At the very least, the two clauses with different qualifiers and different language on negligence would render the limitation of liability clauses vague, which is another reason these types of clauses can be invalidated. These clauses are to be strictly construed, and any ambiguities would be resolved against Defendant. Rodman v. Safeway Inc., 125 F. Supp. 3d 922, 928 (N.D. Cal. 2015) ("contractual clauses seeking to limit liability will be strictly construed and any ambiguities resolved against the party seeking to limit its liability"). Additionally, it goes without saying that the bargaining power of Robinhood when compared to Plaintiff is unequal, which would be another reason to invalidate the provision.

Defendant further mentions in this section of its Motion that Plaintiff acknowledges that "during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order." However, this language is not included in the limitation of liability clauses and should not be considered as part of same.

Finally, to the extent that the limitation of liability clause is contrary to California Civil Code 1668, the clause would be invalid. This Code states that "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." To the extent that non-compliance with a FINRA Rule would be a

19

willful or negligence violation of law, the limitation of liability clause would be inapplicable to limit Defendant's negligence based on same.

### D.  ALTERNATIVELY.

Should this Court be so inclined to grant Defendant's Motion to Dismiss, Plaintiff asks this be done without prejudice to Plaintiff so she may have the opportunity to file an amendment of her Complaint.

**REQUEST FOR ORAL ARGUMENT**

Plaintiff respectfully request oral argument on all the briefs and filings related to Defendant's Motion to Dismiss.

WHEREFORE, Plaintiff, SHITERNA PINCHASOV, respectfully requests the entry of an order denying Defendant's Motion to Dismiss filed by ROBINHOOD FINANCIAL LLC, together with any other or alternative relief deemed equitable and just under the circumstances.

Dated: March 12, 2021.

Respectfully submitted,

Michael A. Citron, Esq.
Florida Bar No.: 105083
MAC LEGAL, P.A.
3100 N 29th Ct., Suite 100
Hollywood, Florida 33020
Telephone: (954) 395-2954
Michael@maclegalpa.com – Correspondence
Service@maclegalpa.com - Service Address

Igor Hernandez, Esq.
Florida Bar No. 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Telephone: (305) 780-6058
service@CHGLawyers.com
ihernandez@chglawyers.com

Ely R. Levy, Esq.
Florida Bar No.: 15452
Venessa Valdes Solis, Esq.
Florida Bar No. 77122
LEVY & PARTNERS, PLLC
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Telephone: (954) 727-8570
elevy@lawlp.com – Service Address
venessa@lawlp.com – Service Address
Maritza@lawlp.com – Service Address


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By: __/s/ _Venessa V. Solis____
VENESSA V. SOLIS, ESQ.

## SERVICE LIST

Grace L. Mead, Esq.
Ryan T. Thornton, Esq.
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: 305-789-3200
Email: gmead@stearnsweaver.com
 Email: rthornton@stearnsweaver.com

Maeve L. O'Connor, Esq. (*pro hac vice* application forthcoming)
Elliot Greenfield, Esq. (*pro hac vice* application forthcoming)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone: 212.909.6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com