**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 20-cv-24897-CMA

SHTERNA PINCHASOV, Individually and on Behalf of
All Other Similarly Situated Plaintiffs,

    v.

ROBINHOOD FINANCIAL LLC,

        Defendant.

_____/

**DEFENDANT ROBINHOOD FINANCIAL LLC'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Robinhood Financial LLC ("Robinhood") submits this reply memorandum in support of its motion to dismiss the Complaint for failure to state a claim.

## PRELIMINARY STATEMENT

Although Plaintiff's Opposition is replete with new factual assertions that were not alleged in the Complaint, Plaintiff still fails to identify any legal basis for a duty to notify customers of trading halts in particular stocks or to prevent customers from placing trade orders for those stocks.

With respect to her negligence claim, Plaintiff does not allege any facts indicating that any other broker-dealers take such actions, and thus does not demonstrate such a standard of care in the industry. And, as to her fiduciary duty claim, Plaintiff does not dispute that her account is entirely self-directed: there are no allegations that Robinhood provides investment advice to her or makes discretionary trades on her behalf. Plaintiff's brand-new effort to ground a purported duty in FINRA Rule 5260 is misguided because the FINRA Rules do not provide a private right of action and, in any event, Rule 5260 prohibits brokers from executing trades during a halt, not from accepting trade orders from customers to be executed after the halt concludes.

Plaintiff is also unable to rebut the fact that her claims are expressly barred by the Customer Agreement. Instead, Plaintiff seeks to avoid the Customer Agreement altogether by purporting to challenge, in an entirely conclusory manner, its "authenticity" and "validity" and asking the Court to ignore it. Those challenges are unsupported, and the Court should reject them. The Customer Agreement is central to Plaintiff's claims and thus properly before this Court.

The Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.  PLAINTIFF FAILS TO PLEAD A DUTY.

Although Plaintiff alleged in the Complaint that she and other Robinhood customers were harmed "as a result of Robinhood executing the pre-T1 Halt trades which should have been cancelled, terminated or otherwise halted," she now abandons that allegation, explaining in a footnote that it was a "scrivener's error." (Compl. ¶ 19; Opp'n 12 n.7.) Instead, she now asserts

– for the first time in her Opposition – that she placed a trade order to purchase Hertz stock *during* a trading halt. (*Id.*) That change does not help Plaintiff's claims, however, as she fails to identify any basis for a duty to prohibit investors from entering trade orders for stocks while they are subject to a regulatory halt.

### A. Plaintiff Does Not Allege Facts Giving Rise to a Duty of Care.

Plaintiff acknowledges that there are no cases supporting a duty to prevent investors from placing trade orders during a T1 Halt, and Plaintiff does not dispute the lack of any factual allegations indicating that other broker-dealers impose such prohibitions and that they represent "the standard of care used by similar professionals in the community." (Opp'n 12; Compl. ¶ 53.) Instead, although it appears nowhere in the Complaint, Plaintiff purports to have relied entirely on FINRA Rule 5260 as the sole basis for her negligence claim. (Opp'n 8.) As a threshold matter, FINRA Rules do not provide a private right of action, and Plaintiff may not assert a claim for a FINRA violation disguised as common law negligence. *See Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1324-25 (S.D. Fla. 2018); *see also Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015) (holding that "FINRA does not provide a private right of action" and therefore "plaintiff cannot recover for negligence based on the alleged violation" of a FINRA Rule).

In any event, nothing in Rule 5260 prevents broker-dealers from accepting trade orders during a trade halt. The rule prohibits brokers from *executing* trade orders during a trade halt. *See* FINRA Rule 5260 (providing that no broker-dealer may "effect any transaction . . . in any security as to which a trading halt is currently in effect"). Plaintiff alleges that Robinhood executed her trade order for Hertz stock after – not during – the T1 Halt. (Compl. ¶ 19.)

