UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-24897-CIV-ALTONAGA/Torres

SHTERNA PINCHASOV,

 Plaintiff,

v.

ROBINHOOD FINANCIAL, LLC,

 Defendant.
_____ /

## ORDER

**THIS CAUSE** is before the Court on Defendant, Robinhood Financial's Motion to Dismiss [ECF No. 21], filed on December 21, 2020. Plaintiff, Shterna Pinchasov filed a Response [ECF No. 45], to which Defendant filed a Reply [ECF No. 46]. The Court has carefully considered the Complaint [ECF No. 1-1], the parties' written submissions, and applicable law. As further explained, Defendant's Motion is denied.

### I. BACKGROUND

Plaintiff became a customer of Defendant, an online securities broker-dealer registered with the Securities and Exchange Commission, after receiving advertisements for Defendant's services. (*See* Compl. ¶¶ 1–5, 37). Defendant's customers use Defendant's broker-dealer services to provide them with stock pricing information and to place securities trade orders on their behalf. (*See id.* ¶¶ 2–3, 6, 12). Defendant's customers receive pricing information and conduct securities trading using Defendant's smartphone interface. (*See id.* ¶ 5). Defendant markets its services to novice investors and inexperienced traders, using its "deliberately engineered systems [to] leverage technology to encourage everyone to participate in [its] financial system[.]" (*Id.* ¶ 5 (alterations added); *see also id.* ¶¶ 7–10). In addition to offering its customers stock pricing and

other stock information via its interface, Defendant provides customers with investing "beginners' guides" and finance-related articles. (*Id.* ¶¶ 5–8, 10–12, 14).

Broker-dealers in the business of buying and selling securities on behalf of customers have several duties. (*See id.* ¶¶ 3, 13). One of those duties involves T1 Halts. A T1 Halt temporarily prevents a company's stock from being traded. (*See id.* ¶ 17). The suspension of trade coincides with "the release of material news" from a company "which is likely to lead to abnormal volatility" in the company's stocks. (*Id.*). Securities broker-dealers understand "customers need to be informed that a given stock is subject to a T1 Halt, in order to protect consumer[s] from the volatility due to the news which generated the T1 Halt." (*Id.* ¶ 21 (alteration added)).

In March 2020, a T1 Halt was placed on Hertz stock. (*See id.* ¶ 18). Defendant did not inform its customers of the T1 Halt and did not remove "any type of price quotation, or indication of interest" for Hertz stock during the trading halt. (*Id.* ¶¶ 16, 18). Instead, Defendant allowed its customers — including Plaintiff — to place trade orders on Hertz stock during the T1 Halt. (*See id.* ¶¶ 18–19). Once the trading halt was lifted, the price of Hertz stock had "dropped significantly[.]" (*Id.* ¶ 19 (alteration added)). Defendant then executed its customers' Hertz trade orders on the now-devalued stock, causing its customers to lose money. (*See id.* ¶¶ 19, 37, 44).

Plaintiff subsequently filed the present putative class action. (*See generally* Compl.). In her Complaint, Plaintiff asserts two causes of action against Defendant. In Count I, for negligence, Plaintiff alleges Defendant owed a duty to inform its customers of trading halts and a duty to prevent its customers from placing orders during a trading halt. (*See id.* ¶¶ 51–58). Plaintiff alleges these duties stem from "the standard of care used by similar professionals in the community under similar circumstances." (*Id.* ¶ 53). Plaintiff contends Defendant breached these duties by failing to inform its customers of the T1 Halt on Hertz stocks and by failing to prevent its customers

from placing orders during the trading halt. (*See id.* ¶¶ 51–58).

In Count II, Plaintiff alleges Defendant breached fiduciary duties owed to its customers by virtue of Defendant's marketing and providing stock-related information and services to novice investors. (*See id.* ¶¶ 59–63). As with the prior claim for relief, Plaintiff states Defendant breached those duties by failing to inform its customers of trading halts and prevent its customers from placing orders during a trading halt. (*See id.*).

