**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 20-cv-24897-CMA/Torres

SHTERNA PINCHASOV, Individually and on Behalf of
All Other Similarly Situated Plaintiffs,

    v.

ROBINHOOD FINANCIAL LLC,

        Defendant.

_____/

**NON-PARTY VLADIMIR TENEV'S MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT.......................................................................................................................3

    I.    THE APEX DOCTRINE BARS PLAINTIFF FROM SEEKING TO DEPOSE MR. TENEV...................................................................................................3

    II.   THE DOCUMENT DEMANDS IMPOSE AN UNDUE BURDEN ON MR. TENEV...................................................................................................6

        A.  The Information Sought Is Not Relevant to This Case. ........................6

        B.  Plaintiff's Document Demands Seek Information Available from RHF and Are Overly Broad and Temporally Unlimited.......................................8

CONCLUSION....................................................................................................................9

Non-party Vladimir Tenev moves to quash the subpoena Plaintiff Shterna Pinchasov served on Mr. Tenev on June 15, 2021 (the "Subpoena") and for a protective order under Federal Rules of Civil Procedure 26(c) and 45(d)(3).[1]

## PRELIMINARY STATEMENT

In blatant disregard of this Circuit's "Apex Doctrine," Plaintiff seeks to depose Vladimir Tenev, the co-founder and CEO of non-party Robinhood Markets, Inc., without even a pretense of meeting the steep standard for doing so. Plaintiff does not, and cannot, demonstrate – as required – that Mr. Tenev has unique, first-hand knowledge of any of the facts giving rise to Plaintiff's claims. Nor can Plaintiff demonstrate that she has exhausted without success other less burdensome means of obtaining information about those facts. Indeed, this action is in the early stages of discovery, and the parties have yet to conduct a single deposition or engage in meaningful document discovery. Moreover, as the Subpoena's document requests make clear, most (if not all) of the topics on which Plaintiff seeks testimony from Mr. Tenev do not even relate to the claims in this case, but instead to the subject matter of a separate lawsuit pending before this Court, the multi-district litigation captioned *In re Jan. 2021 Short Squeeze Trading Litigation*, No. 21-md-02989-CMA (the "MDL"). The Court should reject this abusive tactic and quash the Subpoena.

The Subpoena should also be quashed to the extent that it seeks the production of documents from Mr. Tenev because the documents sought are unrelated to the subject matter of this litigation and therefore impose an undue burden. The focus of these document demands is

---

[1] Although Magistrate Judge Torres's standing discovery order includes a process for resolving discovery disputes between the parties, it is not clear whether that process applies to a non-party served with a subpoena under Rule 45. Mr. Tenev files this motion out of an abundance of caution so as to avoid potentially waiving any defenses.

testimony Mr. Tenev provided to Congress on February 18, 2021 in the wake of the historic volatility in the stock of GameStop and other companies and Robinhood's decision to temporarily limit purchases of those stocks. Nowhere in that testimony does Mr. Tenev mention the subject of this litigation, T1 halts, which are imposed by a stock exchange (not by Robinhood). And, as with the deposition itself, the information sought in the document demands is available from Defendant, and so there is no basis to impose the burden and expense of a document production on a non-party.

The Court should quash the Subpoena and/or issue a protective order precluding the deposition and document production.

## BACKGROUND

In November 2020, Plaintiff commenced this suit against Robinhood Financial LLC ("RHF") asserting negligence and breach of fiduciary duty claims based on allegations that RHF should have prevented customers from using its trading platform to place trade orders for stocks subject to a "T1 Halt." (Compl. ¶¶ 17-22.) A T1 Halt is a temporary suspension of trading by a stock exchange pending the release of material news about a company. Plaintiff claims that she suffered losses in connection with a T1 Halt that suspended trading in the stock of Hertz Corporation in March 2020 – specifically, that her pre-halt trade order for Hertz stock was executed after the T1 Halt was lifted and the market price had dropped. (Compl. ¶¶ 18-19.)

On June 15, Plaintiff served the Subpoena, which sets the date for the deposition as July 8 and demands a wide-ranging set of 18 categories of documents to be produced at the deposition. (Ex. 1, Schedule A.)[2] All 18 document requests seek materials related to Mr. Tenev's February

---

[2] Citations to "Ex. _" refer to the exhibits attached to the accompanying Declaration of Elliot Greenfield. Citations to "Tenev Decl." refer to the accompanying Declaration of Vladimir Tenev.

18, 2021 testimony before the United States House of Representatives Committee on Financial Services relating to the historic market volatility in the stocks of GameStop Corp. and other companies in January 2021, and the temporary trading limits that RHF put into place on those stocks in order for RHF to meet its clearinghouse deposit requirements (the "Congressional Testimony").[3] (Ex. 2.) For example, the Subpoena seeks "any and all documents" underlying statements Mr. Tenev made during his testimony and all documents he relied upon to prepare for it. (Ex. 1, Schedule A.)

