**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
(Miami Division)

**CASE NO. 20-CV-24897-CMA**

SHTERNA PINCHASOV, Individually and
on Behalf of All Others Similarly Situated,

     Plaintiff,

        v.

ROBINHOOD FINANCIAL LLC,

     Defendant.

_____/

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, SHTERNA PINCHASOV, Individually and on Behalf of All Others Similarly

Situated, by and through her undersigned counsel, files this Motion for Class Certification pursuant

to Federal Rule of Civil Procedure 23, and as grounds in support thereof state as follows[1]:

## INTRODUCTION

The Plaintiff brings this case to vindicate the rights of a large swath of stock traders that

fell victim to the Defendant's disregard of its most basic duties as a broker-dealer. Defendant

Robinhood Financial, LLC is a broker-dealer who markets to novice, or retail investors. As a

broker-dealer, the Defendant is bound by the rules of the markets and owes a duty of care to its

customers. From time to time, stock exchanges issue trading halts in order to prevent or slow down

---

[1] Defendant has objected to the majority of Plaintiff's discovery requests and therefore documents
have not been produced in response to the same. Much of this discovery asks for specific
information which would tend to prove issues of class certification. The parties have met and
conferred and are attempting to work out the discovery issues before involving the Court. Because
of the deadline for class certification, this Motion is filed without the benefit of this discovery.

1

volatility. When these trading halts are in place, broker-dealers are not able to effectuate trades on the halted securities. When the halts are ultimately lifted, price of the securities subject to the halt tend to vary significantly from their pre-halt trading price. As a result, traders should approach these securities with extreme care. Since Defendant's inception in 2013 and up until it was sued by the Plaintiff in this case, the Defendant did not in any way let its customers know that particular securities were being halted. Instead, the Defendant would allow its customers to place orders on halted securities. Additionally, the Defendant would not warn or in any way indicate to its customers that trading in said securities was halted.

Because Defendant's platform is a software platform, the operation of the trades and the customer interface is a uniform process. As such, every customer who traded on the Defendant's platform was allowed to enter trades in the same fashion, and did not receive any warning, information or notice in the same fashion. By design, every customer was affected in the same way as the Plaintiff. As a result of the Defendant's conduct, the Plaintiff and potentially millions of other similarly situated investors were injured when they traded on securities that were the subject of trading halts without the benefit of Defendant notifying or informing them of such halts.

## PROPOSED CLASS

In Plaintiff's Complaint, Plaintiff sought a class pursuing damages for all former and current customers of Robinhood in the United States and its territories who were affected by Robinhood's failure to prevent customers from using its interface for stocks which were subject to a T1 Halt at any time within 4 years preceding the filing of this lawsuit (the "Class Period"). *See* [D.E. 1-1, at Pg. 8, ¶40]. As a preliminary matter, Plaintiff asks this Court to define the class as "all former and current customers of Robinhood in the United States and its territories who were affected by entering a trade during a halt at any time within 4 years preceding the filing of this

2

lawsuit". This is slightly different than what is found in the Complaint, mainly because of the word "halt" instead of "T1 Halt". Due to matters brought to Plaintiff's attention in discovery, this amended definition is necessary to encompass all potential class members, without exclusion due to a possible misnomer because different terminology is used on different stock exchanges. In that regard, Defendant included the following general objection in its Responses and Objections to Plaintiff's First Request for Production and First Set of Interrogatories, served on July 14, 2021:

> 17. Defendant objects to the Requests and Interrogatories to the extent they use the undefined term "T1 Halt."  Defendant's understanding is that "T1 Halt" is a code used for trading halts on the Nasdaq stock exchange, and the alleged halt in the trading of Hertz Global Holdings, Inc. common stock referred to in the Complaint therefore cannot be a "T1 Halt" because that stock traded, at all relevant times, on the New York Stock Exchange. In responding to the Requests and Interrogatories, Defendant will interpret "T1 Halt" to include the equivalent type of trading halt – *i.e.*, a trading halt pending the release of material news about the issuer – on the New York Stock Exchange.

