**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 20-cv-24897-CMA/Torres**

SHTERNA PINCHASOV, on her own behalf, and on
behalf of those similarly situated,

       Plaintiff,

v.

ROBINHOOD FINANCIAL, LLC,

       Defendant

_____/

**DEFENDANT ROBINHOOD FINANCIAL LLC'S BRIEF IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 4

I.      TRADING HALTS.................................................................................................... 4

II.     ROBINHOOD'S PRACTICES. ............................................................................... 5

III.    THE PROPOSED CLASS. ...................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.      LEGAL STANDARD. ............................................................................................. 6

II.     PLAINTIFF FAILS TO DEMONSTRATE THAT THE PREDOMINANCE
REQUIREMENT OF RULE 23(b)(3) IS SATISFIED. ........................................... 7

        A.     Plaintiff Fails to Demonstrate that Proximate Cause Can Be Established on
a Classwide Basis................................................................................................ 7

        B.     Plaintiff Fails to Demonstrate that Economic Loss Can Be Established and
Measured on a Classwide Basis. ........................................................................ 9

                1.     Plaintiff's Formula Does Not Measure Damages Attributable to
Her Theory of Liability. ......................................................................... 10

                2.     Establishing and Measuring Economic Loss Requires a Highly
Individualized Factual Inquiry. .............................................................. 11

        C.     Determining the Relative Trading Experience of Each Class Member
Requires A Highly Individualized Inquiry. ....................................................... 14

III.    PLAINTIFF FAILS TO DEMONSTRATE THAT THE SUPERIORITY
REQUIREMENT OF RULE 23(b)(3) IS SATISFIED. .......................................... 15

IV.    PLAINTIFF'S PROPOSED CLASS IS NOT ASCERTAINABLE. .......................... 16

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Alhassid v. Bank of Am., N.A.*,
   307 F.R.D. 684 (S.D. Fla. 2015) ........................................................................................17

*Alvarez v. Loancare LLC*,
   2021 WL 184547 (S.D. Fla. Jan. 19, 2021) .....................................................................15

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ..............................................................................................7

*Brown v. Electrolux Home Prod., Inc.*,
   817 F.3d 1225 (11th Cir. 2016) ...............................................................................6, 7, 13

*Cherry v. Dometic Corp.*,
   986 F.3d 1296 (11th Cir. 2021) .........................................................................................16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .................................................................................................6, 9, 10

*Conigliaro v. Norwegian Cruise Line Ltd.*,
   2006 WL 7346844 (S.D. Fla. Sept. 1, 2006) ...................................................................17

*Cooper v. Meridian Yachts*,
   575 F.3d 1151 (11th Cir. 2009) ...........................................................................................7

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019) ........................................................................................17

*Cortes v. Honeywell Bldg. Sols. SES Corp.*,
   2014 WL 11958626 (S.D. Fla. Sept. 24, 2014) ...............................................7, 9, 13, 16, 17

*Cotromano v. United Techs. Corp.*,
   2018 WL 2047468 (S.D. Fla. May 2, 2018) .......................................................................9

*Kelecseny v. Chevron, U.S.A., Inc.*,
   262 F.R.D. 660 (S.D. Fla. 2009) ....................................................................................8, 9

*Neenan v. Carnival Corp.*,
   199 F.R.D. 372 (S.D. Fla. 2001) .......................................................................................14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ............................................................................................15

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) ......................................................................................10

*Rensel v. Centra Tech, Inc.*,
    2 F.4th 1359 (11th Cir. 2021) ...................................................................................16

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) .................................................................................15

*Tindell v. Murphy*,
    22 Cal. App. 5th 1239 (Cal. Ct. App. 2018) ...............................................................8

*Williamson v. Brooks*,
    7 Cal. App. 5th 1294 (Cal. Ct. App. 2017) ..................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...........................................................................................................6, 15

Defendant Robinhood Financial LLC ("RHF") submits this memorandum in opposition to Plaintiff's motion for class certification.  (Dkt. No. 65.)

## PRELIMINARY STATEMENT

Class treatment of this lawsuit is wholly inappropriate because neither requirement of Rule 23(b)(3) – predominance or superiority – is satisfied and because Plaintiff's proposed class of those "affected by" placing orders during trading halts is not ascertainable.

