**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 20-cv-24897-CMA/Torres**

SHTERNA PINCHASOV, on her own behalf, and on behalf of those similarly situated,

Plaintiff,

v.

ROBINHOOD FINANCIAL, LLC,

Defendant
_______________________________________________/

**DEFENDANT ROBINHOOD FINANCIAL LLC'S MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

I. PLAINTIFF'S ROBINHOOD ACCOUNT. .......... 2

II. PROCEDURAL HISTORY .......... 4

ARGUMENT .......... 5

I. LEGAL STANDARD. .......... 5

II. PLAINTIFF MUST ARBITRATE HER BREACH OF FIDUCIARY DUTY CLAIM. .......... 6

A. The Customer Agreement's Arbitration Provision Is Valid and Enforceable. .......... 6

B. Plaintiff's Breach of Fiduciary Duty Claim Falls Squarely Within the Scope of the Arbitration Provision. .......... 8

III. THIS ACTION SHOULD BE STAYED. .......... 9

CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**CASES**

*Akpele v. Pac. Life Ins. Co.*,
646 F. App'x 908 (11th Cir. 2016) ....................9

*Arencibia v. AGA Serv. Co.*,
533 F. Supp. 3d 1180 (S.D. Fla. 2021) ....................8

*Babcock v. Neutron Holdings, Inc.*,
454 F. Supp. 3d 1222 (S.D. Fla. 2020) ....................6, 7, 8

*Caley v. Gulfstream Aerospace Corp.*,
428 F.3d 1359 (11th Cir. 2005) ....................6

*Davis v. Prudential Sec., Inc.*,
59 F.3d 1186 (11th Cir. 1995) ....................5

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................5

*Dickey v. Ticketmaster LLC*,
2019 WL 9096443 (C.D. Cal. Mar. 12, 2019)....................8

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ....................8

*Herrera v. W. Flagler Assocs., Ltd.*,
2017 WL 9324515 (S.D. Fla. Apr. 5, 2017) ....................6

*Herrera Cedano v. Morgan Stanley Smith Barney, LLC*,
154 F. Supp. 3d 1318 (S.D. Fla. 2016) ....................9

*Lambert v. Austin Ind.*,
544 F.3d 1192 (11th Cir. 2008) ....................5

*Las Vegas Pro. Football Ltd. P'ship v. Am. Int'l Grp., Inc.*,
2010 WL 11505137 (S.D. Fla. Feb. 10, 2010) ....................9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................6, 7

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................8

*Selden v. Airbnb, Inc.*,
2016 WL 6476934 (D.D.C. Nov. 1, 2016) ....................7

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987)....................................................................................................5

*Solymar Invs., Ltd. v. Banco Santander S.A.*,
672 F.3d 981 (11th Cir. 2012) ..........................................................................................5

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 2-4 ...........................................................................5

Defendant Robinhood Financial LLC ("RHF") submits this memorandum in support of its motion to compel arbitration and stay this action pursuant to the Federal Arbitration Act.

**PRELIMINARY STATEMENT**

Now that class certification has been denied, Plaintiff can only pursue her individual claim against RHF through arbitration due to the dispute resolution clause in the Customer Agreement that Plaintiff agreed to when she opened her RHF account (the "Customer Agreement").

The Federal Arbitration Act ("FAA") requires courts to compel arbitration where, as here, a valid agreement for arbitration exists and the dispute falls within the scope of that agreement. Plaintiff's breach of fiduciary duty claim – the only claim remaining in this case – falls within the scope of the Customer Agreement's arbitration clause, which requires arbitration for any claim "arising out of or relating to" the Customer Agreement, any other agreement between Plaintiff and RHF, Plaintiff's RHF account or any transaction in that account. Plaintiff's breach of fiduciary duty claim arises out of stock purchases and sales in her RHF account.

Although the arbitration provision prohibits a motion to compel arbitration of a putative class action, that prohibition ends if class certification is denied. Accordingly, pursuant to the Customer Agreement and the FAA, Plaintiff must pursue her individual claim, if at all, in arbitration. That result also makes practical sense as Plaintiff values her claim at less than $5,000.

RHF respectfully requests that the Court stay this case while the arbitration is pending in accordance with the FAA.