Plaintiff's assertion that Robinhood violated Rule 5260 by purportedly including pricing information on its website – another assertion that is not in the Complaint – also misses the mark. Rule 5260 provides that brokers may not "publish a quotation" or "priced bid and/or offer" for a security that is subject to a trading halt, but that prohibition refers to the communication of bids or offers from one broker to another, or to an exchange, and not from a broker to its retail customers. *See* Self-Regulatory Organizations, Order Approving Proposed Rule Change by the

2

National Association of Securities Dealers, Inc. to Amend NASD Rule 3340 to Prohibit Publication of Quotations or Indications of Interest in a Security During a Trading Halt, 66 Fed. Reg. 31262 (June 5, 2001) (discussing purpose of prohibition on "publishing a quotation"). Broker-dealers such as Robinhood do not make bids or offers to their customers; they execute trade orders on behalf of their customers subject to the bids and offers they receive as broker-dealers.

Having failed to identify any basis for a duty to prevent customers from placing trade orders during a T1 Halt, Plaintiff improperly – and incorrectly – alleges in the Opposition that "[c]urrently, when attempting to place a market order on Robinhood's website during a T1 Halt, a notification pops up that states you are not allowed to place the order because a T1 Halt is in place." (Opp'n 9.) Plaintiff "may not amend a complaint via a response to a motion to dismiss." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 n.6 (S.D. Fla. 2012). Moreover, no such notification or restriction exists, meaning that the Complaint cannot be amended to include this allegation.

**B.    Plaintiff Does Not Allege Facts Giving Rise to a Fiduciary Duty.**

Plaintiff also fails to identify any factual allegations or any language in the Customer Agreement indicating that Robinhood provides investment advice or makes discretionary trades on behalf of customers, and she therefore fails to meet her burden of pleading the existence of a fiduciary duty. (Mot. 6-7; Opp'n 7-10, 13-16.) Plaintiff's arguments to the contrary are without merit.

*First*, Plaintiff argues that the existence of a fiduciary duty is a "matter of factual inquiry" (Opp'n 7), but the authority Plaintiff cites makes clear that no such factual issue arises where – as here – "the relationship is formed through an express agreement." *Catano v. Capuano*, 2020 WL 639406, at *12 (S.D. Fla. Feb. 11, 2020) (quoting *Hansen v. Premier Aviation Holdings, LLC*, 2017 WL 8893119, at *4 (S.D. Fla. Nov. 21, 2017)).[1] Here, the Customer Agreement

---

[1] Moreover, even where the relationship is not formed by an express agreement, a claim for breach of fiduciary duty will not survive a motion to dismiss where there are no plausible allegations that the party allegedly owing the duty has "some recognition, acceptance or undertaking of the duties of a fiduciary." *Catano*, 2020 WL 639406 at *12 (quoting *Lanz v.*

3

makes clear that no fiduciary relationship exists. (Mot. 2-3, 7-8, Ex. A to Mot.) Among other things, Plaintiff expressly agreed that her account is "self-directed," that she is "solely responsible for any and all orders" in her account, and all of her trade orders are "unsolicited" and based on her "own investment decisions." (Ex. A § 5(A).) Robinhood does not "provide investment advice," "recommend any security, transaction or order," "solicit orders," or "make discretionary trades." (Ex. A § 5(A).) Notwithstanding this clear language, Plaintiff asserts that her acknowledgement of market volatility in the Customer Agreement – and, in particular, that "the price I pay may be significantly higher or lower than anticipated at the time I placed the order" – gives rise to a duty on the part of Robinhood to warn her when such volatility arises. (Opp'n 9; Ex. A § 13.) That assertion is unsupported by common sense or legal authority.