Defendant filed its Motion to Dismiss, attaching a Customer Agreement.[1] In its Motion, Defendant argues its Customer Agreement bars Plaintiff's claims and Plaintiff fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. 5–8).[2]

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim only tests the sufficiency of the complaint; it does not decide the merits of the case. *See Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a

---

[1] The Customer Agreement is Exhibit 1, attached to the Declaration of Elliott Greenfield — which is, in turn, attached to the Motion. (*See generally* Compl., Ex. A., Greenfield Decl. [ECF No. 1-1]). The Declaration simply states the Customer Agreement is a true copy of the one in effect during the times relevant to the present action. (*See id.*).

[2] The Court refers to Defendant's Motion and Reply using the pagination in the documents' footers.

plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). When considering facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). Legal conclusions do not benefit from this favorable reading. *See Iqbal*, 556 U.S. at 679.

A court's Rule 12(b)(6) analysis is limited to the four corners of the complaint, including incorporated exhibits. *See Middleton v. IBM*, 787 F. App'x 619, 622 (11th Cir. 2019) (citing *George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).

### III. DISCUSSION

**A. The Court Will Not Consider the Customer Agreement at this Stage**

Defendant contends its Customer Agreement bars Plaintiff's claims and insists the incorporation-by-reference doctrine permits the Court's consideration of this document, despite it being extrinsic to the Complaint.[3] According to Defendant, "[t]he Court may consider the Customer Agreement in deciding this motion to dismiss because the relationship giving rise to Plaintiff's claims derives from that contract."[4] The Court disagrees it may consider the Agreement

---

[3] (*See* Mot. 1–2 & n.2 (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *SFM Holdings v. Bank of Am. Sec.*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Greenwood Nursery, Inc. v. Home Depot, U.S.A., Inc.*, No. 08-cv-216, 2008 WL 4181186, at *2 (N.D. Ga. Sept. 4, 2008))).

[4] (Mot. 2 n.2 (alteration added; citing cases cited *supra* note 3)).

in resolving the Motion.

"Under the doctrine of incorporation by reference, [courts] may [] consider documents attached to the motion to dismiss *if they are referred to in the complaint*, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (alterations and emphasis added). By way of example, the Court of Appeals for the Eleventh Circuit has applied the incorporation-by-reference doctrine to news articles partially quoted in a complaint, *see Horsley*, 304 F.3d at 1133–35; agreements creating a brokerage relationship, where a complaint specifically refers to "account opening documents," *SFM Holdings*, 600 F.3d at 1337 (internal quotation marks and citation omitted); and product labels which were the subject of deceptive advertising claims — but not attached to the complaint, *see Hi-Tech Pharm.*, 910 F.3d at 1189). Common to all of these cases is a complaint referring *somehow* to a document — the complete, undisputed version of which may be provided by a defendant for a court's consideration on a motion to dismiss under Rule 12(b)(6).[5]

Defendant skips over this requirement, failing to show the Complaint refers to the Customer Agreement (or any other contract between the parties), and thus the incorporation-by-reference doctrine does not apply. At this stage in the proceeding, the Court will not consider

---

[5] Defendant provides one unpublished district court decision supporting its position that a relationship-governing agreement may be considered on a motion to dismiss, even if the complaint never mentions the agreement itself. *See Greenwood Nursery*, 2008 WL 4181186, at *2. The *Greenwood Nursery* court read *Horsley* as expanding the incorporation-by-reference doctrine to any undisputed agreement governing the parties' relationship, so long as the parties' relationship is central to the complaint. *See id.* ("In this case, the [agreement] satisfies the test of *Horsley*. Even though the [p]laintiff has not plead a breach of contract, the [agreement] is central to the [p]laintiff's claims because the [agreement] governs the entire business relationship between the [p]laintiff and [d]efendant. It is proper to consider the attached contract without converting the [m]otion into one for summary judgment." (alterations added)). The undersigned is unconvinced *Horsley* represents such an expansive application of the incorporation-by-reference doctrine given the context in which *Horsley* was decided: news articles which were quoted — and thus referred to — in a complaint. *See* 304 F.3d at 1133–35.