To date, the parties have exchanged initial disclosures, Plaintiff has noticed a Rule 30(b)(6) deposition (with a proposed date of July 15) and Plaintiff served her first set of document requests and interrogatories on June 14. (Exs. 3-5.) RHF has thirty days, or until July 14, to serve responses and objections. Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). No depositions have taken place, and neither party has produced any documents.

## ARGUMENT

**I. THE APEX DOCTRINE BARS PLAINTIFF FROM SEEKING TO DEPOSE MR. TENEV.**

The Apex Doctrine bars Plaintiff from seeking to depose Mr. Tenev because she has not – and cannot – satisfy her burden of demonstrating that (*i*) Mr. Tenev has "unique, non-repetitive, firsthand knowledge of the facts at issue" and (*ii*) "other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *ADT LLC v. Vivint, Inc.*, 2017 WL 5640727, at *1 (S.D. Fla. Aug. 31, 2017); *see also Hayes Healthcare Servs., LLC v. Meacham*, 2019 WL 7708240, at *1 (S.D. Fla. July 1, 2019) (same). The Apex Doctrine was developed precisely for circumstances like these and

---

[3] Seventeen of the requests expressly refer to the Congressional Testimony, and the remaining request (No. 1) quotes from it. (Ex. 2.)

"restrict[s] parties from deposing high-ranking officials because (by virtue of their position) they 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'" *Harvey v. Home Depot U.S.A., Inc.*, 2011 WL 13220995, at *3 (S.D. Fla. Apr. 25, 2011) (quoting *Simon v. Pronational Ins. Co.*, 2007 WL 4893478, at *1 (S.D. Fla. Dec. 13, 2007)). Plaintiff bears the burden of demonstrating that Mr. Tenev's deposition is necessary and that both prongs of the Apex Doctrine are satisfied. *See Little League Baseball, Inc. v. Kaplan*, 2009 WL 426277, at *2 (S.D. Fla. Feb. 20, 2009) (precluding apex deposition where the party seeking the deposition did not "satisfy his burden" of showing that the potential deponent had "unique or special knowledge" that "could not be gleaned from other, less burdensome means of discovery").

Plaintiff is unable to establish that Mr. Tenev possesses direct, personal knowledge of the facts at issue in this lawsuit that is unique or superior to RHF's officers or employees. Such a failure is sufficient reason in and of itself to quash the Subpoena. *See, e.g.*, *Harvey*, 2011 WL 13220995, at *3 (granting motion for protective order where the plaintiff's only allegation was that the CEO had signed the "Code of Conduct" for the defendant company in a slip-and-fall case). To the contrary, Mr. Tenev has no unique, firsthand knowledge of the facts at issue in this lawsuit, such as RHF's policies and procedures for handling T1 Halts or other regulatory halts, the alleged T1 Halt affecting trading in the stock of the Hertz Corporation or Plaintiff's trading history. (Tenev Decl. ¶ 6.) Any information that Mr. Tenev knows regarding the facts at issue in this lawsuit is also known to the officers or employees of RHF. (Tenev Decl. ¶ 6.) As CEO of Robinhood Markets, Inc., Mr. Tenev necessarily delegates responsibility over the day-to-day operations of that company and its affiliates to their officers and employees. (Tenev Decl. ¶ 4.) Mr. Tenev is not a director, officer or employee of RHF. (Tenev Decl. ¶ 5.)

Moreover, to the extent that Plaintiff attempts to rely on Mr. Tenev's Congressional Testimony and surrounding press to demonstrate that Mr. Tenev is uniquely knowledgeable about the events giving rise to this lawsuit, that reliance is misplaced. That testimony addressed certain trading restrictions imposed by Robinhood in January 2021, and not T1 Halts imposed by a stock exchange prior to November 2020, which are the subject matter of this suit. (Compl. ¶ 40.)

Plaintiff cannot show that other less intrusive means of discovery have been exhausted because the parties have not yet engaged in meaningful discovery – indeed, *no* documents have been exchanged and *no* depositions have occurred. *See Stelor Prods., Inc. v. Google, Inc.*, 2008 WL 4218107, at *4 (S.D. Fla. Sept. 15, 2008) (holding that "in light of the fact that [the potential deponents] are Google's founders and top executives, it makes sense to require plaintiff to seek the information from other sources," even where plaintiff credibly alleged that the founders had unique knowledge). Furthermore, outside of a 30(b)(6) deposition notice, which Plaintiff seeks to take *after* Mr. Tenev's deposition, she has not noticed the deposition of *any* RHF employees. To allow Mr. Tenev's deposition in these circumstances would render the Apex Doctrine meaningless because Plaintiff has done absolutely nothing to justify her desire to depose the co-founder and CEO of a non-party as her opening salvo in discovery.