Defendant is informing Plaintiff that, depending on the exchange (NYSE, Nasdaq or others), the same or similar halts may be referred to differently. Plaintiff contends that regardless of the type of halt or manner in which the halt is referred to, any trading halt has the same effect on an investor that is placing an order during same, regardless of the name of, or the reason for, the halt. A halt pauses or stops trading until the halt is lifted. If a halt does not pause or stop trading on a stock, such a halt would not be considered in the class definition. The additional change to the class definition is in line with providing a definition that "specifies a particular group that was harmed during a particular time frame, in a particular location, in a particular way" and "facilitates a court's ability to ascertain its membership in some objective manner." *Bentley v. Honeywell Intern., Inc.,* 223 F.R.D. 471, 477 (S.D. Ohio 2004). Notably, "a court need not accept or reject a proposed class definition on a take it or leave it basis." *Grillasca v. Hess Corp.*, No. 8:05-cv-1736-T-17-TGW, 2007 U.S. Dist. LEXIS 53356, at *10 (M.D. Fla. July 24, 2007) (citing to *In re*

3

*Amerifirst Sec. Litigation,* 139 F.R.D. 423 (S.D. Fla. 1991). A court may "grant certification but modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies". *Id.* Denying class certification is not the only remedy and in the interest of justice, "any error, if there is to be one, should be committed in favor of allowing class action". *Id.*

An amendment to a class definition in a motion to certify class is not a new concept. Courts have allowed amendments at the certification stage after a brief analysis as to potential prejudice to the opposing party. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010) (allowing modification of class definition during class certification briefing because "the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants"). At least one court in the Southern District did not perform any analysis and simply considered the definition as stated in the motion to certify class. *See Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 680 n.1 (S.D. Fla. 2008) (when confronted with a discrepancy between   the class definition in a complaint and   motion   for class certification,   has   simply considered the latter). Candidly, courts have also denied amending class definitions after looking "at the procedural posture of the case and [holding] plaintiffs to the complaint's class definition when the equities require that". *See, e.g.*, *Ortiz v. McNeil-PPC, Inc.*, 2009 U.S. Dist. LEXIS 39584, 2009 WL 1322962 at *3 (S.D. Cal. May 8, 2013) (denying leave to file an amended complaint when a motion for class certification *had already been denied* and the deadline for amended pleadings had passed) (emphasis added)[2]. In the present case, even if the Court was to perform an analysis, by Defendant's own implication that it would be able to respond to discovery despite the

---

[2] To this extent, should the Court not consider Plaintiff's amended class definition, Plaintiff requests to amend the class definition in the Complaint either by conventional amendment or by interlineation to conform same to the discovery in the Complaint.

exact classification of the halt, shows that 1) there would be no prejudice to Defendant if the Court were to adopt the definition in this Motion and 2) no further discovery would be necessary. This is especially true when Plaintiff's discovery requests asked for information on "T1 Halts" and "halts". As such, and in line with the Southern District of Florida's *Pop's* case, Plaintiff respectfully asks this Court to consider this Motion with the defined class as stated herein.

## ARGUMENT

Federal Rule 23 "governs the class-certification issue even if the underlying claim arises under state law." *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947 (11th Cir. 2011) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437, 176 L. Ed. 2d 311) (2010)); *Gordon v. Robinhood Fin. Ltd. Liab. Co.*, No. 2:19-CV-0390-TOR, 2021 U.S. Dist. LEXIS 13457, at *5 (E.D. Wash. Jan. 25, 2021). Pursuant to Rule 23(a), the movant must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Provided the proposed class satisfies the above criteria, courts must further determine whether certification is appropriate under Rule 23(b). Where a party seeks certification of a so-called "damages class" under Rule 23(b)(3), as here, he or she must demonstrate that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As the party moving for certification, Plaintiff accepts her burden of establishing that the foregoing requirements have been satisfied. *Vega v. T-Mobile USA Inc*., 564 F.3d 1256, 1267 (11th Cir. 2009).