Plaintiff's claims are premised on the allegation that certain RHF customers were injured when trade orders that they unknowingly placed during a T1 trading halt ("T1 Halt") were subsequently executed at prices higher or lower than the pre-halt price.  A T1 Halt is a temporary suspension of trading imposed by a stock exchange pending the release of material news about a company.  Trading halts are publicly disclosed by the stock exchange and often reported in the financial press.  The trading halt allows investors time to digest the material news so that they can determine whether to adjust their position by entering orders to be executed once trading resumes or canceling pending orders that have not been executed.  When trading resumes, the stock price could go up or down, depending on the news.  The fact that T1 Halts are publicly disclosed and are imposed by a stock exchange, not RHF, poses a challenge for Plaintiff's case. In an effort to navigate around these facts, Plaintiff bases her claims on the allegation that RHF should have separately notified customers placing trade orders in halted securities of the existence of the trading halt.

For both of Plaintiff's claims, negligence and breach of fiduciary duty, individual issues predominate with respect to the core elements of causation and injury.  Those elements – and hence liability – cannot be adjudicated based on common evidence and instead would require a highly factual, halt-by-halt and trade-by-trade inquiry that would amount to a mini-trial for each putative class member.  Furthermore, to the extent that Plaintiff's alleged status of "novice"

1

investor is relevant to her claims, as Plaintiff appears to suggest, that issue would also require an individualized factual inquiry.

*First*, individual issues predominate with respect to causation because that element turns on the knowledge and intent of each customer: A failure by RHF to provide notice of a trading halt cannot be the proximate cause of any loss for customers who either independently knew about the trading halt or would have placed the same trade order even if they were aware of it. The element of proximate causation therefore would rely on individualized evidence demonstrating that a particular customer was unaware of the relevant trading halt and would not have placed the trade order if she had been notified of it. Investors may be aware of trading halts because they are publicly announced by stock exchanges and reported in the press, and there are many reasons why an investor would choose to place a trade order during a halt, including the investor's expectation as to how the price of the stock will move post-halt. Plaintiff does not – and cannot – identify any means of demonstrating individual customers' knowledge and intent on a classwide basis with common proof.

*Second*, individual issues predominate with respect to the element of injury. An investor claiming to have experienced loss from unknowingly placing a trade order during a halt would have to prove what she would have done differently if notified of the trading halt and how that alternative trading would have placed her in a better financial position. For example, would she subsequently have sold the relevant security at a higher price (or bought at lower price) than the post-halt price at which her trade was actually executed? Would she have continued to hold the security? That demonstration cannot be made on a classwide basis with common proof.

Plaintiff's conclusory assertion that economic loss can be determined "across the board" by simply comparing "price at trade initiation versus price at trade execution" is plainly

incorrect.  (Mot. 18.)  Plaintiff's proposed formula erroneously assumes that if RHF had notified customers of a trading halt, they could have bought or sold the affected security at the pre-halt price.  Once a trading halt has been imposed by a stock exchange, however, the pre-halt price is no longer available to anyone.  Notification by RHF that a trading halt is in effect cannot turn back the clock and make the pre-halt price available.  Accordingly, the pre-halt and post-halt price differential is not an appropriate measure of injury caused by an alleged failure to notify customers of the halt.  Individualized proof is required.

*Third*, although RHF disputes the relevance of these allegations to Plaintiff's claims, Plaintiff emphasizes the status of certain RHF customers as "novices," "newcomers" or "inexperienced" or "less knowledgeable" traders.  (Compl. ¶¶ 5, 7, 9, 10, 53, 55, 60; Mot. 1.)  To the extent the Court finds that those allegations matter in adjudicating Plaintiff's claims, the investment experience of any particular customer is yet another highly individualized factual issue.

The predominance of individual issues also renders Plaintiff unable to satisfy Rule 23(b)(3)'s superiority requirement, as a class action trial would require the Court to hold individual evidentiary hearings regarding the knowledge, intent and subsequent trading history of each customer (and the subsequent price history of the relevant security) with respect to each trading halt.  It is difficult to imagine how a class action trial would even be possible – much less "superior" to other means of resolving the dispute – as Plaintiff claims that "millions" of customers placed trades during the "hundreds, if not thousands," of trading halts that occurred during the proposed class period.  (Mot. 2, 8.)  Plaintiff's contention that this case would be "eminently manageable" ignores all of these issues.  (Mot. 20.)