## BACKGROUND

### I. PLAINTIFF'S ROBINHOOD ACCOUNT.

On February 14, 2018, Plaintiff entered into a contractual relationship with RHF by submitting an online application for an RHF account through its website. (Declaration of Yanlin Duan ("Duan Decl.") ¶¶ 4, 9.) As part of that process, before submitting her application, Plaintiff was presented with a hyperlink to the Customer Agreement, as shown below, and informed that by submitting her application, she was agreeing to be bound by its terms. (Duan Decl. ¶ 6.)



The text directs potential customers to "review the information below" before an account can be created. The text box states: "By clicking the 'Submit Application' button, I agree to this Robinhood Financial Brokerage Application Agreement" and further states that the Customer Agreement is incorporated by reference and constitutes part of the Application Agreement. The term "Robinhood Financial Customer Agreement" is clearly identifiable as a hyperlink, underlined and written in bright green on a white background.

Additional text directly underneath the "Submit Application" button states: "By clicking the 'Submit Application' button above, I agree to this Application Agreement." Plaintiff was therefore provided with notice of the Customer Agreement when she submitted an application.

In multiple sections of the Customer Agreement, Plaintiff agreed that all disputes with RHF would be settled through arbitration. On both the first and last pages of the Customer Agreement, in all caps and in bold, Plaintiff acknowledged:

> I ALSO UNDERSTAND THAT BY CLICKING "SUBMIT APPLICATION" I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 31 HEREIN.

(Duan Decl. Ex. 2 at 1, 29.) In Section 31, also printed in bold, Plaintiff agreed that she was "giving up the right to sue . . . in court" and that:

> ***Any controversy or claim*** arising out of or relating to this Agreement, any other agreement between Me and You, any Account(s) established hereunder, any transaction therein, ***shall be settled by arbitration*** in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR"). I agree to arbitrate any controversy or claim before FINRA DR in the State of California.

(Duan Decl. Ex. 2 § 31(A), (B) (emphasis added).)

As required by FINRA rules, Section 31 precludes a party from seeking to compel arbitration of a putative class action until, as relevant here, "the class certification is denied":

> ***No person shall bring a putative or certified class action to arbitration***, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class

> who has not opted out of the class with respect to any claims encompassed by the putative class action ***until: (1) the class certification is denied***; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. ***Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver*** of any rights under this Agreement except to the extent stated herein.

(Duan Decl. Ex. 2 § 31(D) (emphasis added); Declaration of Brandon Fetzer ("Fetzer Decl.") Ex. A.)

The Customer Agreement also contains a choice-of-law provision stating that the Customer Agreement and all transactions in Plaintiff's account "shall be governed by the laws of the State of California (regardless of the choice of law rules thereof)." (Duan Decl. Ex. 2 § 35(J).)

No potential customer can open an RHF account without agreeing to the Customer Agreement by clicking the "Submit Application" button pictured above. (Duan Decl. ¶ 8.) RHF records indicate that Plaintiff did, in fact, click the "Submit Application" button, thereby agreeing to the Customer Agreement, on February 14, 2018. (Duan Decl. ¶ 9 & Ex. 1.)

## II. PROCEDURAL HISTORY.

Plaintiff filed a putative class action complaint on November 5, 2020, asserting claims against RHF for negligence and breach of fiduciary duty arising out of RHF's alleged failure to prevent her from using its platform to place orders to buy or sell stocks subject to stock exchange trading halts, or to notify her of such halts. (Dkt. No. 1, Ex. A, Compl. ¶¶ 1, 53-54, 60-61.) In particular, Plaintiff claims she was injured in connection with an order to sell the stock of Hertz Global Holdings, Inc. placed while that stock was subject to a trading halt. (Dkt. No. 1, Ex. A, Compl. ¶¶ 18-19.)

On July 30, 2021, Plaintiff moved for class certification. (Dkt. No. 65.) In connection with that motion, Plaintiff withdrew her negligence claim, leaving only the breach of fiduciary duty claim. (Dkt. No. 69, at 1.) On September 10, 2021, the Court denied Plaintiff's motion for

class certification. (Dkt. No. 77.) Plaintiff moved for reconsideration, which the Court also denied. (Dkt. Nos. 78, 84.)

On October 13, 2021, Plaintiff petitioned the Eleventh Circuit for interlocutory review of this Court's denial of class certification under Rule 23(f). (Fetzer Decl. Ex. B.) On November 9, 2021, the Eleventh Circuit denied her petition. (Fetzer Decl. Ex. C.)

RHF promptly notified Plaintiff and the Court of its intent to move to compel arbitration. (Dkt. No. 87.)