*Second*, Plaintiff offers the contradictory assertion that because Robinhood purportedly has a "simple duty to process orders for Plaintiff," it therefore has a duty to advise her of a trading halt and to prevent her from placing a trade order. (Opp'n 8.) Plaintiff offers no explanation or legal basis for why a purported duty to process trade orders consistent with Plaintiff's instructions would give rise to a duty to prevent Plaintiff from placing trade orders. Unlike here, the decision on which Plaintiff relies involved a relationship where, although the customer made the final determination as to all purchases and sales, the broker undertook a duty to recommend particular investments. *See Prudential Bache Sec., Inc. v. Pitman*, 1991 WL 160039, at *4 (N.D. Ga. Apr. 4, 1991) (citing *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 953 (E.D. Mich. 1978)). In such circumstances, the broker did not become "a full-fledged fiduciary" of the customer but had a "minimal duty" to inform the customer of the risks associated with the broker's investment advice and recommendations. *Id.* Here, by contrast, Plaintiff does not – and cannot – allege that Robinhood recommended particular investments or provided any other investment advice. Plaintiff likewise does not – and cannot – cite any authority for her assertion that providing informational resources for customers new to investing gives rise to a fiduciary duty. (Opp'n 9-10, 12.)

---

*Resolution Tr. Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991)).

*Third*, Plaintiff's attempts to distinguish the decisions cited by Robinhood fail as she points to irrelevant factual distinctions while ignoring the courts' central holdings. (Opp'n 13-15.) In *Brown v. California Pension Administrators & Consultants, Inc.*, 52 Cal. Rptr. 2d 788, 796-97 (Cal. Ct. App. 1996), the court held there was no "expansive fiduciary relationship giving rise to a duty to notify the customer of the risky nature of an investment" because "the relationship was confined to [defendants'] performance of transactions selected by their customers" and the defendants "had absolutely no responsibility to advise [plaintiffs] with regard to the wisdom of their investment choices" or "of the poor performance of similar investments held by different customers." Contrary to Plaintiff's assertion, that holding turned on the nature of the relationship between the parties, not on the specific investment information at issue.

Similarly, although the particular factual scenarios vary in each case, the other decisions cited by Robinhood on this point all stand for the broad proposition that no fiduciary relationship arises where – as here – the broker-dealer does not provide investment advice to customers or make discretionary decisions on their behalf. *See Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 70 Cal. Rptr. 3d 199, 214-15 (Cal. Ct. App. 2007) (affirming dismissal with prejudice of breach of fiduciary duty claims by plaintiffs who failed to allege facts demonstrating that broker "was an adviser to the customer about investment decisions" and allowing one plaintiff to replead based on allegations that he had "developed a confidential relationship" with broker and had been told that "he should trust and rely upon [broker's] investment expertise"); *Petersen v. Sec. Settlement Corp*, 226 Cal. App. 3d 1445, 1456 (Cal. Ct. App. 1991) (holding that "the scope of a broker's duty to disclose is delimited by the nature of the broker's relationship with the customer," and that no fiduciary duty arises when "that relationship is confined to the simple performance of transactions ordered by a customer or his investment advisor"); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1339 (11th Cir. 2010) (affirming dismissal of fiduciary duty claims and holding that "the fiduciary is the party who . . . provides investment advice to the customer," and that the existence of a fiduciary duty is determined by the "substantive agreement of the parties" and not the "labels placed on the relationship").

## II. PLAINTIFF'S CLAIMS ARE BARRED BY THE CUSTOMER AGREEMENT.

### A. The Customer Agreement Plainly Bars Plaintiff's Claims.

Plaintiff's attempts to argue that her claims are not barred by the Customer Agreement lack any basis. (Mot. 7-8 & Ex. A; Opp'n 16-20.) The Customer Agreement includes a clear waiver of liability: Plaintiff expressly agreed that she would use the Robinhood trading platform at her own "sole risk," and that Robinhood would not be liable to her "under any circumstances" or "have any responsibility whatsoever" for, among other things, any "consequential damages" including "trading losses, damages, [or] loss of profits." (Ex. A § 17.)

Plaintiff asserts that a limitation of liability provision must specifically mention negligence in order to cover that tort, (Opp'n 18-19), but the Customer Agreement clearly does just that, stating that Robinhood "will not be liable" for losses incurred "in connection with my use of the service provided by Robinhood . . . whether such liability is asserted on the basis of contract, tort (*including negligence*), or otherwise." (Ex. A § 17 (emphasis added).) Plaintiff's half-hearted suggestion that her claims do not arise from her "use" of Robinhood's service and trading platform, and that the limitation of liability clause explicitly mentioning negligence is therefore "arguably" inapplicable, is clearly incorrect and belied by the allegations in her Complaint. (Opp'n 18-19.)