Defendant's arguments based on this extrinsic document.[6]

**B.     Plaintiff States Claims in Counts I and II**

Setting aside the Customer Agreement leaves Defendant with only one principal argument under Rule 12(b)(6): Plaintiff fails to state a claim for negligence in Count I and breach of fiduciary duty in Count II because Plaintiff's allegations of duties — in both Counts — are wholly conclusory. (*See* Mot. 5–6). The Court discusses each claim for relief in turn.

*Count I: Negligence.*   Under Florida law,[7] stating a negligence claim requires alleging a defendant had a duty "to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (citation omitted). The existence of a duty is linked to the foreseeability of the risks at issue and may arise from several sources, including from "the general facts of the case." *Id.* (citation omitted).

Plaintiff alleges securities under a T1 Halt cannot be traded for the duration of the halt; securities broker-dealers are aware customers need to be informed about stocks subject to a T1 Halt, to protect customers from stock price volatility; Defendant marketed its securities broker-dealer services to novice investors; these novice investor-customers used Defendant's interface for securities trading, including price quotations; and Defendant's interface did not alert its customers that securities were subject to a T1 Halt and permitted customers to place trade orders on halted

---

[6] On a motion to dismiss, courts have the option to consider matters outside the pleading by treating the motion as one for summary judgment under Rule 56. *See Concordia v. Bendekovic*, 693 F.2d 1073, 1075 & n.1 (11th Cir. 1982). The Court declines to engage in this exercise on the limited record before her and given the briefing does not comply with Local Rule 56.1.

[7] Defendant argues California law should apply to Plaintiff's claims, based on the Customer Agreement's choice-of-law provision. (*See* Mot. 5). Because the Court is not considering the Agreement at this stage, the Court applies Florida law — which the parties agree would apply if the Agreement's provisions do not control. (*See id.* ("Dismissal would also be required under Florida law for the same reasons[.]" (alteration added)); Resp. 11 ("[T]he choice of law provision in the Agreement is disputed, as well, and this Court should not consider same. Florida law would apply to all tort claims." (alteration added))).

securities. (*See* Compl. ¶¶ 1–10, 12–13, 16–19, 21). Given this context, Plaintiff alleges a foreseeable risk — novice investors unknowingly placing trade orders on T1 Halted stocks and suffering from price volatility — which Defendant, as a securities broker-dealer, should have protected its customers against. *See, e.g.*, *Clay Elec.*, 873 So. 2d at 1186 ("Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service . . . assumes a duty to act carefully and to not put others at an undue risk of harm." (footnote call number and citation omitted; alteration added)). The Complaint thus adequately states a duty, and the Motion is denied as to Count I.

***Count II: Breach of Fiduciary Duty.*** Defendant insists Plaintiff fails to plead fiduciary duties because she does not allege the existence of a fiduciary relationship. (*See* Mot. 6). In Florida, "[t]o establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989) (alteration added; citing *Barnett Bank of W. Fla. v. Hooper*, 498 So. 2d 923 (Fla. 1986)).

Plaintiff describes Defendant specifically undertaking to provide securities brokerage services to novice investors, and she alleges these novices are peculiarly reliant on Defendant for securities trading-related information by virtue of Defendant's role as broker-dealer and creator of its securities trading interface and the customer's own inexperience. (*See* Compl. ¶¶ 1–12, 14, 59–63). This plausibly states a fiduciary relationship. *See Bankest Imports*, 717 F. Supp. at 1541. Defendant's Motion is denied as to Count II.

## IV. CONCLUSION

Plaintiff provides sufficient facts to plead duties to support her negligence claim in Count I and breach-of-fiduciary-duty claim in Count II. The Court will not consider Defendant's arguments predicated on the Customer Agreement at this stage. Accordingly, it is

CASE NO. 20-24897-CIV-ALTONAGA/Torres

**ORDERED AND ADJUDGED** that Defendant, Robinhood Financial's Motion to Dismiss **[ECF No. 21]** is **DENIED**. Defendant shall file its answer to the Complaint **[ECF No. 1-1]** by **May 5, 2021**.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of April, 2021.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record