In similar circumstances, courts in this District regularly rely on the Apex Doctrine to reject attempts to depose senior executives.[4]

---

[4] In addition to the cases cited above, *see, e.g., Cruz v. Green*, 2019 WL 5208913, at *4 (S.D. Fla. Feb. 7, 2019) (Apex Doctrine prohibited deposition of Broward County Sheriff where plaintiff had as yet deposed no other officials or officers of the Broward County Sheriff's Office); *Kaether v. Armor Corr. Health Servs., Inc.*, 2017 WL 11536874, at *1 (S.D. Fla. Nov. 14, 2017) (Apex deposition of CEO and Chief Medical Officer barred where, despite a "colorable argument" that executives had unique knowledge, there was no argument that less intrusive means of discovery had been exhausted); *Gavins v. Rezaie*, 2017 WL

## II.     THE DOCUMENT DEMANDS IMPOSE AN UNDUE BURDEN ON MR. TENEV.

The Court should quash the Subpoena to the extent that it seeks documents from Mr. Tenev because the document demands impose an "undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv). The undue burden analysis requires the court to "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan v. Comm'r, Miss. Dep't of Corrs.*, 947 F.3d 1322, 1337 (11th Cir. 2020).

Factors identified by the Eleventh Circuit as pertinent to the undue burden analysis weigh in favor of quashing the Subpoena: the relevance of the information requested to the underlying litigation, the breadth of the document request, the time period covered by the request, the burden that would be imposed by producing the requested documents and whether the subpoena's recipient is a non-party. *Id.*; *see also Trigeant Ltd. v. Petroleos de Venez., S.A.*, 2009 WL 10668731, at *2 (S.D. Fla. May 5, 2009) (listing factors).

### A.     The Information Sought Is Not Relevant to This Case.

The Court need go no further than the "relevance" inquiry to determine that the document demands impose an undue burden because they overwhelmingly seek information about the

---

3034621, at *1-2 (S.D. Fla. Jul. 18, 2017) (Apex Doctrine prohibited depositions of Mayor and Chief of Police of the City of South Miami where plaintiff was suing a police officer); *Tillman v. Adv. Pub. Safety, Inc.*, 2017 WL 679980, at *2, 4 (S.D. Fla. Feb. 16, 2017) (Apex Doctrine barred deposition of a high-ranking corporate officer serving as Vice President and General Counsel of company in employment dispute); *Noveshen v. Bridgewater Assocs., LP*, 2016 WL 536579, at *1-2 (S.D. Fla. Feb. 3, 2016) (granting motion to quash deposition of nonparty Chairman and Co-Chief Investment Officer of defendant entity where plaintiff had failed to make any showing that he possessed unique, firsthand knowledge); *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527-29 (S.D. Fla. 2015) (Apex Doctrine prohibited depositions of co-founders and CEO where no other lesser-ranking employees had been deposed); *Buckler v. Israel*, 2014 WL 7777678, at *2 (S.D. Fla. Nov. 13, 2014) (Apex Doctrine barred deposition of former Broward County Sheriff where plaintiffs failed to show that the information they sought could not be obtained from any other source or that the Sheriff had any firsthand knowledge about the matters at issue in the case).

Congressional Testimony, which has no bearing on the events giving rise to this litigation and sheds no light on RHF's policies and procedures with respect to T1 Halts. Indeed, nowhere in the Congressional Testimony are T1 Halts even mentioned.[5]

As the Eleventh Circuit has made clear, "a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Jordan*, 947 F.3d at 1329. The document demands make clear that Plaintiff is abusing the discovery process to seek irrelevant information and harass Mr. Tenev – a misguided and improper tactic that the Court should reject. To the extent Plaintiff seeks information related to T1 Halts, there is no basis to conclude that Mr. Tenev – a non-party – has any information on that topic that Plaintiff could not obtain from Defendant. (Tenev Decl. ¶ 6.)

Plaintiff's overreach is clear on the face of the Subpoena, which reads like one that was issued in connection with the MDL, not a case relating to an alleged T1 Halt of Hertz stock occurring in March 2020. One of the demands broadly asks for "[a]ll documents, whether in written or electronic format, relied upon by you for your Congressional testimony provided on February 18, 2021," eight of the demands make no reference whatsoever to T1 Halts and several others relate to options trading or transactions in the stocks subject to the January 2021 trading restrictions (*e.g.*, GameStop). (Ex. 1, Schedule A.) Not once in the Complaint does Plaintiff even *refer* to options trading, let alone suggest that it bears any relevance to her case. With respect to the demands that do mention T1 Halts, Plaintiff has simply tacked that reference on at the end of the demands – presumably in an attempt to disguise the irrelevance of the demands to this litigation.