5

A court presented with a class certification motion must perform a "rigorous analysis" to determine whether each of these prerequisites has been satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Vega*, 564 F.3d at 1266. This analysis generally requires a factual record, identification of specific issues of fact and governing law, and consideration of "what value the resolution of the class-wide issue will have in each member's underlying cause of action." *Vega*, at 1266, 1267-70. "A party seeking class certification must affirmatively demonstrate her compliance with the Rule—that is, she must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). At the same time, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent - but only to the extent - that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). The ultimate decision to certify a class is within the Court's discretion. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). Moreover, a trial court has substantial discretion in determining whether to certify a class and Rule 23 should be given a liberal rather a restrictive construction. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 684 (S.D. Fla. 2004).

## A. The Proposed Class Satisfies the Requirements of Rule 23(A).

### 1. Numerosity

Rule 23(a)(1) provides that a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members are "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree,* 629 F. Supp. 273, 279 (M.D. Fla. 1986). While the size of the proposed class is highly relevant to the court's

determination of numerosity, practicability of joinder depends on factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. at 685 (citing *Walco Invs., Inc. v. Thenen,* 168 F.R.D. 315, 324 (S.D. Fla. 1996)); *see Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). "[A] plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega*, 564 F.3d at 1267.

The Eleventh Circuit has noted that, "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see also* Vega, 564 F.3d at 1266-67. However, "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982); *see also Hugh's Concrete & Masonry Co. v. Se. Pers. Leasing Inc.*, No. 8:12-CV-2631-T-17AEP, 2014 U.S. Dist. LEXIS 24400, at *7 (M.D. Fla. Feb. 26, 2014). Finally, "[t]he Court is given discretion to make assumptions when determining the numerosity of a class." *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 699 (M.D. Fla. 2000) (citing *Evans,* 696 F.2d at 930). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Id.*

To establish numerosity here, Plaintiff first directs the Court to Defendant Parent Company- Robinhood Markets, Inc.'s Form S-1 Registration Statement filed under the Securities Act of 1933 (the "SEC Initial Public Offering Statement" or "IPO") on July 1, 2021, which delineates the size of the population for the proposed class at all relevant times.[3] A cursory review of Nasdaq's website[4] shows that there are multiple halts that take place on multiple stocks every day. Considering the proposed class spans over four years, the halts that took place are in the hundreds, if not thousands. Considering the amount of trades executed daily on Defendant's platform, approximated by Defendant's Corporate Representative to be 3,000,000 [D.E. 65-3, pg. 68, lines 15-23] and stated definitively by Defendant in its IPO to be on average 5,000,000 in 2020 and much more in 2021[5], this would indicate that there were a significant amount of customers trading stocks that were subject to halts. Therefore, although the exact class size is unknown, general knowledge and common sense indicate that it is large, and joinder would be impractical. *Orantes-Hernandez*, 541 F. Supp. at 370. Further, Plaintiff points the Court to Defendant's Notice of Removal [D.E. 1 at ¶¶7-9], which acknowledges that "[o]n the face of the Complaint," this Action "involves 100 or more members is easily satisfied." *Id.*

---

[3] Pursuant to Fed. R. Evid. 201, Plaintiff requests this Court take notice of the "IPO" providing in part that in 2020 Defendant's "Net Cumulative Funded Accounts grew 143% to **12.5 million, increasing to 18.0 million** as of March 31, 2021". Further, Defendant's subsidiary, RHF, boasts a "digitally-native technology stack" that has "enabled [Defendant] to rapidly introduce new products and services …, while also supporting [Defendant's] ability to quickly scale, **including onboarding millions of new customers during 2020 and the first quarter of 2021**." (Emphasis added). *See* a true and correct excerpt of "IPO" attached as Exhibit "1", at Pg. 3, 134, 139, 170-71; https://www.sec.gov/Archives/edgar/data/1783879/000162828021013318/robinhoods-1.htm

[4] https://www.nasdaqtrader.com/Trader.aspx?id=TradeHalts

[5] IPO, Active Users, https://www.sec.gov/Archives/edgar/data/1783879/000162828021013318/robinhoods-1.htm (July 1, 2021); *see* a true and correct excerpt of "IPO" attached as Exhibit "2", at Pg. 123.