Class certification should also be denied for the independent reason that a class of customers "affected by entering a trade during a halt" is not ascertainable. To the extent "affected by" means injured, Plaintiff proposes an impermissible fail-safe class because membership cannot be determined without first determining whether each customer suffered an economic loss and whether that loss was proximately caused by RHF's alleged failure to provide notice of a trading halt. Alternatively, to the extent "affected by" is meant to encompass all customers who placed a trade order during a halt, such a class is impermissibly overbroad because it includes many customers who were not injured and therefore lack standing to sue.

The Court should deny Plaintiff's motion for class certification.

## BACKGROUND

### I.     TRADING HALTS.

Securities exchanges, such as the Nasdaq Stock Market ("Nasdaq") and the New York Stock Exchange ("NYSE"), have the authority to suspend trading in a security for various reasons. As relevant here, a "T1 Halt" (on the Nasdaq) or "news pending halt" (on the NYSE) is a temporary suspension of trading in a security that occurs "when a company has pending news that may affect the security's price." (Ex. 1.)[1]

Stock exchange rules state that once a trading halt is implemented to "permit the dissemination of [the] material news," the exchange itself will announce the halt. (Exs. 2, 3.) Under FINRA Rule 5260, broker-dealers are prohibited from processing orders in halted securities until the halt is lifted. (Ex. 4.) After the material news has been fully disseminated, the exchanges notify the public a few minutes prior that the halt is ending. (Exs. 2, 3.)

---

[1]     Citations to "Ex. __" refer to the exhibits to the Declaration of Brandon Fetzer, filed concurrently.

Plaintiff states that there were "hundreds, if not thousands," of trading halts implemented during the proposed class period.  (Mot. 8.)

## II.    ROBINHOOD'S PRACTICES.

Consistent with FINRA Rule 5260, RHF's trading platform permits customers to place orders in securities subject to halts, but those trades are not executed until the halts are lifted. (Dkt. No. 65-3, Deacon Tr. 105:1-6.)  When customers use the RHF trading platform to place orders, they typically see a fluctuating price chart that tracks the market price for the stock plus the "bid-and-ask offered."  (Deacon Tr. 108:4-9.)  When trading is halted, however, the price chart is "flat," and no bid or ask information is provided.  (*Id.*)

RHF's customers can place various types of orders, including "market orders" and "limit orders."  A "market order" is an order to buy or sell a security at the prevailing market price; a "limit order" is an order to buy or sell a security at a specified price or better.  When customers open RHF accounts, they agree that the execution price for a market order "may be significantly higher or lower than anticipated at the time" the order is placed.  (Ex. 5 § 13.)

RHF's website has an educational article devoted to trading halts.  (Ex. 6.)  The article explains that trades could be placed during halts, but that those trades would not be "processed until the market reopens."  (*Id.*)  It further explains that "market orders held or placed during a halt may fill at a very different price once trading resumes."  (*Id.*)

## III.   THE PROPOSED CLASS.

In the Complaint, Plaintiff proposed a class of "[a]ll former and current Customers of Robinhood in the United States and its territories who were affected by Robinhood's failure to prevent customers from using its interface for stocks which were subject to a T1 Halt at any time . . . within the 4 years preceding the filing of this lawsuit."  (Compl. ¶ 40.)  Plaintiff now seeks to certify a broader class, not limited to T1 Halts, consisting of "all former and current customers of

Robinhood in the United States and its territories who were affected by entering a trade during a halt at any time within 4 years preceding the filing of this lawsuit." (Mot. 2-3.)

The Nasdaq website indicates that there are many different types of trading halts, not limited to the type of trading halt at issue in the Complaint – *i.e.*, a trading halt pending the release of material news. (Ex. 7.) Despite seeking to broaden the proposed class to include all halt types, Plaintiff does not provide any information or evidence about trading halts other than T1 Halts or explain how they are implicated in this case.

## ARGUMENT

## I.     LEGAL STANDARD.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotations omitted). Plaintiff bears the burden of proof and must "affirmatively demonstrate [her] compliance with Rule 23." *Id.* (internal quotations omitted); *see also Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) ("The party seeking class certification has the burden of proof.").