## ARGUMENT

### I. LEGAL STANDARD.

The FAA requires courts to compel arbitration where a valid agreement to arbitrate exists. It "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4); *see also Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1192 (11th Cir. 1995) (stating that the FAA requires courts to "rigorously enforce agreements to arbitrate") (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). Federal courts interpret arbitration clauses broadly and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) (internal citations omitted).

In addressing a motion to compel arbitration, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2-4). A party opposing a motion

to compel arbitration must satisfy an evidentiary burden "not unlike that of a party seeking summary judgment" to show "why the court should not compel arbitration." *Herrera v. W. Flagler Assocs., Ltd.*, 2017 WL 9324515, at *3-5 (S.D. Fla. Apr. 5, 2017) (internal quotations omitted).

## II. PLAINTIFF MUST ARBITRATE HER BREACH OF FIDUCIARY DUTY CLAIM.

Plaintiff must arbitrate her breach of fiduciary duty claim because (*i*) she entered into an enforceable written arbitration agreement and (*ii*) her claim falls squarely within the scope of that agreement. Courts apply state law contract principles in determining whether a contract to arbitrate exists. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68, 1373-79 (11th Cir. 2005) (applying Georgia law to determine whether the parties had formed a binding contract and affirming grant of motion to compel arbitration); *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020) ("In ruling on a motion to compel arbitration, state law governs the interpretation and formation of the arbitration agreement; while federal law governs the enforceability of the arbitration agreement.") (internal citations omitted). Here, Plaintiff's claim and the Customer Agreement are governed by California law. (Duan Decl. Ex. 2 § 35(J); Dkt. No. 77 at 3-4.)

### A. The Customer Agreement's Arbitration Provision Is Valid and Enforceable.

The Customer Agreement's arbitration provision is valid and enforceable under California law because Plaintiff had sufficient notice that she was agreeing to arbitrate all claims relating to her RHF account. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (applying California law and holding that an agreement to arbitrate is enforceable where "notice of the arbitration provision [is] reasonably conspicuous"); *Babcock*, 454 F. Supp. 3d at 1229-34

(applying California law and holding that clear and conspicuous notice of agreement puts reasonably prudent user on inquiry notice of its terms).

As discussed above, before Plaintiff created her RHF account, RHF directed her to review the Customer Agreement, provided her with a hyperlink to the Customer Agreement in bright green text, and informed her in multiple locations – including directly under the "Submit Application" button – that by clicking the button to submit her application she was agreeing to the Customer Agreement and its terms. Plaintiff agreed to be bound by the terms of the Customer Agreement when she clicked on the "Submit Application" button. *See Meyer*, 868 F.3d at 79-80 ("A reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not.").[1] Furthermore, the arbitration agreement was highlighted within the Customer Agreement, with bold, all-caps warnings on the first and last pages and the entire arbitration section in bold font. (Duan Decl. Ex. 2 at 1, 29, § 31.)

Courts applying California law have consistently found that arbitration clauses similar to the one in the Customer Agreement are enforceable and have regularly granted motions to compel arbitration in circumstances similar to this matter. *See Meyer*, 868 F.3d at 75-80 (granting motion to compel where the account creation process "indicated to the consumer that he or she is employing such services subject to additional terms and conditions that may one day affect him or her," and where hyperlinks to the "Terms and Conditions and Privacy Policy" appeared in blue and underlined font and the hyperlinks were "directly below the buttons for

---

[1] This form of web-based contract is referred to as "sign-in wrap," where "a user signs up to use an internet product or service, and the sign-up screen states that 'acceptance of a separate agreement is required before the user can access the service.'" *Babcock*, 454 F. Supp. 3d at 1230 (quoting *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016)).

registration" to Uber's service); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (affirming grant of motion to compel arbitration and finding that the defendant's website provided sufficient notice of its terms of use where an italicized hyperlink was located directly below the sign-in button); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586-87 (N.D. Cal. 2020) (finding that plaintiffs were on inquiry notice of terms and conditions where the hyperlink to the terms was in a different color from the surrounding text, "plainly readable," "wholly visible" and located close to the sign-up button); *Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019) (granting motion to compel arbitration and holding that plaintiff assented to the terms of use where notice of the terms was provided in a blue hyperlink located above the sign-up button); *Babcock*, 454 F. Supp. 3d at 1233-34 (granting motion to compel where "the sign-up screen conspicuously displays the hyperlink to the full terms of the User Agreement and unambiguously explains the significance of tapping 'I Agree'") (citing cases).[2]