Plaintiff's attempt to avoid her express agreement that Robinhood would have no liability for any losses resulting from "exchange rulings or suspensions of trading" is likewise without merit. (Ex. A § 17; Opp'n 16-17.) There is no basis in the contractual language to conclude that "exchange rulings or suspensions of trading" does not include suspensions of trading imposed by a stock exchange.

### B. The Court Properly May Consider the Customer Agreement.

Unable to avoid the plain language of the Customer Agreement – which unambiguously bars her claims – Plaintiff asks the Court to ignore it. (Opp'n 5-7.) The Court should reject that tactic; the Customer Agreement defines Plaintiff's customer relationship with Robinhood and is therefore central to her claims. (Mot. 2 n.2.)

Plaintiff cannot escape the terms of the Customer Agreement merely by asserting – without any factual basis – that its "authenticity" or "validity" is in dispute. Such unsupported assertions cannot subvert the incorporation by reference doctrine. Here, the authenticity of the Customer Agreement is not reasonably in dispute; indeed, the current version of the Customer Agreement is available on Robinhood's website.[2] The Customer Agreement submitted to the Court is dated February 5, 2020. (Ex. A at 1.) Plaintiff alleges that she opened her account in March 2020 (Compl. ¶ 37), and she does not contend that the Customer Agreement was revised during that interval. Nor does Plaintiff raise any substantive challenge to the "validity" of the Customer Agreement. So-called "clickwrap" agreements – where parties click a button to indicate their agreement – are "valid and enforceable contracts." *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011).[3]

## III. DISMISSAL SHOULD BE WITH PREJUDICE.

The Court should deny Plaintiff's request to file an amended complaint. (Opp'n 20.) Plaintiff's request is improperly made in opposition to a motion to dismiss and fails to identify any new allegations that could cure the fundamental deficiencies in Plaintiff's claims. *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (request for leave to amend a complaint imbedded in a memorandum opposing a motion to dismiss "possessed no legal effect"); *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) ("A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment.").

## CONCLUSION

For the reasons set forth herein, the Court should grant Robinhood's motion to dismiss.

---

[2] https://cdn.robinhood.com/assets/robinhood/legal/Robinhood%20Customer%20Agreement.pdf.

[3] Here, Plaintiff agreed: "I understand that clicking 'submit application' is the legal equivalent of my manually signing this agreement and I will be legally bound by its terms and conditions." (Ex. A at 1.)

Dated:  March 19, 2021        Respectfully submitted,

By: */s/ Grace L. Mead*
Grace Mead
Florida Bar No. 49896
Ryan Thornton
Florida Bar No. 99195
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street
Suite 2200
Miami, Florida 33130
Telephone: 305-789-3559
Email: gmead@stearnsweaver.com
Email: rthornton@stearnsweaver.com

Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York  10022
Telephone: 212.909.6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By: *Ryan T. Thornton*
RYAN T. THORNTON

## SERVICE LIST

Michael A. Citron, Esq.
Florida Bar No.: 105083
MAC LEGAL, P.A.
3100 N 29th Ct., Suite 100
Hollywood, Florida 33020
Telephone: (954) 395-2954
Michael@maclegalpa.com – Correspondence
Service@maclegalpa.com - Service Address

Igor Hernandez, Esq.
Florida Bar No. 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Phone (305) - 780 – 6058
service@CHGLawyers.com
ihernandez@chglawyers.com

R. Levy, Esq.
Florida Bar No.: 15452
Venessa Valdes Solis, Esq.
Florida Bar No. 77122
LEVY & PARTNERS, PLLC
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Telephone: (954) 727-8570
elevy@lawlp.com – Service Address
venessa@lawlp.com – Service Address
Maritza@lawlp.com – Service Address