---

[5] The references in the Congressional Testimony to "T1" or "T+1" refer to a one-day settlement period between the execution of a trade and the transfer of cash and securities between buyers and sellers. This settlement period has no connection to the T1 Halts at issue in this litigation.

### B. Plaintiff's Document Demands Seek Information Available from RHF and Are Overly Broad and Temporally Unlimited.

To the extent that any of the documents demanded in the Subpoena actually relate to the subject matter of this litigation – RHF's practices with respect to T1 Halts – there is no reason that Plaintiff could not obtain that information directly from RHF, rather than from a non-party. "[W]here the requested information can also be obtained from a party, courts have taken a more restrictive approach to compelling Rule 45 discovery from a non-party." *Luppino v. Safeguard Prod. Int'l LLC*, 2013 WL 12382718, at *4 (N.D. Ga. July 19, 2013); *see also Maxwell v. Health Ctr. of Lake City, Inc.*, 2006 WL 1627020, at *2, 4 (M.D. Fla. June 6, 2006) ("consider[ing] the interests of the non-parties" and instructing defendant to obtain relevant documents "directly from Plaintiff"). Similarly, Rule 26 requires the Court to limit the extent of discovery sought when the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). RHF's practices related to T1 Halts are managed by employees of RHF, and not by Robinhood Markets, Inc., the non-party company of which Mr. Tenev is CEO. (Tenev Decl. ¶¶ 3, 6.) As noted above, Mr. Tenev is not a director, officer or employee of RHF. (Tenev Decl. ¶ 5.) Plaintiff should seek these documents directly from RHF.

The remaining factors identified by the Eleventh Circuit also weigh in favor of quashing the Subpoena. In particular, the Subpoena is extraordinarily broad in its scope, as it demands "any and all documents" on a wide range of topics regarding the Congressional Testimony, including options trading, sources of revenue, and communications between RHF and its customers regarding the trading restriction placed by Robinhood on GameStop stock. (Ex. 1, Schedule A.) *See United Techs. Corp. v. Mazer*, 2007 WL 788877, at *2-5 (S.D. Fla. Mar. 14, 2007) (denying motion to compel discovery from non-party where the requests asked for "all

documents" on topics unrelated to plaintiff's claim).  Moreover, few of the demands contain any temporal limitation whatsoever, and those that do seek documents over a four-year period.  (Ex. 1, Schedule A.)

## CONCLUSION

For the foregoing reasons, the Court should quash the Subpoena in its entirety and grant Mr. Tenev's motion for a protective order.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I CERTIFY that counsel for the movant have conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion.  Specifically, counsel for Defendant conferred with Plaintiff's counsel by email on February 12, by phone on February 17, by letter on May 19, by email on June 20 and by email and/or phone in other instances during this period, regarding the deposition of Mr. Tenev generally and the underlying Subpoena specifically. Counsel for Plaintiff does not agree to the relief sought in this Motion, and with respect to Defendant's June 20, 2021 invocation and request to address the application of the Apex Doctrine, Counsel for Plaintiff expressed his belief that in light of prior discussions, no further conferral is necessary, and Plaintiff stands on her prior stated disagreement.

Dated:  June 28, 2021 	Respectfully submitted,


By: */s/ Grace L. Mead*	
Grace Mead
Florida Bar No. 49896
Ryan Thornton
Florida Bar No. 99195
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street
Suite 2200
Miami, Florida 33130
Telephone: 305-789-3559
Email: gmead@stearnsweaver.com
Email: rthornton@stearnsweaver.com


Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York  10022
Telephone: 212.909.6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 28, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By:  *Ryan T. Thornton*
   RYAN T. THORNTON

## SERVICE LIST

Michael A. Citron, Esq.
Florida Bar No. 105083
MAC LEGAL, P.A.
3100 N 29th Ct., Suite 100
Hollywood, Florida 33020
Telephone: (954) 395-2954
Michael@maclegalpa.com – Correspondence
Service@maclegalpa.com - Service Address


Igor Hernandez, Esq.
Florida Bar No. 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Phone (305) - 780 – 6058
service@CHGLawyers.com
ihernandez@chglawyers.com


R. Levy, Esq.
Florida Bar No. 15452
Venessa Valdes Solis, Esq.
Florida Bar No. 77122
LEVY & PARTNERS, PLLC
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Telephone: (954) 727-8570
elevy@lawlp.com – Service Address
venessa@lawlp.com – Service Address
Maritza@lawlp.com – Service Address