Additionally, as this Court noted in the February 17, 2021, Order Denying Plaintiff's Motion for Remand (the "Order"), the parties "do not dispute the present action satisfies the CAFA's basic jurisdictional requirements." [D.E. 38 at Pg. 4].[6]   The Order pointed out, "'[t]he proposed class includes "[a]ll former and current Customers of Robinhood . . . who were affected by Robinhood's failure to prevent customers from using its interface for stocks which were subject to a T1 Halt' —*not merely Hertz shareholders*." *Id*. at Pg. 8 (alterations included from original). Defendant's duties of care as alleged by Plaintiff's negligence and breach-of-fiduciary-duty claims, apply to all of Defendant's customers throughout the United States as their securities broker and thus, "rooted in customer protection, rather than a relationship created by or underlying a security." *Id*. Here, "the duty Plaintiff alleges Defendant owes its customers—to notify customers of trading halts and prevent trades from being placed on halted stocks—would presumably be owed to customers whether or not the customers were shareholders of the halted stocks." [D.E. 38 at Pg. 4, 8-9]. Therefore, the "general knowledge and common sense"[7] of the potential class size in conjunction with Defendant's filings and the Order satisfy the numerosity requirement of R. 23.

Regarding other factors courts examine to determine numerosity, it is undisputed that Defendant's customers are widely geographically dispersed across the United States – which weighs in favor of a finding of numerosity. *See In re Terazosin Hydrochloride Antitrust Litigation,* 220 F.R.D. at 685. Further, as explained in the superiority section, *infra*, many of the

---

[6]"CAFA provides federal district courts with original jurisdiction over class actions satisfying the following requirements at the time such lawsuits are filed: (1) the total amount in controversy, aggregating the claims of the individual class members, exceeds $5,000,000, exclusive of interests and costs; (2) any member of the putative class is a citizen of a state different from any defendant; and (3) there are at least 100 putative class members. *See* 28 U.S.C. §§ 1332(d)(2), (5); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007)." *Id*. at Pg. 3.

[7]*See again Orantes-Hernandez*, 541 F. Supp. at 370; *see also Hugh's Concrete & Masonry Co.*, 2014 U.S. Dist. LEXIS 24400, at *7.

individual members of the class have claims that are far too small to justify bringing individual suits against this type of Defendant. As such, Plaintiffs have met the requirements for numerosity.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For purposes of commonality, "even a single common question will do." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016). A question is common if answering it resolves "an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. At its core, the commonality requirement is designed to ensure that class-wide adjudication will "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotation and citation omitted). This does not, however, mean that every question of law or fact must be common to the class. The commonality requirement under Rule 23(a)(2) is a "relatively light burden" that demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Vega*, 564 F.3d at 1268. This part of the rule "does not require that all the questions of law and fact raised by the dispute be common," or that the common questions of law or fact "predominate" over individual issues. *Id*. "If a common question will drive the resolution, even if there are important questions affecting only individual members, then the class is 'sufficiently cohesive to warrant adjudication by representation.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, (1997)).

By way of example, in the instant case, if the answer to the common question "did Robinhood have a duty to prevent, or otherwise notify, customers from using its interface for stocks which were subject to a halt?" is "no", all of Plaintiffs' negligence and breach-of-fiduciary-duty claims will fail. As such, Plaintiff meets its burden as to the commonality requirement.

### 3. *Typicality.*

The typicality and commonality requirements are distinct but interrelated, citing Supreme Court precedent, the Eleventh Circuit Court of Appeals has stated that the "'commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (citations omitted). The typicality test is not demanding. *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV-MORE, 2021 U.S. Dist. LEXIS 123401, at *43-44 (S.D. Fla. July 1, 2021) (citations omitted).

Typicality requires that "the claims or defenses of the representative parties are typical of [but not identical to] the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see also Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (strong similarity is sufficient for typicality, even where factual differences exist). The typicality test centers on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Although similar to commonality in that it concentrates on the "nexus" between class members and their designated representative, typicality differs from commonality in that it focuses on the class representative's individual characteristics in comparison to those of the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000).

Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985). To defeat typicality, the factual variation presented by a class representative's claim "must be clear and must be such that interests of the class are placed in significant jeopardy." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996); *see also Fischler v. AmSouth Corp.*, 176 F.R.D. 583, 585-86 (M.D. Fla. 1997); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017).