The Court must deny class certification under Rule 23(b)(3) where, as here, Plaintiff fails to demonstrate "through evidentiary proof" that common issues "predominate over any questions affecting only individuals members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." *Comcast*, 569 U.S. at 33; Fed. R. Civ. P. 23(b)(3). The Supreme Court has emphasized that district courts must engage in a "rigorous analysis" to determine whether the requirements of Rule 23 are satisfied and, in particular, have a "duty" to take a "close look" at whether "common questions predominate over individual ones." *Comcast*, 569 U.S. at 33-34.

## II.    PLAINTIFF FAILS TO DEMONSTRATE THAT THE PREDOMINANCE REQUIREMENT OF RULE 23(b)(3) IS SATISFIED.

Neither proximate cause nor injury – each an essential element of Plaintiff's negligence and breach of fiduciary duty claims – is a common question that can be established on a classwide basis.  "Common questions are ones where 'the same evidence will suffice for each member,' and individual questions are ones where the evidence will 'var[y] from member to member.'"  *Brown*, 817 F.3d at 1234 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)) (alteration in original).  Both of those core issues turn on highly individualized evidence regarding the knowledge, intent and subsequent trading history of each customer (and the subsequent price history of the relevant security) with respect to each trading halt.  Thus, even if a breach of duty were proven, Plaintiff "would still have the bulk of [her] case[] to prove, namely injury in fact and causation."  *Cortes v. Honeywell Bldg. Sols. SES Corp.*, 2014 WL 11958626, at *9 (S.D. Fla. Sept. 24, 2014).[2]

### A.    Plaintiff Fails to Demonstrate that Proximate Cause Can Be Established on a Classwide Basis.

Proximate cause cannot be established through common proof on a classwide basis.  As Plaintiff acknowledges, each customer must demonstrate that RHF's handling of trading halts

---

[2]    Plaintiff's claims are governed by California law pursuant to the choice-of-law provision of the Customer Agreement, which is broadly written to encompass disputes related to the Customer Agreement itself as well as any Robinhood customer account transactions.  (Ex. 5 § 37(K).)  *See Cooper v. Meridian Yachts*, 575 F.3d 1151, 1162 (11th Cir. 2009) (instructing courts to examine the scope of the choice-of-law provision and holding that a broadly written provision applies to tort claims).  Plaintiff's reliance on cases discussing Florida law does not impact the parties' arguments, however, as proximate causation and injury are elements of Plaintiff's negligence and breach of fiduciary duty claims under both California and Florida law.  *See Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1252 (Cal. Ct. App. 2018) (elements of cause of action for negligence are "the existence of a legal duty of care, breach of that duty and proximate cause resulting in injury.");  *Williamson v. Brooks*, 7 Cal. App. 5th 1294, 1300 (Cal. Ct. App. 2017) (elements of cause of action for breach of fiduciary duty are "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach").

was a proximate cause of any alleged injuries.  (Mot. 16-17.)  This means that each putative class member would be required to prove that RHF caused any alleged trading loss by not separately notifying that customer of an already publicly-disclosed trading halt.  Proving causation, therefore, necessarily turns on the knowledge and intent of each putative class member:  The lack of notification of a trading halt by RHF cannot be the proximate cause of injury for any customer who either independently knew about the trading halt or would have placed the same trade order even if she were aware of it.

*First*, the Court would need to determine whether each putative class member had independent knowledge of the trading halt because such knowledge would break the chain of causation.  RHF's alleged failure to notify customers about a trading halt is of no moment if the customers already knew about the trading halt.  *See Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 681 (S.D. Fla. 2009) (a failure to warn "can only damage an individual plaintiff if that plaintiff is not already aware of the danger").  Both the Nasdaq and the NYSE announce trading halts online.[3]  Trading halts are also frequently reported in the financial press.  In Plaintiff's case, the Hertz halt was disclosed by the NYSE and reported by the press before the trading day began.  (Exs. 8, 9.)

*Second*, the Court would need to determine whether, if notified of the trading halt, each putative class member would have undertaken a different course of action, and what that alternative course of action would have been.  *See Kelecsceny*, 262 F.R.D. at 674 (holding that "each proposed class member must demonstrate that had warnings . . . existed, he or she would have heeded those warnings").  A reasonable investor could well choose to place an order to buy

---

3    *See* NYSE, "Trader Updates & Announcements," https://www.nyse.com/trader-
     update/history; Nasdaq, "Current Trading Halts," https://www.nasdaqtrader.com/
     trader.aspx?id=tradehalts.

or sell during an ongoing trading halt for many reasons, including her expectation as to the likely post-halt price movement.  An individual customer's intent depends on her subjective assessment as to the stock's likely trajectory, her investment strategy and her financial circumstances. (Ferrell Report ¶ 23.)[4]  Plaintiff does not – and cannot – make this showing on a classwide basis.