**B. Plaintiff's Breach of Fiduciary Duty Claim Falls Squarely Within the Scope of the Arbitration Provision.**

Plaintiff's breach of fiduciary duty claim falls squarely within the scope of the Customer Agreement's broad arbitration provision. Plaintiff agreed to arbitrate any claim "arising out of or relating to" the Customer Agreement, any other agreement between Plaintiff and RHF, Plaintiff's RHF account or any transaction in that account. (Duan Decl. Ex. 2 § 31(B).) Plaintiff's claim plainly arises out of and relates to Plaintiff's contractual relationship with RHF, her RHF account and transactions in her account – specifically, stock purchases and sales in her RHF account. *See*

2 Courts applying Florida law have reached the same conclusion. *See*, *e.g.*, *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1189-90 (S.D. Fla. 2021) (finding that plaintiff was on inquiry notice of terms and conditions of no fault insurance policy where the hyperlink to the terms was located right below the online offer of insurance and "[p]laintiff was cautioned that clicking 'Yes, protect my trip for a total of [amount]' would indicate his acceptance to the [ ] [p]olicy accessible via the hyperlink").

*Las Vegas Pro. Football Ltd. P'ship v. AIG, Inc.*, 2010 WL 11505137, at *7 (S.D. Fla. Feb. 10, 2010) (finding claims for breach of fiduciary duty were within the scope of an arbitration clause for "any dispute arising out of this Agreement" between plaintiff and defendant insurers and noting that the relationship between the parties was "created by virtue of the parties' agreements"); *Herrera Cedano v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1321, 1327 (S.D. Fla. 2016) (where "the plain language of the arbitration clause is unambiguously broad," such that the plaintiff agreed to arbitrate "all claims or controversies" between the plaintiff and defendants "concerning or arising" from plaintiff's accounts, there was "no question that Plaintiff's claims [were] covered by the pre-dispute arbitration clause").

## III. THIS ACTION SHOULD BE STAYED.

Section 3 of the FAA instructs that where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "shall" stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Akpele v. Pac. Life Ins. Co.*, 646 F. App'x 908, 913 (11th Cir. 2016) (affirming district court's order to stay proceedings and compel arbitration pursuant to the parties' arbitration agreement). Accordingly, the case should remain administratively closed and stayed pending the completion of arbitration.

## CONCLUSION

For the reasons set forth herein, the Court should grant RHF's motion to compel arbitration and stay the case.

Dated: December 16, 2021                    Respectfully submitted,

By: */s/ Ryan T. Thornton*
Grace Mead (Florida Bar No. 49896)
Ryan Thornton (Florida Bar No. 99195)
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3559
gmead@stearnsweaver.com
rthornton@stearnsweaver.com

Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
Brandon Fetzer (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
mloconnor@debevoise.com
egreenfield@debevoise.com
bfetzer@debevoise.com

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), I CERTIFY that counsel for Defendant conferred in good faith with Plaintiff's counsel by email on November 22, 2021 regarding Defendant's intention to move to compel arbitration, and met with Plaintiff's counsel on November 23, 2021 to discuss the same. Counsel for Plaintiff does not agree to the relief sought in this Motion.

Dated: December 16, 2021

Respectfully submitted,

By: */s/ Ryan T. Thornton*

Grace Mead
Florida Bar No. 49896
Ryan Thornton
Florida Bar No. 99195
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3559
gmead@stearnsweaver.com
rthornton@stearnsweaver.com

Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
Brandon Fetzer (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
mloconnor@debevoise.com
egreenfield@debevoise.com
bfetzer@debevoise.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By: *Ryan T. Thornton*
RYAN THORNTON

**SERVICE LIST**

Michael A. Citron, Esq.
Florida Bar No. 105083
MAC LEGAL, P.A.
4601 Sheridan Street, Suite 205
Hollywood, Florida 33021
Telephone: (954) 395-2954
Michael@maclegalpa.com – Correspondence
Service@maclegalpa.com – Service Address

Igor Hernandez, Esq.
Florida Bar No. 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Telephone: (305) 780-6058
service@CHGLawyers.com
ihernandez@chglawyers.com

Ely R. Levy, Esq.
Florida Bar No. 15452
Venessa Valdes Solis, Esq.
Florida Bar No. 77122
LEVY & PARTNERS, PLLC
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Telephone: (954) 727-8570
elevy@lawlp.com – Service Address
venessa@lawlp.com – Service Address
Maritza@lawlp.com – Service Address