Here, the common issues arising from Defendant's negligence and breach of fiduciary duty are shared by Plaintiff and the rest of the class. There is no material factual variation in Plaintiff's claim compared to the class's claims that would place the interests of the class in jeopardy.  Plaintiff's factual circumstances here demonstrate the claims and defenses are typical of the class: the injury across class members is the resulting harm caused by Defendant's negligence and breach-of-fiduciary duty within the 4 years Class Period that they used Robinhood's "deliberately engineered" interface. *See e.g.*, [D.E. 1-1 at ¶¶ 20-22, 40].  Specifically, the course of conduct by Defendant, which is the based on the same policies and practices for all its customers [D.E. 65-3, pg. 37, lines 2-12][8], is Defendant's failure to fulfil its duty of managing that "deliberately engineered" interface for its customer-base to same's detriment and legally cognizable harm. *Id*. All customers use the same interface to place trades [D.E. 65-3, pg. 60, lines 11 - pg. 61, lines 1], and all customers places trades in the same way, and all trades are routed the same way for execution for all customers [D.E. 65-3, pg. 59, line 13 - pg. 60, line 19].

---

[8] See Deposition Transcript of Defendant's Corporate Representative, attached hereto as Exhibit "3" [D.E. 65-3].

Further, all stocks subject to halts are treated the same way by Robinhood, [D.E. 65-3, pg. 100, lines 2-18]. The halts affect customers in the same way in that Robinhood allows them to place the trade, but it will not be executed [D.E. 65-3, pg. 105, lines 1-6]. Finally, Robinhood did not notify any of its customers of halts prior to and during 2020, a policy that Defendant changed during 2021. [D.E. 65-3, pg. 100, lines 19-23 & pg. 109, lines 6-12]. As such, Defendant's actions would not be unique to Plaintiff; all class members were subjected to the same course of conduct in the same way, and would have been injured in the same way, which satisfies typicality. *Hanon*, 976 F.2d at 508. Additionally, the legal arguments are anticipated to be whether the Defendant owed such a duty during the 4 years Class Period encompassed by this cause. [D.E. 49]. Therefore, the typicality requirement has been established by Plaintiff here[9].

### 4. Adequacy of Representation.

The final hurdle interposed by Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement applies to both the named class representatives and to their counsel. The "adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Alvarez v. Loancare LLC*, No. 20-21837-CIV-ALTONAGA/Goodman, 2021 U.S. Dist. LEXIS 9281, at *35-36 (S.D. Fla. Jan. 19, 2021) (internal citations omitted).

Plaintiff is prepared to serve as a class representative, having already devoted significant time and effort to the litigation. (*See* Pl.'s Affidavit. ¶4, attached as Exhibit "4"). She states she has

---

[9] Plaintiff's arguments for the satisfaction of commonality should also be considered for typicality, and vice versa.

no known conflict of interest with the classes' members. (*See id.* ¶5).[10] Nothing at this stage indicates that Plaintiff is "ill-equipped to serve as class representative for the duration of this case." *See Gordon v. Robinhood Fin. Ltd. Liab. Co.*, No. 2:19-CV-0390-TOR, 2021 U.S. Dist. LEXIS 13457, at *13-14 (E.D. Wash. Jan. 25, 2021) (finding no reason to doubt the competency or commitment of the class representative and class counsel, nor any conflicts at present). While discovery is outstanding, and not all class members have come forward, Plaintiff satisfied Rule 23(a)(4)'s adequacy requirement, as "Plaintiff need not be ideal; adequacy is all that is required." *Alvarez* at *35-36 (S.D. Fla. Jan. 19, 2021).