Courts regularly deny class certification in similar circumstances.  *See*, *e.g.*, *Cotromano v. United Techs. Corp.*, 2018 WL 2047468, at *19 (S.D. Fla. May 2, 2018) (denying class certification where causation and the amount of resulting damages were "questions requiring plaintiff-by-plaintiff scrutiny"); *Kelecseny*, 262 F.R.D. at 674 (denying class certification because proximate cause raised "issues of individualized inquiry," including whether each customer had independent knowledge of the information the defendant failed to disclose); *Cortes*, 2014 WL 11958626, at *9 (denying class certification because "determinations of proximate causation . . . would predominate over a class-wide determination of negligence").

**B.     Plaintiff Fails to Demonstrate that Economic Loss Can Be Established and Measured on a Classwide Basis.**

Plaintiff fails to demonstrate that the element of injury, or economic loss, can be established and measured on a classwide basis.  Plaintiff offers only the conclusory – and incorrect – assertion that "the same damages formula would be used across the board, *i.e.*, the price at trade initiation versus price at trade execution."  (Mot. 18.)  Plaintiff does not support this assertion with any evidence or expert opinion, or even attempt to explain how this proposed formula possibly establishes or measures damages attributable to RHF's conduct.  Plaintiff therefore "falls far short of establishing that damages are capable of measurement on a classwide basis" and "cannot show Rule 23(b)(3) predominance."  *Comcast*, 569 U.S. at 34; *see also*

---

[4]     Citations to the "Ferrell Report" refer to the Expert Report of Allen Ferrell, PhD., filed concurrently.

*Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696-98 (S.D. Fla. 2014) (noting that plaintiff must demonstrate, through evidentiary proof, that damages are "measurable on a class-wide basis through use of a 'common methodology'" and declining to certify a class where plaintiff made only a "bald, unsupported assertion that [the proposed] method will work").

> 1. **Plaintiff's Formula Does Not Measure Damages Attributable to Her Theory of Liability.**

Plaintiff's assertion that injury can be established and measured simply by comparing the "price at trade initiation versus price at trade execution" is incorrect and completely inconsistent with her theory of liability. (Mot. 18; Ferrell Report ¶¶ 13-16.) This proposed formula measures, if anything, the stock price movement caused by the news giving rise to the trading halt, and not any damages caused by RHF's alleged failure to notify customers about the trading halt. (Ferrell Report ¶ 16.) Plaintiff's reliance on this proposed formula precludes class certification because it does not "measure only those damages attributable to" her theory of liability. *Comcast*, 569 U.S. at 35.

During a trading halt, no investor can buy or sell the security at the pre-halt market price. (Ferrell Report ¶¶ 13, 15.) When the halt is lifted, the price of the security may go up or down, depending on the information that caused the halt. The difference between the pre- and post-halt prices cannot be attributed to RHF's alleged failure to notify its customers about the existence of the trading halt. (Ferrell Report ¶ 16.)

Plaintiff's own experience illustrates this point. Plaintiff purchased 1200 shares of the common stock of Hertz Global Holdings Inc. ("Hertz") on April 29, 2020 at $4.02 per share. (Ex. 11.) After the market closed on Friday, May 22, 2020, Hertz announced that it was filing for bankruptcy protection. (Exs. 13, 14.) The closing price of Hertz stock was $2.84 per share. (Ex. 14.) Before the market opened on Tuesday, May 26, 2020, the next trading day, the NYSE

halted the trading of Hertz stock, which was announced on the NYSE's website and reported in the press.  (Exs. 8, 9.)  While that halt was in place, Plaintiff placed a market order to sell all of her Hertz stock.  (Ex. 10.)  At 2:36 p.m. that day, after the halt was lifted, Plaintiff's market order was executed, and her Hertz stock was sold at $0.41 per share.  (Exs. 10, 12.)