Plaintiff's counsels are also qualified to represent this class. Plaintiff's legal team has experience with class action litigation similar in scope to the present action, and multi-district litigation relating to other matters pending in the Court's jurisdiction. *See, e.g.*, *In re: Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924; 10-MD-2924 (S.D. Fla.); *Dede v. LJ Florida Property Svcs., LLC*, Case No.: 2021-CA-00275 (Circuit Court, Polk County, Florida). All of the Plaintiff's counsels have experience in class action litigation, and at least one of those law firms has been class counsel dating as far back as 2009. *See, e.g., Turner v. Falvin Enterprises, Inc., Case No.: 09-CV-20366-King-Bandstra* (Order Granting Motion for Class Certification, June 18, 2009). Each of the counsels involved in this litigation also has experience in Federal Court and specifically in the Southern District of Florida. Further, Mr. Levy has represented companies, banks and broker dealers-dealers in capital market transactions, SEC and stock exchange requirements, and corporate governance matters, including fiduciary duties. Additionally, counsels for the Plaintiff have expended significant efforts in this litigation to adequately represent the class.

---

[10] *See also* D.E. 1-1 at ¶49.

Such efforts include extensive investigation over a period of months, including numerous research in the functioning of online trading platforms, broker-dealer responsibilities, and trading halts. As a result, counsel has devoted enormous time and resources to becoming intimately familiar with Defendants' protocols and all the relevant law and procedures. Given the above, Plaintiff thus appears to show she and her counsel are adequate.

**B. The Proposed Class Satisfies Rule 23(b)(3).**

In addition to establishing the elements of Rule 23(a), the proposed class must also satisfy one of the three additional requirements of Rule 23(b). *See Alvarez v. Loancare LLC*, No. 20-21837-CIV-ALTONAGA/Goodman, 2021 U.S. Dist. LEXIS 9281, at *36 (S.D. Fla. Jan. 19, 2021). Here, Plaintiff asserts the certification of the class is appropriate under Rule 23(b)(3).

*1. The Common Questions of Law and Fact Predominate.*

Rule 23(b)(3) requires that (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). The Court considers each of these prerequisites. *Id.* at *38. Although Rule 23(a)(2) and Rule 23(b)(3) both address commonality, "the 23(b)(3) test is "far more demanding," and asks, "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 2250 (1997).

Predominance "is perhaps the central and overriding prerequisite for a Rule 23(b)(3) class." *Vega*, 564 F.3d at 1278 (citation omitted). Common issues of fact and law predominate if they "have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (internal citation omitted). "Where, after adjudication of the class-wide

15

issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Id.* (citation omitted). "The predominance inquiry requires an examination of the claims, defenses, relevant facts, and applicable substantive law, to assess the degree to which resolution of the class wide issues will further each individual class member's claim against the defendant." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 789 (11th Cir. 2014) (alteration adopted; internal quotation marks and citations omitted). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (citations omitted).

Plaintiff asserts a claim under common law negligence and breach of fiduciary duty. [D.E. 1-1 at ¶¶51-63]. Under Plaintiff's first theory of liability, negligence, it is black letter law that a plaintiff, in order to prevail on a negligence claim, must prove: "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Jackson v. US Steel Corp.*, 763 F. App'x 805, 808 (11th Cir. 2019) (internal quotations omitted). Plaintiff(s) must prove Defendant conducting business as a broker-dealer nationally via its "deliberately engineered" interface, failed to notify or otherwise prevent its customer-base, *i.e.*, Plaintiff(s), of trading halts occurring during the Class Period [D.E. 1-1 at ¶40], despite having knowledge of those Halts, and that by Defendant's failure(s), the Plaintiff(s) suffered financial injury. Defendant's applicable course of conduct in the context of trading halts, as alleged in Plaintiff's Complaint, as described *supra* in Section A.3 (entitled "Commonality"), will be the predominate issue at trial.

16

Similarly, in order to state a claim for breach of fiduciary duty in this Action, Plaintiff(s) must show: (1) the existence of such duty; (2) defendant's breach of this duty; and (3) damages proximately caused by defendant's breach. *Wall St. Mortg. Bankers, Ltd. v. Attys. Title Ins. Fund, Inc*, No. 08-21648-CIV, 2008 U.S. Dist. LEXIS 103605, at *7 (S.D. Fla. Dec. 23, 2008) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)). A fiduciary duty exists when there is a "relation of trust and confidence [] between the parties." *Id.* Plaintiff contends that predominance is satisfied where the overarching class wide question in this litigation is whether Defendant had a duty to Plaintiff(s) (the same duty to the other class members – whether Defendant should have notified them of trading halts and/or not allowed them to initiate stock trades during halts), breached that duty (the same breach for all the class members – by not notifying them of halts and/or by allowing them to trade stocks during halts), which then proximately caused damage or injury to the Plaintiff(s) (the same injury for the class members – monetary).