That price drop of $2.43 per share – from the pre-halt price of $2.84 to the post-halt price of $0.41 – is not a measure of any economic loss attributable to RHF's alleged failure to notify Plaintiff about the trading halt.  Regardless of any such notice, Plaintiff would not have been able to sell at the pre-halt price of $2.84 per share.[5]  (Ferrell Report ¶ 13.)  As explained below, any economic loss potentially attributable to an alleged lack of notice of a trading halt would depend not on the initial price change when the halt is lifted, but on the subsequent price movement of the security and the subsequent trading history of the customer.

## 2.     Establishing and Measuring Economic Loss Requires a Highly Individualized Factual Inquiry.

Determining whether a particular customer who placed a trade order during a trading halt suffered an injury and measuring the amount of economic loss requires a highly individualized factual inquiry that cannot be reduced to a mathematical formula.  (Ferrell Report ¶¶ 17-21.)  The mere fact that RHF permitted customers to place orders in halted securities and allegedly did not notify them about the trading halts does not give rise to any injury in-and-of itself.  (Ferrell Report ¶ 13.)  For example, a customer who places a market order to sell stock subject to a trading halt has no injury attributable to RHF if the price of the stock falls when the halt is lifted and never rises above the post-halt execution price.  Regardless of the alleged lack of notification

---

[5]     Notably, when Plaintiff later states that she incurred damages of $4,328.45, that figure is based on an entirely different formula comparing the price at which she initially purchased Hertz stock on April 29 with her sale price on May 26, 2020.  (Mot. 19-20 (comparing the price of Plaintiff's Hertz stock "when bought and sold").)

of the trading halt, that customer sold her stock for more money by placing the trade during the halt than she could have had she chosen to wait. Yet, Plaintiff's formula would erroneously ascribe damages to this customer simply because the post-halt execution price was lower than the pre-halt price. That makes no sense.

Under Plaintiff's theory of liability, any economic loss arising from unknowingly placing a trade order during a trading halt would depend on individualized evidence demonstrating that a particular customer, among other things, would have subsequently traded the relevant security at a better price than the post-halt price at which the customer's trade was actually executed. (Ferrell Report ¶ 18.) Setting aside the individual issues of knowledge and intent discussed above in the context of proximate cause, the determination and measurement of economic loss would require specific evidence regarding the price movement of each security after the relevant halt is lifted and the subsequent trading of each customer. (Ferrell Report ¶ 19.) Plaintiff's unsupported assertions that "which stock each class member traded" is "irrelevant" and that "all class members suffered the same harm in the same way" ignore this reality. (Mot. 18.)

For example, a customer who placed a sell order during a trading halt would have to prove that she was injured by that sale – *e.g.*, that she would have sold her stock at a higher price. Merely selling a stock at a price lower than the pre-halt price does not constitute injury, as the customer might have avoided selling at an even lower price. (Ferrell Report ¶ 20.) Similarly, a customer who placed a buy order during a trading halt would have to prove that she was injured by that purchase – *e.g.*, that she would have purchased the stock at a lower price. Merely purchasing a stock at a price higher than the pre-halt price does not constitute injury, as the price

might have continued to rise, giving the customer an opportunity to sell at an even higher price.[6] (Ferrell Report ¶ 21.)

Plaintiff's assertion that "damages are not a hurdle to class certification" relies on the incorrect premise that damages consistent with her theory of liability can be reduced to a simple mathematical formula based on pre- and post-halt pricing data.  It is certainly true that where – unlike here – an appropriate damages model or formula has been proposed, "individual damage calculations" generally do not defeat a finding that common issues predominate.  *Brown*, 817 F.3d at 1239.  In such cases, although each customer may be entitled to a different monetary sum, neither the fact of injury nor the relevant inputs necessary to determine damages turn on highly-factual individualized determinations.  In this case, however, the determination and measurement of economic loss for an individual does not reduce to mere "calculations" under a formula.