The claims and factual circumstances would be the same across the board, as Robinhood's Corporate Representative has testified that Defendant treats all their customers the same in that they had the same policies and procedures during the Class Period when a trading halt occurs for all their customers [D.E. 65-3, pg. 110, lines 6-14], their customers all used the same platform [D.E. 65-3, pg. 60, lines 11-19], during the relevant time period no customer ever received notification of any halts [D.E. 65-3, pg. 100, lines 19-23][D.E. 65-3, pg. 109, lines 6-12], all customers were allowed to place orders during halts [D.E. 65-3, pg. 105, lines 1-6], and that all these orders were handled the exact same way for all customers [D.E. 65-3, pg. 113, lines 1-25] [D.E. 65-3, pg. 59, line 13 - pg. 60, line 19].

It follows, that uniform and efficient resolution of the above referenced class-wide questions would further each class members claim against Defendant. The few factual differences

would rest in facts that would be irrelevant, such as which stock each class member traded, which would be of no concern as long as trades were initiated during a trading halt. This was recognized by this Court when it stated that the proposed class was not be limited to Hertz stock. [D.E. 38 at Pg. 8] ('[t]he proposed class includes "[a]ll former and current Customers of Robinhood . . . which were subject to a T1 Halt' —*not merely Hertz shareholders*."). Further, because all class members suffered the same harm in the same way as Plaintiff, which is the result of Defendant's uniformly applying its policies to its customers, if the above elements are proven by Plaintiff, then Plaintiff's results would have a direct impact on every class member's effort to establish liability and entitlement to monetary relief. *Klay*, 382 F.3d at 1255. Although class discovery will continue to run months past this Motion, if Plaintiff(s) can prove these facts, it will undoubtedly negate any defenses to the Action by common evidence to all class participants. *Larsen v. Union Bank, N.A. (In re Checking Account Overdraft Litig., MDL No. 2036)*, 275 F.R.D. 666, 678 (S.D. Fla. 2011).

Finally, any concern for individualized inquiries do not predominate over the common questions, and regardless, can be dealt with in other ways not fatal to class certification. In fact, the only possible individualized inquiry would be the amount of funds lost by each member, and this one issue does not prevent class certification. Although different class members may have suffered different degrees of harm, that does not alter the commonsense conclusion that common issues of law and fact predominate. *See Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) (holding individual damage calculations do not defeat predominance). Specifically, the same damages formula would be used across the board, *i.e.*, price at trade initiation versus price at trade execution. *Contra*, *Rutstein*, 211 F.3d at 1240 (finding liability for damages to be an individualized inquiry in an attempted class action discrimination case, because each plaintiff's damages would depend on what kind of discrimination plaintiff was subject to, the resulting harm,

18

if they mitigated by finding a car elsewhere, etc., making it impossible to calculate amount of damages necessary to compensate everyone).

In the present case, where the individual damages may be calculated by a reliable formula, damages are not a hurdle to class certification. *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 700-01 (M.D. Ga. 2002) (finding that variations in the amount of damages suffered by individual class members will not preclude a finding of predominance or defeat certification where determining individual damages is a matter of mathematical calculation); *see also Brown v. Electrolux Home Prods. Inc.,* 817 F. 3d 1225, 1234 (11th Cir. 2016) (holding that "individual damage calculations generally do not defeat a finding that common issues predominate.") Therefore, Plaintiff satisfies the predominance requirement.