Indeed, in *Brown*, the Eleventh Circuit specifically noted that "individual damages defeat predominance if computing them will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable" and that "individual damages defeat predominance when they are accompanied by significant individualized questions going to liability."  *Id.* at 1240 (internal quotations omitted).  That is certainly the case here, as damages are not capable of class-wide measurement and instead would require a series of highly complex, fact-specific, individualized evidentiary hearings on a halt-by-halt and trade-by-trade basis for "millions" of customers.  (Mot. 2, 20.)  Class certification is clearly inappropriate on this basis alone.  *See Cortes*, 2014 WL 11958626, at \*9 (denying class certification where injury in fact

---

[6]   Subsequent stock price movement and trading history also bears on actions a customer took, or could have taken, to mitigate the extent of any loss.  For example, Plaintiff sold her Hertz stock at \$0.41 per share, but, if she truly believed at the time that Hertz stock was worth more than that amount, she could have repurchased it.

had to be determined on an individual basis); *Neenan v. Carnival Corp.*, 199 F.R.D. 372, 376

(S.D. Fla. 2001) (denying class certification where "individual issues" relating to "injury in fact"

would have "consume[d] the majority of the Court's time").[7]

      C.     **Determining the Relative Trading Experience of Each Class Member Requires A Highly Individualized Inquiry.**

Although RHF disputes the relevance of these allegations to her claims, Plaintiff

emphasizes her alleged status as a "newcomer" or "novice" investor, and this issue also would

require an individualized inquiry into each customer's investment experience and sophistication.

(Compl. ¶¶ 5, 7, 9, 10, 53, 55, 60; Mot. 1.)  For each putative class member, the Court would

have to examine, among other things, the frequency with which the customer traded, the

sophistication of her trading strategy and her experience with trading halts.  Moreover, in a

proposed class period that spans four years, a particular customer might cease to be a "novice" at

some point during the period.[8]

---

[7]    To the extent that Plaintiff maintains that RHF should not only have notified customers of pending trading halts but also prevented them from entering orders during a halt, a similar individualized inquiry would be required to establish injury and measure damages. (Mot. 10; Compl. ¶¶ 52, 61.)  In particular, the Court would need to determine whether each putative class member was harmed by being allowed to place a trade order during a halt, based on individual evidence regarding the subsequent price history of the relevant security, the customer's subsequent trading history and the hypothetical, alternative trade orders the customer would have placed if she had been prevented from placing trade orders during the trading halt.

[8]    For this reason, Plaintiff's proposed class also raises issues regarding her typicality under Rule 23(a)(2)(C).  Plaintiff has represented herself as a novice, inexperienced trader, but RHF's customers have a wide range of experiences.  Plaintiff does not offer any evidence regarding her own background or any evidence suggesting that she is "typical" of the RHF customer base with respect to investment experience or understanding of trading halts.

III.   **PLAINTIFF FAILS TO DEMONSTRATE THAT THE SUPERIORITY REQUIREMENT OF RULE 23(b)(3) IS SATISFIED.**

Because individualized issues predominate, Plaintiff also fails to demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating" this case because the individualized inquiries described above present insurmountable manageability problems.  Fed. R. Civ. P. 23(b)(3).  The predominance analysis has a "tremendous impact" on the superiority analysis because "the less common the issues, the less desirable a class action will be as a vehicle for resolving them." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs.*, *Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010).

If this lawsuit were to proceed as a class action, the Court would need to conduct mini-trials into the "hundreds, if not thousands," of halts implemented during the four-year class period and the circumstances surrounding all of the trades "millions" of putative class members placed during those halts.  (Mot. 2, 8, 20.)  For each such trade, the Court would need to determine whether the customer was independently aware of the publicly announced trading halt, whether and how the customer would have altered her trading activity if she had been separately notified of the trading halt by RHF, whether the customer would have subsequently traded the relevant security at a better price than the post-halt price at which the customer's trade was actually executed, whether the customer's subsequent trading in the security mitigated or eliminated her damages and the amount of any damages attributable to the lack of separate notification of the trading halt by RHF.  With millions of trades at issue, "it is difficult to imagine how this case can be tried." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191-92 (3d Cir. 2001) (describing the "specter of adjudicating plaintiffs' claims at trial," which turned on an examination of millions of trades executed during the class period, as "daunting"); *see also Alvarez v. Loancare LLC*, 2021 WL 184547, at *16 (S.D. Fla. Jan. 19,

2021) (failure to show classwide issues predominate "weighs against a class action being superior to other methods of efficiently adjudicating the claims"); *Cortes*, 2014 WL 11958626, at *9 (prevalence of individualized inquiries "counsel[s] against finding a class action is superior to other methods of adjudicating" the controversy).