### *2. The Class Action Is a Superior Vehicle for Adjudicating This Dispute.*

In deciding about superiority, a court must consider, *inter alia*, (1) the interests of individual class members in pursuing their claims separately; (2) the extent of any existing litigation concerning the same subject-matter; (3) the desirability of concentrating the litigation in a particular forum; and (4) the feasibility of managing the case as a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Wallace v. NCL Ltd.*, 271 F.R.D. 688, 701 (S.D. Fla. 2010).  The four factors identified by Rule 23, requires a court focus on elements of efficiency and economy of the class action "so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Larsen*, 275 F.R.D. at 678-79. Here, a class action is superior to separate actions for each member of the class, as it provides the most efficient, effective, and economic means of settling the controversy, which in some individualized cases may be no more than a few hundred or a few thousand dollars. For example, Plaintiff's loss was $4,328.45. *See Plaintiff's Account Statement, produced in Defendant's*

19

*Response to the Subpoena Duces Tecum for Defendant's 30(b)(6) Representative, attached as Exhibit "5" (when comparing price of Hertz stock when bought and sold).*

When considered in light of Rule 23(b)(3), with the fact that millions of small claims suits would be filed in limited locations because of Defendant's national operation and outreach, Plaintiff should be found to have met her burden in demonstrating the superiority of class action. A class action model may be the only realistic way these claims can be adjudicated, especially considering the amount of potential class members discussed in the numerosity section, *supra*. It is well established that "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts" especially considering the identicalness of the facts and claims amongst the class. *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).

The class action fills an essential role when the plaintiffs would not have the incentive or resources (as here, where a small loss would not outweigh the cost of hiring an attorney) to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability. *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 194 (2d Cir. 2011); *see, e.g., Phillips Petr. Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action mechanism may empower "plaintiffs to pool claims which would be uneconomical to litigate individually"). Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy. Nearly all the class members in this case would have claims that are small in comparison to the cost and expense of bringing individual suits against Defendant, and thus the interest of individual class members controlling the prosecution of separate actions is minimal. Concentrating the litigation in this forum is efficient, logical and desirable. As noted above, this case is eminently manageable as a class action−Defendant's admittedly have a database of aggrieved persons. Accordingly, Plaintiff has met the superiority requirement of Rule 23(b)(3).

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b) the Plaintiff requests a hearing on this motion. The Plaintiff believes that a hearing on this motion would be helpful to the Court because a hearing would be the appropriate avenue for the Plaintiff to answer any questions that the Court may have as it relates to the certification of this class. The Plaintiff anticipates that said hearing, if granted, would take no longer than 30 minutes.

**CONCLUSION**

WHEREFORE, as Plaintiff has met her burden under Fed. R. Civ. P. 23, Plaintiff respectfully asks this Court to certify the Class described in this Motion.

Respectfully submitted,

By: */s/ Michael A. Citron*
Michael A. Citron, Esq.
Florida Bar No. 105083
**MAC LEGAL, P.A.**
4601 Sheridan Street, Suite 205
Hollywood, Florida 33021
Telephone: (954) 395-2954
Email: Michael@maclegalpa.com – Correspondence
Email: Service@maclegalpa.com – Service Address

Igor Hernandez, Esq.
Florida Bar No. 106386
**CORNISH HERNANDEZ GONZALEZ, PLLC**
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida  33134
Telephone: (305) 780-6058
Email: service@CHGLawyers.com
Email: ihernandez@chglawyers.com

Ely R. Levy, Esq.
Florida Bar No. 15452
Venessa Valdes Solis, Esq.
Florida Bar No. 77122
**LEVY & PARTNERS, PLLC**
3230 Stirling Road, Suite 1

Hollywood, Florida 33021
Telephone: (954) 727-8570
Email: elevy@lawlp.com – Service Address
Email: venessa@lawlp.com – Service Address
Email: Maritza@lawlp.com – Service Address

## CERTIFICATE OF GOOD FAITH
## CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has

conferred with all parties or non-parties who may be affected by the relief sought in this motion

ina good faith effort to resolve the issues. All parties who may be affected have agreed to the

relief sought.

*s/ Michael A. Citron*
_____

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

furnishedto all parties and their respective July 30, 2021 via CM/ECF to:

Grace Mead
Florida Bar No. 49896
Ryan Thornton
Florida Bar No. 99195
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: 305-789-3559
Email: gmead@stearnsweaver.com
Email: rthornton@stearnsweaver.com
*Counsel for Defendant*
Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone: 212.909.6000

Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com
*Counsel for Defendant*

*/s/ Michael A. Citron*