Plaintiff's assertion that this "case is eminently manageable" is based on the erroneous statement that RHF maintains a "database of aggrieved persons." (Mot. 20.) No such database exists. While RHF has records of all trades placed by its customers, neither injury nor causation can be determined on the basis of those trading records. For the reasons discussed above, Plaintiff's suggestion that each customer who placed a trade order during a trading halt is entitled to damages according to her proposed formula is fundamentally flawed and misguided.

## IV.   PLAINTIFF'S PROPOSED CLASS IS NOT ASCERTAINABLE.

The Court should deny class certification for the independent reason that the proposed class of "all former and current customers of Robinhood . . . who were *affected by* entering a trade during a halt" is not ascertainable. (Mot. 2-3 (emphasis added).) "Ascertainability is an implied prerequisite of Rule 23." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). As the Eleventh Circuit recently clarified, separate and apart from any concerns about administrative feasibility, a proposed class must be "clearly ascertainable," meaning that it "is adequately defined such that its membership is capable of determination." *Id.* at 1304; *see also Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021) (same). Here, Plaintiff offers no explanation of what it means to be "affected by" placing a trade order during a halt, and thus there is no basis to determine which RHF customers might be members of the proposed class.

To the extent "affected by" is interpreted to mean "injured by," Plaintiff would be proposing an impermissibly fail-safe class. An "impermissibly 'fail-safe' class" exists when "the proposed class definition employs conclusory language identifying class membership in terms of

16

the ultimate merits question of the defendant's liability." *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 693 (S.D. Fla. 2015) (finding proposed class definitions impermissibly fail-safe – and therefore unascertainable – where membership depended on a determination of defendant's liability with respect to each potential class member). Defining the proposed class to include only those customers who were injured by RHF's practices with respect to trading halts would incorporate contested elements of liability into the definition, including causation and injury. Membership in such a class would require the Court to "consider and resolve highly individualistic and subjective facts" and depends upon having a valid claim on the merits. *Conigliaro v. Norwegian Cruise Line Ltd.*, 2006 WL 7346844, at *3-4 (S.D. Fla. Sept. 1, 2006) ("Class definitions which require individualized inquiries to ascertain class membership are disfavored."); *see also Cortes*, 2014 WL 11958626, at *5 (rejecting class definition because it "impermissibly require[d] a finding of liability *and* causation at the class certification stage") (emphasis in original).

Alternatively, to the extent "affected by" is intended to encompass *all* RHF customers who placed an order during a trading halt – regardless of whether they even suffered any injury – such a proposed class would be impermissibly overbroad because it would include many customers who were not injured and thus lack standing to sue. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019) (courts "must consider" whether "many or most putative class members [cannot] show that they suffered an injury" when deciding "whether and how to certify a class"); *Conigliaro*, 2006 WL 7346844 at *6 (rejecting class definition because it contained "members lacking an injury-in-fact, and consequently, Article III standing").

## **CONCLUSION**

For the reasons set forth herein, the Court should deny Plaintiff's motion for class certification.

17

Dated:  August 19, 2021            Respectfully submitted,

By: */s/ Grace Mead*
Grace Mead (Florida Bar No. 49896)
Ryan Thornton (Florida Bar No. 99195)
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street
Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3559
Email: gmead@stearnsweaver.com
Email: rthornton@stearnsweaver.com

Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
Brandon Fetzer (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York  10022
Telephone: (212) 909-6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com
Email: bfetzer@debevoise.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By: _Ryan T. Thornton_
RYAN T. THORNTON

**SERVICE LIST**

Michael A. Citron, Esq.
Florida Bar No. 105083
MAC LEGAL, P.A.
3100 N 29th Ct., Suite 100
Hollywood, Florida 33020
Telephone: (954) 395-2954
Michael@maclegalpa.com – Correspondence
Service@maclegalpa.com - Service Address

Igor Hernandez, Esq.
Florida Bar No. 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Phone (305) 780-6058
service@CHGLawyers.com
ihernandez@chglawyers.com

R. Levy, Esq.
Florida Bar No. 15452
Venessa Valdes Solis, Esq.
Florida Bar No. 77122
LEVY & PARTNERS, PLLC
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Telephone: (954) 727-8570
elevy@lawlp.com – Service Address
venessa@lawlp.com – Service Address
Maritza@lawlp.com – Service Address