DocuSign Envelope ID: E293058C-B3DB-456A-B8D4-B9532B542933

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 20-cv-24897-CMA/Torres

SHTERNA PINCHASOV, on her own behalf, and on behalf of those similarly situated,

      Plaintiff,

v.

ROBINHOOD FINANCIAL, LLC,

      Defendant

_____/

### DECLARATION OF YANLIN DUAN IN SUPPORT OF
### ROBINHOOD FINANCIAL LLC'S MOTION TO COMPEL ARBITRATION

DocuSign Envelope ID: F293058C-B3DB-456A-B8D4-B9532B542933

I, Yanlin Duan, in support of the Motion to Compel Arbitration filed by Robinhood Financial LLC ("RHF"), declare that:

1.     I have personal knowledge of the facts stated herein, including based on a review of certain records maintained by RHF in the ordinary course of business, and if called upon to testify to those facts I could and would be competent to do so.  I am over the age of twenty-one, and not otherwise disqualified from giving this Declaration.

2.     I am employed by Robinhood Markets, Inc., RHF's parent company, as a software engineer.  I have held this position since March 2018.

3.     In the normal course of its business, RHF maintains records regarding when and how its customers sign up for accounts.  As a software engineer, I have access to these registration records, and I am familiar with these records and the manner in which they are updated and maintained.

4.     At the request of counsel, I reviewed the registration records and was able to determine that Plaintiff Shterna Pinchasov signed up for her RHF account on February 14, 2018, through an online form accessed via RHF's website.

5.     As a software engineer, I am also familiar with the account creation process for RHF customers who register via RHF's website.

6.     I have reviewed the code associated with RHF's website from the relevant time period and confirmed how RHF's sign-up page would have looked on February 14, 2018. Below is a demonstrative image that is substantially identical to how RHF's sign-up page would have looked at that time:



7.      Clicking the hyperlinked Robinhood Financial Customer Agreement would open a new webpage displaying the Customer Agreement in a downloadable, printable, PDF format.

8.      The user must click the "Submit Application" button to complete the application process.  Plaintiff could not have completed the registration process and opened her Robinhood account without completing this step.

9.      **Exhibit 1** is a true and accurate log of Plaintiff's progression through the account sign-up process showing that Plaintiff clicked the "Submit Application" button on

February 14, 2018.  Row 71 shows that Plaintiff visited the "legal-disclosure" webpage, which would have looked substantially identical to the screenshot provided above.  The reference to "click" in Row 73 signifies that Plaintiff clicked the "Submit Application" button, as confirmed by the references to "application-submitted" in Rows 76-79.

10.     **Exhibit 2** is a true and accurate copy of the Customer Agreement dated January 2018 that was accepted and agreed to by Plaintiff during the account opening process.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed this 16th day of December, 2021, at Seattle, Washington.**

Yanlin Duan

# EXHIBIT 1

**Event Check for Shterna Pinchasov, February 14, 2018**

| | dt | event__event | event__data__page | event__data__url |
|---|---|---|---|---|
| 1 | 2018-02-14 | page_unload | contact-info | https://signup.robinhood.com/ |
| 2 | 2018-02-14 | page_load | contact-info | https://signup.robinhood.com/?page=contact-info |
| 3 | 2018-02-14 | marketing-site-start-signup | contact-info | https://signup.robinhood.com/?page=contact-info |
| 4 | 2018-02-14 | page_unload | contact-info | https://signup.robinhood.com/ |
| 5 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/?page=contact-info |
| 6 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/?page=contact-info |
| 7 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/?page=contact-info |
| 8 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/?page=contact-info |
| 9 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/?page=contact-info |
| 10 | 2018-02-14 | click | contact-info | https://signup.robinhood.com/?page=contact-info |
| 11 | 2018-02-14 | submit_error | contact-info | https://signup.robinhood.com/?page=contact-info |
| 12 | 2018-02-14 | page_unload | contact-info | https://signup.robinhood.com/?page=contact-info |
| 13 | 2018-02-14 | page_unload | contact-info | https://signup.robinhood.com/login/ |
| 14 | 2018-02-14 | page_load | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 15 | 2018-02-14 | marketing-site-start-signup | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 16 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 17 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 18 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 19 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 20 | 2018-02-14 | field_blur | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 21 | 2018-02-14 | click | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 22 | 2018-02-14 | submit_success | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 23 | 2018-02-14 | page_unload | contact-info | https://signup.robinhood.com/login/?page=contact-info |
| 24 | 2018-02-14 | page_unload | capitol-hill | https://signup.robinhood.com/login/?page=contact-info |
| 25 | 2018-02-14 | page_load | capitol-hill | https://signup.robinhood.com/login/?page=capitol-hill |
| 26 | 2018-02-14 | marketing-site-start-signup | capitol-hill | https://signup.robinhood.com/login/?page=capitol-hill |
| 27 | 2018-02-14 | click | capitol-hill | https://signup.robinhood.com/login/?page=capitol-hill |
| 28 | 2018-02-14 | submit_success | capitol-hill | https://signup.robinhood.com/login/?page=capitol-hill |
| 29 | 2018-02-14 | page_unload | capitol-hill | https://signup.robinhood.com/login/?page=capitol-hill |
| 30 | 2018-02-14 | page_unload | identity-verification | https://signup.robinhood.com/login/?page=capitol-hill |
| 31 | 2018-02-14 | page_load | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |

| 32 | 2018-02-14 | marketing-site-start-signup | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 33 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 34 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 35 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 36 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 37 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 38 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 39 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 40 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 41 | 2018-02-14 | field_blur | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 42 | 2018-02-14 | click | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 43 | 2018-02-14 | submit_success | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 44 | 2018-02-14 | page_unload | identity-verification | https://signup.robinhood.com/login/?page=identity-verification |
| 45 | 2018-02-14 | page_unload | funding-overview | https://signup.robinhood.com/login/?page=identity-verification |
| 46 | 2018-02-14 | page_load | funding-overview | https://signup.robinhood.com/login/?page=funding-overview |
| 47 | 2018-02-14 | marketing-site-start-signup | funding-overview | https://signup.robinhood.com/login/?page=funding-overview |
| 48 | 2018-02-14 | click | funding-overview | https://signup.robinhood.com/login/?page=funding-overview |
| 49 | 2018-02-14 | submit_success | funding-overview | https://signup.robinhood.com/login/?page=funding-overview |
| 50 | 2018-02-14 | page_unload | funding-overview | https://signup.robinhood.com/login/?page=funding-overview |
| 51 | 2018-02-14 | page_unload | funding | https://signup.robinhood.com/login/?page=funding-overview |
| 52 | 2018-02-14 | page_load | funding | https://signup.robinhood.com/login/?page=funding |
| 53 | 2018-02-14 | marketing-site-start-signup | funding | https://signup.robinhood.com/login/?page=funding |
| 54 | 2018-02-14 | click | funding | https://signup.robinhood.com/login/?page=funding |
| 55 | 2018-02-14 | auth_success | funding | https://signup.robinhood.com/login/?page=funding |
| 56 | 2018-02-14 | mfa_shown | funding | https://signup.robinhood.com/login/?page=funding |
| 57 | 2018-02-14 | auth_success_after_mfa | funding | https://signup.robinhood.com/login/?page=funding |
| 58 | 2018-02-14 | show_deposit_screen | funding | https://signup.robinhood.com/login/?page=funding |
| 59 | 2018-02-14 | document_hidden | funding | https://signup.robinhood.com/login/?page=funding |
| 60 | 2018-02-14 | document_visible | funding | https://signup.robinhood.com/login/?page=funding |
| 61 | 2018-02-14 | deposit_success | funding | https://signup.robinhood.com/login/?page=funding |
| 62 | 2018-02-14 | submit_success | funding | https://signup.robinhood.com/login/?page=funding |
| 63 | 2018-02-14 | page_unload | funding | https://signup.robinhood.com/login/?page=funding |
| 64 | 2018-02-14 | page_unload | funding-confirmation | https://signup.robinhood.com/login/?page=funding |
| 65 | 2018-02-14 | page_load | funding-confirmation | https://signup.robinhood.com/login/?page=funding-confirmation |
| 66 | 2018-02-14 | marketing-site-start-signup | funding-confirmation | https://signup.robinhood.com/login/?page=funding-confirmation |
| 67 | 2018-02-14 | click | funding-confirmation | https://signup.robinhood.com/login/?page=funding-confirmation |

| 68 | 2018-02-14 | submit_success | funding-confirmation | https://signup.robinhood.com/login/?page=funding-confirmation |
| 69 | 2018-02-14 | page_unload | funding-confirmation | https://signup.robinhood.com/login/?page=funding-confirmation |
| 70 | 2018-02-14 | page_unload | legal-disclosure | https://signup.robinhood.com/login/?page=funding-confirmation |
| 71 | 2018-02-14 | page_load | legal-disclosure | https://signup.robinhood.com/login/?page=legal-disclosure |
| 72 | 2018-02-14 | marketing-site-start-signup | legal-disclosure | https://signup.robinhood.com/login/?page=legal-disclosure |
| 73 | 2018-02-14 | click | legal-disclosure | https://signup.robinhood.com/login/?page=legal-disclosure |
| 74 | 2018-02-14 | submit_success | legal-disclosure | https://signup.robinhood.com/login/?page=legal-disclosure |
| 75 | 2018-02-14 | page_unload | legal-disclosure | https://signup.robinhood.com/login/?page=legal-disclosure |
| 76 | 2018-02-14 | page_unload | application-submitted | https://signup.robinhood.com/login/?page=legal-disclosure |
| 77 | 2018-02-14 | page_load | application-submitted | https://signup.robinhood.com/login/?page=application-submitted |
| 78 | 2018-02-14 | marketing-site-start-signup | application-submitted | https://signup.robinhood.com/login/?page=application-submitted |
| 79 | 2018-02-14 | page_unload | application-submitted | https://signup.robinhood.com/login/?page=application-submitted |
| 80 | 2018-02-14 | page_unload | | https://robinhood.com/login |
| 81 | 2018-02-14 | page_unload | | https://robinhood.com/login |
| 82 | 2018-02-14 | document_hidden | | https://robinhood.com/login |
| 83 | 2018-02-14 | document_visible | | https://robinhood.com/login |
| 84 | 2018-02-14 | page_unload | | https://robinhood.com/login |
| 85 | 2018-02-14 | sent | | |

# EXHIBIT 2

# Robinhood Financial LLC

Member FINRA/SIPC

### Robinhood Financial Customer Agreement

In consideration of Robinhood Financial LLC and its agents and assigns (collectively, "Robinhood Financial", "You", or "Your") opening one or more accounts on my behalf ("My Account(s)" or the "Account(s)"), I represent and agree with respect to all Accounts, whether margin or cash, to the terms set forth below (the "Agreement"). When used in this Agreement, the words "I", "Me", "My", "We", or "Us" mean the owner(s) of the Account. For the avoidance of doubt, in the case of a joint account, the words "I", "Me", "My", "We" or "Us" means each of the owners of the joint Account.

**I UNDERSTAND THAT THE TERMS AND CONDITIONS OF THIS AGREEMENT GOVERN ALL ASPECTS OF MY RELATIONSHIP WITH YOU REGARDING MY ACCOUNTS. I WILL CAREFULLY READ, UNDERSTAND AND ACCEPT THE TERMS AND CONDITIONS OF THIS AGREEMENT BEFORE I CLICK "SUBMIT APPLICATION" OR OTHER SIMILARLY WORDED BUTTON. IF I HAVE ANY QUESTIONS ABOUT ANY OF THE PROVISIONS IN THIS AGREEMENT, I WILL EMAIL SUPPORT@ROBINHOOD.COM. I UNDERSTAND THAT CLICKING "SUBMIT APPLICATION" IS THE LEGAL EQUIVALENT OF MY MANUALLY SIGNING THIS AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. BY ENTERING INTO THIS AGREEMENT, I ACKNOWLEDGE RECEIPT OF THE ROBINHOOD FINANCIAL PRIVACY POLICY AND PRIVACY AND SECURITY STATEMENT. I UNDERSTAND THAT THIS AGREEMENT MAY BE AMENDED FROM TIME TO TIME BY ROBINHOOD FINANCIAL, WITH REVISED TERMS POSTED ON THE ROBINHOOD FINANCIAL WEBSITE. I AGREE TO CHECK FOR UPDATES TO THIS AGREEMENT. I UNDERSTAND THAT BY CONTINUING TO MAINTAIN MY SECURITIES BROKERAGE ACCOUNT WITHOUT OBJECTING TO ANY REVISED TERMS OF THIS AGREEMENT, I AM ACCEPTING THE TERMS OF THE REVISED AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. IF I REQUEST OTHER SERVICES PROVIDED BY ROBINHOOD FINANCIAL THAT REQUIRE ME TO AGREE TO SPECIFIC TERMS AND CONDITIONS ELECTRONICALLY (THROUGH CLICKS OR OTHER ACTIONS) OR OTHERWISE, SUCH TERMS AND CONDITIONS WILL BE DEEMED AN AMENDMENT AND WILL BE INCORPORATED INTO AND MADE PART OF THIS AGREEMENT. I ALSO UNDERSTAND THAT BY CLICKING "SUBMIT APPLICATION" I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 31 HEREIN.**

1. **Capacity and Status.** If an individual, I am of legal age under the laws of the state where I reside and authorized to enter into this Agreement. If an entity, I am duly formed, validly existing and in good standing in My state of organization, have full power and authority to enter and perform this Agreement, and the persons signing the account application are fully authorized to act on My behalf. No person, except Myself (or any person named in a separate agreement or joint account), has any interest in the Account opened pursuant to this Agreement. I acknowledge that unless You receive written objection from Me, You may provide My name, address, and securities positions to requesting companies in which I hold securities. Except as otherwise disclosed to You in writing, neither I nor any member of My immediate family is an employee of any exchange, any corporation of which any exchange owns a majority of the capital stock, a member of any exchange or self-regulatory organization, a member of any firm or member corporation registered on any exchange, a bank, trust company, insurance company or any corporation, firm or individual engaged in the

Rhfv1.18 2018.1

business of dealing either as a broker-dealer or as principal in securities. I understand and agree that I am obligated to promptly notify You in writing if I or a member of My immediate family becomes registered or employed in any of the above-described capacities. Except as otherwise disclosed to You in writing, I am not a Professional (as defined below). I further agree to promptly notify You in writing if I am now or if I become a Professional or an officer, director or 10% stockholder of any publicly traded company.

2. **Market Data.** Robinhood Financial may choose to make certain market data available to you pursuant to the terms and conditions set forth in this Agreement. By executing this Agreement, I agree to comply with those terms and conditions.

   A. <u>Definitions</u>.
      1) "Market Data" means (a) last sale information and quotation information relating to securities that are admitted to dealings on the New York Stock Exchange ("NYSE"), (b) such bond and other equity last sale and quotation information, and such index and other market information, as United States-registered national securities exchanges and national securities associations (each, an "Authorizing SRO") may make available and as the NYSE may from time to time designate as "Market Data"; and (c) all information that derives from any such information.

      2) "Nonprofessional" means any natural person who receives market data solely for his/her personal, non- business use and who is not a "Professional." A "Professional" includes an individual who, if working in the United States, is: (i) registered or qualified with the Securities and Exchange Commission (the "SEC"), the Commodity Futures Trading Commission (the "CFTC"), any state securities agency, any securities exchange or association, or any commodities or futures contract market or association; (ii) engaged as an "investment advisor" as that term is defined in Section 202 (a) (11) of the Investment Advisers Act of 1940 (whether or not registered or qualified under that Act), or (iii) employed by a bank or other organization exempt from registration under federal and/or state securities laws to perform functions that would require him or her to be so registered or qualified if he or she were to perform such functions for an organization not so exempt. A person who works outside of the United States will be considered a "Professional" if he or she performs the same functions as someone who would be considered a "Professional" in the United States.

   B. <u>Provisions Applicable to All Users</u>.

      1) <u>Proprietary Nature of Data</u>. I understand and acknowledge that each Authorizing SRO and Other Data Disseminator (as defined below) has a proprietary interest in the Market Data that originates on or derives from it or its market(s). I agree not to reproduce, distribute, sell or commercially exploit the Market Data in any manner.

      2) <u>Enforcement</u>. I understand and acknowledge that (a) the Authorizing SROs are third-party beneficiaries under this Agreement and (b) the Authorizing SROs or their authorized representative(s) may enforce this Agreement, by legal proceedings or otherwise, against Me or any person that obtains Market Data

that is made available pursuant to this Agreement other than as this Agreement contemplates.

3) <u>Data Not Guaranteed</u>. I understand that neither You nor any Authorizing SRO, other entity whose information is made available over the Authorizing SROs' facilities (an "Other Data Disseminator"), or information processor that assists any Authorizing SRO or Other Data Disseminator in making Market Data available (collectively, the "Disseminating Parties") guarantees the timeliness, sequence, accuracy, completeness, reliability, or content of Market Data or of other market information or messages disseminated to or by any Disseminating Party. I understand that neither Robinhood Financial nor any Disseminating Party guarantees the timeliness, sequence, accuracy, completeness, reliability or content of market information, or messages disseminated to or by any party. I understand that neither Robinhood Financial nor any Disseminating Party warrants that the service provided by any such entity will be uninterrupted or error-free. I further understand that Market Data by Xignite provides market data to Robinhood Financial customers. NEITHER ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, NOR ANY DISSEMINATING PARTY SHALL BE LIABLE IN ANY WAY FOR (A) ANY INACCURACY, ERROR OR DELAY IN, OR OMISSION OF, (I) ANY MARKET DATA, INFORMATION OR MESSAGE, OR (II) THE TRANSMISSION OR DELIVERY OF ANY SUCH DATA, INFORMATION OR MESSAGE; OR (B) ANY LOSS (AS DEFINED IN THIS AGREEMENT) OR DAMAGE ARISING FROM OR OCCASIONED BY (I) ANY SUCH INACCURACY, ERROR, DELAY OR OMISSION, (II) NON-PERFORMANCE OR III) INTERRUPTION IN ANY SUCH MARKET DATA, INFORMATION, OR MESSAGE, WHETHER DUE TO ANY ACT OR OMISSION BY ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, OR ANY DISSEMINATING PARTY, OR TO ANY "FORCE MAJEURE" (E.G., FLOOD, EXTRAORDINARY WEATHER CONDITIONS, EARTHQUAKE OR OTHER ACT OF GOD, FIRE, WAR, INSURRECTION, RIOT, LABOR DISPUTE, ACCIDENT, ACTION OF GOVERNMENT, OR COMMUNICATIONS OR POWER FAILURE, EQUIPMENT OR SOFTWARE MALFUNCTION) OR ANY OTHER CAUSE BEYOND THE REASONABLE CONTROL OF ROBINHOOD FINANCIAL, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS AND EMPLOYEES, OR ANY DISSEMINATING PARTY.

4) <u>Permitted Use</u>. I shall not furnish Market Data to any other person or entity. If I receive Market Data other than as a Nonprofessional, I shall use Market Data only for My individual use.

5) <u>Dissemination, Discontinuance, or Modification</u>. I understand and acknowledge that, at any time, the Authorizing SROs may discontinue disseminating any category of Market Data, may change or eliminate any transmission method and may change transmission speeds or other signal characteristics. The Authorizing SROs shall not be liable for any resulting liability, loss or damages that may arise therefrom.

6) <u>Duration; Survival</u>. This Section 2 of this Agreement remains in effect for so long as I have the ability to receive Market Data as contemplated by this Section 2. In

Rhfv1.18 2018.1

addition, Sections 2(B)(1)-(3) and the first two sentences of Section 2(B)(7), survive any termination of this Agreement.

7)  Miscellaneous. The laws of the State of New York shall govern this Section 2 and it shall be interpreted in accordance with those laws. This Subsection is subject to the Securities Exchange Act of 1934, the rules promulgated under that act, and the joint-industry plans entered into pursuant to that act.

C.  Provisions Applicable to Nonprofessionals.

1)  Permitted Receipt. I understand that I may not receive Market Data from You as a Nonprofessional, and You may not provide Market Data to Me as a Nonprofessional, unless You first properly determine that I qualify as a Nonprofessional as defined above and I in fact qualify as a Nonprofessional. I agree that, as a prerequisite to Robinhood Financial qualifying Me as a Nonprofessional, I will provide to You truthful and accurate information about Me, such as: my occupation, employer, employment position and functions; my use of Market Data; my registration status with any securities agency, exchange, association, or regulatory body, or any commodities or future contract market, association, or regulatory body, whether in the United States or elsewhere; and any compensation of any kind I may receive from any individual or entity for my trading activities, asset management, or investment advice. Except as otherwise declared to You in writing, by executing this Agreement, I certify that I meet the definition of Nonprofessional as set forth in this Agreement.

2)  Permitted Use. If I am a Nonprofessional, I agree to receive Market Data solely for my personal, non-business use.

3)  Notification. I shall notify You promptly in writing of any change in my circumstances that may cause Me to cease to qualify as a Nonprofessional.

**3.  NASDAQ OMX Information.**

A.  Definitions.
1)  "Information" means certain market data and other data disseminated that has been collected, validated, processed, and recorded by any system NASDAQ OMX has developed for the creation or dissemination of Information or other sources made available for transmission to and receipt from either a distributor such as RHF or from NASDAQ OMX relating to: a) eligible securities or other financial instruments, markets, products, vehicles, indicators, or devices; b) activities of a NASDAQ OMX company; c) other information and data from a NASDAQ OMX company. "Information" also includes any element of Information as used or processed in such a way that the Information can be identified, recalculated or re-engineered from the processed Information or that the processed Information can be used as a substitute for Information.
2)  "NASDAQ OMX" means The NASDAQ OMX Group, Inc., a Delaware limited liability company and its subsidiaries and Affiliates (collectively "NASDAQ OMX").
B.  Use of Data. I understand that I may use the Information only for personal use and not for any business purpose. I may not sell, lease, furnish or otherwise permit or provide

4

access to the Information to any other natural person or entity ("Person") or to any other office or place. I will not engage in the operation of any illegal business use or permit anyone else to use the Information, or any part thereof, for any illegal purpose or violate any NASDAQ OMX or SEC Rule or any FSA rule or other applicable law, rule or regulation. I may not present the Information rendered in any unfair, misleading or discriminatory format. I shall take reasonable security precautions to prevent any Person other than Myself from gaining access to the Information.

C. <u>Proprietary Data</u>. I acknowledge and agree that NASDAQ OMX has proprietary rights to the Information that originates on or derives from markets regulated or operated by NASDAQ OMX, and compilation or other rights to Information gathered from other sources. I further acknowledge and agree that NASDAQ OMX's third-party information providers have exclusive proprietary rights to their respective Information. In the event of any misappropriation or misuse by Me or anyone who accesses the Information through Me, NASDAQ OMX or its third-party information providers shall have the right to obtain injunctive relief for its respective materials.

D. <u>System</u>. I acknowledge that NASDAQ OMX, in its sole discretion, may from time-to-time make modifications to its system or the Information. Such modifications may require corresponding changes to be made in Robinhood Financial's service. Changes or the failure to make timely changes by Me may sever or affect My access to or use of the Information. I understand that neither NASDAQ OMX nor You shall be responsible for such effects.

E. <u>NASDAQ OMX Limitation of Liability</u>. Except as may otherwise be set forth herein, NASDAQ OMX shall not be liable to Me for indirect, special, punitive, consequential or incidental loss or damage (including, but not limited to, trading losses, lost profits, or other indirect loss or damage) of any nature arising from any cause whatsoever, even if NASDAQ OMX has been advised of the possibility of such damages. NASDAQ OMX shall not be liable to Me for any unavailability, interruption, delay, incompleteness or inaccuracy of the Information. This Section shall not relieve NASDAQ OMX or Me from liability for damages that result from their own gross negligence or willful tortious misconduct or from personal injury or wrongful death claims. I agree that the terms of this Section reflect a reasonable allocation of risk and limitation of liability.

F. <u>Disclaimers of Warranties</u>. NASDAQ OMX and its third-party information providers make no warranties of any kind with respect to the Information—express, implied or statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), any implied warranties arising from trade usage, course of dealing, course of performance or the implied warranties of merchantability or fitness for a particular use or purpose or noninfringement.

G. <u>Termination by NASDAQ OMX</u>. I acknowledge that NASDAQ OMX, when required to do so in fulfillment of statutory obligations, may by notice to You unilaterally limit or terminate the right of any or all Persons to receive or use the Information and that You will comply with any such notice and will terminate or limit the furnishing of the Information.

4. **Authorization.** I understand that My Account is self-directed. Accordingly, I appoint You as My agent for the purpose of carrying out My directions to You in accordance with the terms and conditions of this Agreement and any attendant risks with respect to the purchase or sale of securities. You are authorized to open or close My Account(s), place and withdraw orders and take such other steps as are reasonable to carry out My directions. All transactions will be effected only on My order or the order of My authorized delegate, except as described in

Section 11. I understand Robinhood Financial provides trading and brokerage services through the Robinhood Financial website (the "Website") and the Robinhood Financial mobile application (the "App"). I agree to receive and transmit financial information through such electronic means. My use or My grant of access to My Account to any third party to access information or place transactions in My Account is solely at My risk.

5.  **Customer Representations and Responsibilities.**

(A)  <u>Self-directed Account</u>. I understand that My Account is self-directed, and so that I am solely responsible for any and all orders placed in My Account and that all orders entered by Me or on My behalf are unsolicited and based on My own investment decisions or the investment decision of My duly authorized representative or agent. Accordingly, I agree that neither You nor any of Your employees, agents, principals, or representatives:

1)  provide investment advice in connection with this Account;
2)  recommend any security, transaction or order;
3)  solicit orders;
4)  act as a market maker in any security;
5)  make discretionary trades; and
6)  produce or provide first-party research providing a specific investment strategies such as buy, sell or hold recommendations, first-party ratings and/or price targets. To the extent research materials or similar information are available through the App or the Website or the websites of any entity controlled by, controlling, or under common control with Robinhood Financial (such entity, an "Affiliate"), I understand that these materials are intended for informational and educational purposes only and they do not constitute a recommendation to enter into any securities transactions or to engage in any investment strategies.

(B)  <u>Information Accuracy</u>. I: (i) certify that the information contained in this Agreement, the account application, and any other document that I furnish to You in connection with My Account(s) is complete, true and correct, and acknowledge that knowingly giving false information for the purpose of inducing You to extend credit is a federal crime; (ii) authorize You to contact any individual or firm noted herein or on the documents referred to in subsection (i) of this Section and any other normal sources of debit or credit information; (iii) authorize anyone so contacted to furnish such information to You as You may request; and (iv) agree that this Agreement, the account application and any other document I furnish in connection with My Account is Your property, as the case may be. I shall promptly advise You of any changes to the information in such agreements and documents in writing within ten (10) calendar days. I authorize You to obtain reports and provide information to others concerning My creditworthiness and business conduct. Upon My request, You agree to provide Me a copy of any report so obtained. You may retain this Agreement, the Account application, and all other such documents and their respective records at Your sole discretion, whether or not credit is extended.

(C)  <u>Risks</u>. I understand that all investments involve risk, that losses may exceed the principal invested, and that the past performance of a security, industry, sector, market, or financial product does not guarantee future results or returns.

6

(D)    <u>Account Defaults</u>. I understand that My Account comes with many defaulted service instruction features and preferences. I further understand that I am not required to use these defaulted options or preferences and that once My Account is approved and opened I have the sole discretion to control and adjust such defaulted service preferences that relate to My account.

(E)    <u>Knowledge of Account</u>. I understand that I am solely responsible for knowing the rights and terms for all securities purchased, sold and maintained in My Account including mergers, reorganizations, stock splits, name changes or symbol changes, dividends, option symbols, and option deliverables. I further understand that certain securities may grant Me valuable rights that may expire unless I take specific action. These securities include bonds, convertible securities, warrants, stock rights and securities subject to exchange offers or tenders. I am responsible for knowing all expiration dates, redemption dates, and the circumstances under which rights associated with My securities may be called, cancelled, or modified. You may, but are not obligated to, notify Me of any upcoming expiration or redemption dates, or take any action on My behalf without My specific instructions except as required by law and the rules of regulatory authorities. I acknowledge that You may adjust My Account to correct any error. If My Account has an option position on the last trading day prior to expiration, which is one cent or more in the money, You will generally exercise the option, on My behalf. However, You reserve the right at Your discretion to close any option position prior to expiration date or any position resulting from the exercising/assignment after option expiration. I will be charged a commission for any such transaction. You are not obligated to take any of these actions and You are not liable for Losses should You not take them.

(F)    <u>Purchases</u>. All orders for the purchase of securities given for My Account will be authorized by Me and executed in reliance on My promise that an actual purchase is intended. It is My obligation to pay for purchases immediately or on Your demand. I understand You may at any time, in its sole discretion and without prior notice to Me, prohibit or restrict My ability to trade securities. I further agree not to allow any person to trade for My Account unless a trading authorization for that person has been received and approved by You. You reserve the right to require full payment in cleared funds prior to the acceptance of any order. In the event that I fail to provide sufficient funds, You may, at Your option and without notice to Me, i) charge a reasonable rate of interest, ii) liquidate the Property subject of the buy order, or iii) sell other Property owned by Me and held in any of My Accounts. You may also charge any consequential Loss to My Account. For purposes of this Agreement, "Property" shall mean all monies, contracts, investments and options, whether for present or future delivery, and all related distributions, proceeds, products and accessions. This includes all such Property held, maintained or carried by Apex Clearing Corporation ("Apex") in any manner for Me.

(G)    <u>Sales/Short Sales</u>. I promise to deliver all securities sold in My Account and to provide collateral of a type and amount acceptable to Robinhood Financial for all short sales in My Account. Robinhood Financial requires that a security be held in My Account prior to the acceptance of a sell order with respect to such security unless the order is specifically designated as a "short sale." If a security is not held in My Account and a

7

sell order is processed, I must promptly deliver such security to Robinhood Financial for receipt in good deliverable form on or before the settlement date. Any order accepted without negotiable certificates or positions in My Account will be subject, at Robinhood Financial's sole discretion, to cancellation or buy-in. To ensure this will not occur, I agree to only place sell orders for securities owned by Me and held in My Account at the time My order is placed.

Proceeds of a sale will not be paid to Me or released into My Account until Robinhood Financial has received the security in good deliverable form, whether from a transfer agent or from Me and the settlement of the security is complete. If the security is not received on or before settlement date, or as market conditions warrant, Robinhood Financial may in its sole discretion purchase the security on the open market for My Account and may liquidate and close out any and all securities in My Account in order to pay for such purchase. In the event a security is bought in, I will be responsible for all resulting Losses incurred by Robinhood Financial.

I understand that I may execute short sales only in a margin Account (See Margin Agreement and Margin Disclosure Statement for more information) and that such execution must comply with applicable short sales rules.

(H)     Assistance by Robinhood Financial. I understand that when I request assistance from You or Your employees in using the investment tools available on the Website or the App, it will be limited to an explanation of the tool's functionality and, if requested by Me, to the entry by You or Your employees of variables provided by Me, and that such assistance does not constitute investment advice, an opinion with respect to the suitability of any transaction, or solicitation of any orders.

(I)      No Tax or Legal Advice. I understand that Robinhood Financial does not provide tax or legal advice.

(J)      Discontinuation of Services. I understand that You may discontinue My Account and any services related to My Account immediately by providing written notice to Me

(K)     Electronic Access.

    1)      I am solely responsible for keeping My Account numbers and PINs confidential and will not share them with third parties. "PINs" shall mean My username and password.
    2)      I agree and accept full responsibility for monitoring and safeguarding My Accounts and access to My Accounts.
    3)      I agree to immediately notify You in writing, delivered via e-mail and a recognized international delivery service, if I become aware of: (i) any loss, theft, or unauthorized use of My PINs or Account numbers; (ii) any failure by Me to receive any communication from You indicating that an order was received, executed or cancelled, as applicable; (iii) any failure by Me to receive an accurate written confirmation of an order, execution, or cancellation; (iv) any receipt by Me of confirmation of an order, execution or cancellation, which I did not place; (v) any inaccurate information in or relating to My orders, trades,

8

margin status, Account balances, deposits, withdrawals, securities positions or transaction history; or (vi) any other unauthorized use or access of My Account.

4)    Each of the events described in subsections (K)(3)(i)-(vi) shall be deemed a "Potential Fraudulent Event". The use and storage of any information including My Account numbers, PINs, portfolio information, transaction activity, account balances and any other information or orders available on My wireless, web-enabled cellular telephone or similar wireless communications device (collectively, "Mobile Device") or My personal computer is at My own risk and is My sole responsibility. I represent that I am solely responsible for and have authorized any orders or instructions appearing in, originating from, or associated with My Account, My Account number, My username and password, or PINs. I agree to notify You immediately after I discover any Potential Fraudulent Event, but in no event more than twenty-four (24) hours following discovery. Upon request by You, I agree to report any Potential Fraudulent Event promptly to legal authorities and provide You a copy of any report prepared by such legal authorities. I agree to cooperate fully with the legal authorities and You in any investigation of any Potential Fraudulent Event and I will complete any required affidavits promptly, accurately and thoroughly. I also agree to allow You access to My Mobile Device, My computer, and My network in connection with Your investigation of any Potential Fraudulent Event. I understand that if I fail to do any of these things I may encounter delays in regaining access to the funds in My Account. I agree to indemnify and hold You, Your Affiliates, and Your and Your Affiliates' respective officers, directors, and employees harmless from and against any Losses arising out of or relating to any Potential Fraudulent Event. I acknowledge that You do not know when a person entering orders with My username and password is Me.

5)    Trusted Contact Person.  I understand that, pursuant to FINRA regulations, You are authorized to contact the Trusted Contact Person (as define by FINRA Rule 4512) designated for My Account and to disclose information about My account to address possible financial exploitation, to confirm the specifics of the customer's current contact information, health status, or the identity of any legal guardian, executor, trustee or holder of a power of attorney, or as otherwise permitted by Rule 2165.

**6.   Clearance of Trades.** I understand that You have entered into a clearing agreement with Apex whereby You will introduce My Account to Apex, and Apex will clear all transactions, on a fully-disclosed basis. I understand that Apex carries My Account(s) and is responsible for the clearing and bookkeeping of transactions, but is not otherwise responsible for the conduct of Robinhood Financial.

Until receipt from Me of written notice to the contrary, Apex may accept from Robinhood Financial, without inquiry or investigation, (i) orders for the purchase or sale of securities and other property on margin, if I have elected to have a margin account, or otherwise, and (ii) any other instructions concerning my Accounts. Apex shall look solely to Robinhood Financial unless otherwise directed by Robinhood Financial, and not to Me, with respect to any such orders or instructions; except that I understand that Apex will deliver confirmations, statements, and all written or other notices with respect to My Account directly to Me with

9

copies to Robinhood Financial, and that Apex will look directly to Me or Robinhood Financial for delivery of margin, payment, or securities. I agree to hold Apex harmless from and against any Losses arising in connection with the delivery or receipt of any such communication(s), provided Apex has acted in accordance with the above. The foregoing shall be effective as to My Account(s) until written notice to the contrary is received from Me by Apex or Robinhood Financial.

7.  **Review of Confirmations and Statements.** I agree that it is My responsibility to review order execution confirmations and statements of My Account(s) promptly upon receipt. I agree to receive all confirmations and account statements, as well as all tax related documents, in electronic format. I understand that account statements will evidence all activity in My Account for the stated period, including securities transactions, cash balances, credits to My Account and all fees paid from My Account. Notwithstanding Section 34(B), confirmations will be considered binding on Me unless I notify You of any objections within two (2) calendar days from the date confirmations are sent. Account statements will be considered binding on Me unless I notify you of any objections within ten (10) calendar days after My Account statements are posted online. Such objection may be oral or in writing, but any oral objection must be immediately confirmed in writing. In all cases, You reserve the right to determine the validity of My objection. If I object to a transaction for any reason, I understand and agree that I am obligated to take action to limit any losses that may result from such transaction or I will bear sole responsibility for any losses relating to the transaction, even if My objection to the transaction is ultimately determined to be valid. Nothing in this Section 7 shall limit My responsibilities as described in Section 5 of this Agreement.

8.  **Important Information Needed to Open a New Account.** To help the government better detect the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. Therefore, I understand that when I open My Account You will ask for My name, address, date of birth and other identifying information. You may also ask copies of My driver's license, passport or other identifying documents. I understand that You may take steps to verify the accuracy of the information I provide to You in My Account application or otherwise, and that You may restrict My access to My Account pending such verification. I will provide prompt notification to You of any changes in the information including My name, address, e-mail address and telephone number.

9.  **SIPC and Other Insurance Coverage.** I understand that Robinhood Financial and Apex are both members of the Securities Investor Protection Corporation ("SIPC"), which provides protection for accounts up to $500,000 (including $250,000 for claims of cash) per client as defined by SIPC rules. An explanatory brochure is available upon request via telephone at (202) 371-8300 or at www.sipc.org. I also understand that Apex has purchased an additional insurance policy through a group of London Underwriters (with Lloyd's of London Syndicates as the Lead Underwriter) to supplement SIPC protection. The leader of the excess of SIPC coverage program is Lloyd's of London. The excess of SIPC coverage does not protect against loss due to market fluctuation. An excess of SIPC claim would only arise if Apex were to fail financially and customer assets for covered accounts, as defined by SIPC (for Apex accounts), cannot be located due to theft, misplacement, destruction, burglary, robbery, embezzlement, abstraction, failure to obtain or maintain possession or control of client securities, or to maintain the special reserve bank account required by applicable rules. This

10

additional insurance policy becomes available to customers in the event that SIPC limits are exhausted.

10. **Telephone Conversations and Electronic Communications.** I understand and agree that You may record and monitor any telephone or electronic communications with Me. Unless otherwise agreed in writing in advance, You do not consent to the recording of telephone conversations by any third party or Me. I acknowledge and understand that not all telephone or electronic communications are recorded by You, and You do not guarantee that recordings of any particular telephone or electronic communications will be retained or capable of being retrieved.

11. **Oral Authorization.** I agree that You shall be entitled to act upon any oral instructions given by Me so long as You reasonably believe such instruction was actually given by Me or My authorized agent.

12. **Applicable Laws and Regulations**. All transactions in My Account will be subject to federal securities laws and regulations, the applicable laws and regulations of any state or jurisdiction in which Robinhood Financial is registered, the rules of any applicable self-regulatory organization of which Robinhood Financial is a member and the rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. In no event will Robinhood Financial be obligated to effect any transaction it believes would violate any federal or state law, rule or regulation or the rules or regulations of any regulatory or self-regulatory organization.

13. **Erroneous Distributions**. I agree to promptly return to You any assets erroneously distributed to Me. In the event that I sell a security prior to its ex-dividend/distribution date, and I receive the related cash/stock dividend or distribution in error, I direct You on My behalf to pay such dividend/distribution to the entitled purchaser of the securities I sold, and I guarantee to promptly reimburse You for, or deliver to You, said dividend or distribution.

14. **Market Volatility; Market Orders; Limit Orders; and Queued Orders**. I understand that, whether I place a market or limit order, I will receive the price at which My order is executed in the marketplace, subject to any clarification stated below. Particularly during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order, and I may receive partial executions of an order at different prices. I understand that Robinhood Financial is not liable for any price fluctuations. I also understand that price quotes generally are for only a small number of shares as specified by the marketplace, and larger orders are relatively more likely to receive executions at prices that vary from the quotes or in multiple lots at different prices.

I understand that Robinhood Financial does not currently support sending traditional market buy orders and that Robinhood Financial collars all market buy orders by using limit orders priced up to 5% above the last trade price. This is not the case for market sell orders. I further understand that when I send a market buy order through Robinhood Financial's trading system, the trading system generates a limit order up to 5% above the last trade price, and then Robinhood Financial sends the order to an executing broker. I understand that Robinhood Financial's implementation of market buy orders may vary depending on prices of instruments, market conditions, and other factors. I further understand that Robinhood Financial uses the following rounding mechanics with respect to buy orders: the last trade

11

price is (i) multiplied by 1.05; (ii) rounded down to two decimal places if the last trade price is over $1.00; otherwise, rounded down to four decimal places; and (iii) for securities included in the SEC's Tick Size Pilot Program, rounded down to the nearest $.05 increment. I understand that securities may open for trading at prices substantially higher or lower than the previous closing price or the anticipated price. If I place a market order (whether during normal market hours or when the market is closed), I agree to pay or receive the prevailing market price at the time My market order is executed, subject to the specific clarification above relating to buy orders. I understand that the price I pay may be significantly higher or lower than anticipated at the time I placed the order. To avoid buying a security at a higher price and possibly exceeding My purchasing power, I understand My option to enter a limit order. I also understand that limit orders may not be executed at any particular time, or at all, if there is not sufficient trading at or better than the limit price I specify, and are only good until the end of the trading day in which they are entered. The Website contains further information regarding order types and limitations, which I agree to read and understand before placing such orders.

As a customer of Robinhood Financial, I understand that after the market has closed for the day, I have the ability to place in a queue order requests to be executed the following day upon the opening of the market ("Queued Order"). I understand that My Queued Order request is prioritized based on the order in which it is received by Robinhood Financial, and that the Queued Order requests are sent out for execution shortly after the market opens on the next day of trading. I further understand that each Queued Order request is sent out per customer and per security as Robinhood Financial market orders (described above), and that they are not aggregated.

A limit order may be "good till cancelled" which means the order remains valid until (A) it is executed; (B) I cancel the order; (C) approximately 90 days from when the order is placed; or (D) the contract to which it relates is closed. I understand that You will cancel a "good till cancelled" order at the end of every trading day (on the exchange on which the instrument to which the contract relates is traded) and place such order again at the start of the following trading day. This process will be repeated every day for as long as the "good till cancelled" order remains valid. I further agree that any "good till cancelled" orders I place should be treated as "do not reduce" orders.

15. **Bulletin Board/Pink Sheet Stocks.** Bulletin board, pink sheet and other thinly-traded securities (collectively "bulletin board stocks") present particular trading risks, in part because they are relatively less liquid and more volatile than actively traded securities listed on a major exchange. I understand that bulletin board stocks may be subject to different trading rules and systems than other securities and that I may encounter significant delays in executions, reports of executions, and updating of quotations in trading bulletin board stocks. Robinhood Financial in its sole discretion may require limit orders on certain bulletin board stock transactions.

16. **Margin Trading.** I understand that margin trading involves interest charges and risks, including the potential to lose more than deposited or the need to deposit additional collateral in a falling market. Before using margin, customers must determine whether this type of trading strategy is right for them given their specific investment objectives, experience, risk tolerance, and financial situation. If I have elected to have a margin Account, I represent that I have read the Margin Agreement, Margin Disclosure Statement, Day Trading Risk

Rhfv1.18 2018.1

Disclosure, and FINRA Investor Information. These disclosures contain information on Robinhood Financial's lending policies, interest charges, and the risks associated with margin accounts.

17. **Research and Internet Links**. News, research, links to outside websites, and other information accessible through the App or Website ("Content") may be prepared by independent external providers not affiliated with Robinhood Financial, including Morningstar, Inc. (all such providers, the "Providers"). I agree not to distribute, reproduce, sell, or otherwise commercially use the Content in any manner. I understand that You may terminate My access to the Content. I understand that none of the Content is a recommendation by You to buy or sell any securities or to engage in any investment strategy.

18. **Restrictions on Trading.** I understand that You may, in Your discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of My Accounts. I understand that You may execute all orders by Me on any exchange or market, unless I specifically instruct You to the contrary. In the event of a breach or default by Me under this Agreement, You shall have all rights and remedies available to a secured creditor under all applicable laws and in addition to the rights and remedies provided herein. I understand that You may at any time, at Your sole discretion and without prior notice to Me: (i) prohibit or restrict My access to the use of the App or the Website or related services and My ability to trade, (ii) refuse to accept any of My transactions, (iii) refuse to execute any of My transactions, or (iv) terminate My Account. The closing of My Account will not affect the rights or obligations of either party incurred prior to the date My Account is closed.

Further, You will not tolerate any foul or abusive language, physical violence, threatening behavior, or other inappropriate conduct directed toward Your and Your Affiliates' officers, employees, contractors or customers. If I engage in any such behavior, as determined by You in Your sole discretion, I agree that You are authorized to: (i) liquidate any securities, instruments or other property in My Account, (ii) send Me the proceeds, and (iii) close My account. You will not be responsible for any Losses caused by the liquidation of securities, instruments or other property pursuant to this paragraph, including any tax liabilities.

19. **Waiver; Limitation of Liability; Indemnification**. I agree that My use of the App or the Website or any other service provided by Robinhood Financial or its Affiliates is at My sole risk. The Robinhood Financial service (including the App, the Website, the provision of Market Data, Information, Content, or any other information provided by Robinhood Financial, any of its Affiliates, or any third-party content provider or market data provider) is provided on an "as is," "as available" basis without warranties of any kind, either express or implied, statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), implied warranties arising from trade usage, course of dealing, course of performance, or the implied warranties of merchantability or fitness for a particular purpose or application, other than those warranties which are implied by and incapable of exclusion, restriction or modification under the laws applicable to this Agreement.

I UNDERSTAND AND AGREE THAT YOU, YOUR AFFILIATES, YOUR RESPECTIVE OFFICERS, DIRECTORS, AND EMPLOYEES, AND THE PROVIDERS WILL NOT BE LIABLE TO ME OR TO THIRD PARTIES UNDER ANY CIRCUMSTANCES, OR HAVE ANY RESPONSIBILITY WHATSOEVER, FOR ANY SPECIAL, INDIRECT, INCIDENTAL,

Rhfv1.18 2018.1

PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS, TRADING LOSSES, AND DAMAGES) THAT I MAY INCUR IN CONNECTION WITH MY USE OF THE SERVICE PROVIDED BY YOU UNDER THIS AGREEMENT, INCLUDING MY USE OF THE APP, THE WEBSITE, THE MARKET DATA, THE INFORMATION, OR THE CONTENT. YOU, YOUR AFFILIATES, AND YOUR RESPECTIVE OFFICERS, DIRECTORS, AND EMPLOYEES SHALL NOT BE LIABLE BY REASON OF DELAYS OR INTERRUPTIONS OF THE SERVICE OR TRANSMISSIONS, OR FAILURES OF PERFORMANCE OF YOUR SYSTEM, REGARDLESS OF CAUSE, INCLUDING THOSE CAUSED BY GOVERNMENTAL OR REGULATORY ACTION, THE ACTION OF ANY EXCHANGE OR OTHER SELF REGULATORY ORGANIZATION, OR THOSE CAUSED BY SOFTWARE OR HARDWARE MALFUNCTIONS.

Except as otherwise provided by law, You, Apex or any of Your or Apex's affiliates or respective partners, officers, directors, employees or agents (collectively, "Indemnified Parties") shall not be liable for any expenses, losses, costs, damages, liabilities, demands, debts, obligations, penalties, charges, claims, causes of action, penalties, fines and taxes of any kind or nature (including legal expenses and attorneys' fees) (whether known or unknown, absolute or contingent, liquidated or unliquidated, direct or indirect, due or to become due, accrued or not accrued, asserted or unasserted, related or not related to a third party claim, or otherwise) (collectively, "Losses") by or with respect to any matters pertaining to My Account, except to the extent that such Losses are actual Losses and are determined by a court of competent jurisdiction or an arbitration panel in a final non-appealable judgment or order to have resulted solely from Your, Apex's or any of Your or Apex's affiliates' gross negligence or intentional misconduct; further provided, that You or Your Affiliates shall not be liable for any Losses that have resulted from Apex's or any of Apex's affiliates' gross negligence or intentional misconduct. In addition, I agree that the Indemnified Parties shall have no liability for, and I agree to indemnify, defend and hold harmless the Indemnified Parties from all Losses that result from: (i) any noncompliance by Me with any of the terms and conditions of this Agreement; (ii) any third-party actions related to My receipt and use of any Information, Market Data, Content, market analysis, other third-party content, or other such information obtained on the App or Website, whether authorized or unauthorized under this Agreement; (iii)  any third-party actions related to My use of the App or the Website; (iv) My or My agent's misrepresentation or alleged misrepresentation, or act or omission; (v) Indemnified Parties following My or My agent's directions or instructions, or failing to follow My or My agent's unlawful or unreasonable directions or instructions; (vi) any activities or services of the Indemnified Parties in connection with My Account (including any technology services, reporting, trading, research or capital introduction services); or (vii) the failure by any person not controlled by the Indemnified Parties and their affiliates to perform any obligations to Me. Further, if I authorize or allow third parties to gain access to Your services, including My Accounts, I will indemnify, defend and hold harmless You, Your Affiliates, and Your and Your Affiliates' respective officers and employees against any Losses arising out of claims or suits by such third parties based upon or relating to such access and use. Robinhood Financial does not warrant against loss of use or any direct, indirect or consequential damages or Losses to Me caused by My assent, expressed or implied, to a third party accessing My Account or information, including access provided through any other third party systems or sites.

I consent to the use of automated systems or service bureaus by You and Apex and Your respective affiliates in conjunction with My Account, including automated order entry and

14

execution, record keeping, reporting and account reconciliation and risk management systems (collectively "Automated Systems"). I understand that the use of Automated Systems entails risks, such as interruption or delays of service, errors or omissions in the information provided, system failure and errors in the design or functioning of such Automated Systems (collectively, a "System Failure") that could cause substantial damage, expense, or liability to Me. I understand and agree that Indemnified Parties will have no liability whatsoever for any of my Losses arising out of or relating to a System Failure.

I also agree that Indemnified Parties will have no responsibility or liability to Me in connection with the performance or non-performance by any exchange, clearing organization, market data provider, or other third party (including other broker-dealers and clearing firms, and banks) or any of their respective agents or affiliates, of its or their obligations relative to any securities. I agree that Indemnified Parties will have no liability, to Me or to third parties, or responsibility whatsoever for: (i) any Losses resulting from a cause over which Indemnified Parties do not have direct control, including the failure of mechanical equipment, unauthorized access, theft, operator errors, government restrictions, force majeure (as defined in this Agreement), market data availability or quality, exchange rulings or suspension of trading; and (ii) any special, indirect, incidental, consequential, punitive or exemplary damages (including lost profits, trading losses and damages) that I may incur in connection with My use of the App, the Website, Your or Apex's brokerage, and other services provided by Indemnified Parties under this Agreement. Further, if I authorize or allow third parties to gain access to Your services, including My Accounts, I will indemnify, defend and hold harmless You, Your affiliates, and Your and Your affiliates' respective officers and employees against any Losses arising out of claims or suits by such third parties based upon or relating to such access and use.

20. **Mutual Fund Transactions**. In the event that I purchase or hold a mutual fund, I agree to read and understand the terms of its prospectus. I understand that certain mutual funds reserve the right to change their purchasing, switching or redemption procedures or suspend or postpone redemptions under certain market conditions. I further understand that any mutual fund order entered with You is placed by You on a best efforts basis as prescribed and recognized by the individual fund, and that You are not responsible for unexecuted orders due to the failure of any communication system. I agree to be fully responsible for the information contained within the mutual fund prospectus and to hold You, Your Affiliates, and Your and Your Affiliates' respective officers and employees harmless for any deficiencies contained therein. I authorize You to act as My agent in the purchase and redemption of fund shares.

21. **Exchange Traded Funds**. I understand that I should consider the investment objectives and unique risk profile of Exchange Traded Funds ("ETFs") carefully before investing, and that ETFs are subject to risks similar to those of other diversified portfolios. I further understand that leveraged and inverse ETFs may not be suitable for all investors and may increase exposure to volatility through the use of leverage, short sales of securities, derivatives, and other complex investment strategies, and that although ETFs are designed to provide investment results that generally correspond to the performance of their respective underlying indices, they may not be able to exactly replicate the performance of the indices because of expenses and other factors. I further understand that ETFs are required to distribute portfolio gains to shareholders at year end, which may be generated by portfolio rebalancing or the need to meet diversification requirements, and that ETF trading will also generate tax

15

Rhfv1.18 2018.1

consequences. I understand that I can obtain prospectuses from issuers or their third party agents who distribute and make prospectuses available for review. Additional regulatory guidance on ETFs can be found here.

22. **Joint Accounts; Indemnification**. Where I open a joint account, it shall be held by You in joint tenancy with rights of survivorship, unless I notify You otherwise and provide the required documentation. For tenants in common, the interest in the tenancy shall be equal, unless We notify You otherwise. If the Account is a joint account, then in consideration of Your carrying a joint account for Us, We jointly and severally agree to be fully and completely responsible and liable for the Account and to pay on demand any balance due. Each of Us, or any person authorized to act on behalf of the Account under a separate agreement, has full power and authority to make purchases and sales, withdraw funds and securities from, or to do anything else with reference to the Account. You are authorized and directed to act upon instructions received from any of Us. We understand that tax reporting information is processed using the social security number of the person first named in the registration. Each of Us agrees to hold harmless You, Your Affiliates, and Your and Your Affiliates' respective officers and employees from and indemnify them against any Losses arising from or as the result of You, Your Affiliates, and Your and Your Affiliates' officers and employees following the directions or instructions of any of Us, or failing to follow the unlawful or unreasonable directions or instructions of any of Us. You in Your sole discretion may at any time suspend all activity in the Account pending instructions from a court of competent jurisdiction or require that instructions pertaining to the Account or the Property therein be in writing, signed by all of Us. You may recover from the Account or from any of Us such costs as You may incur, including reasonable attorney's fees, as the result of any dispute among Us relating to or arising from the Account. Upon any event that causes a change in the ownership of the Account (divorce, death, assignment, etc.), all remaining accountholders or survivors shall immediately notify You in writing. You may take such actions in the Account as You deem advisable to protect against any Loss under any present or future laws or otherwise. The estate of the decedent or departing accountholder shall be liable together with each of the remaining or surviving accountholders, jointly and severally, to You for any net debit balance or loss in the Account in any way resulting from any transactions initiated prior to notification to You or incurred in the liquidation of the Account or the adjustment of the interests of the respective parties, and for all other obligations pursuant to this Agreement. I understand that Legal ownership of our Accounts shall be governed by the internal laws of the state of residence of the person first named in the registration. I also understand that laws covering joint or community property vary by state and that I am responsible for verifying that the joint registration I choose is valid in My state. Accordingly, I acknowledge that You have encouraged Me to consult My own attorney for this purpose.

In the event of a dispute between or among account holders of which Robinhood Financial has notice, Robinhood Financial reserves the right, but is not obligated, to place restrictions on the Account. For example, if an Account holder requests a restriction be placed on access to funds in the Account because of a pending litigation or dispute between Account holders, Robinhood Financial may prohibit all transfers of funds from the Account, with such restrictions to remain in place until Robinhood Financial actually receives and has a reasonable amount of time to act on appropriate court documentation or a written, notarized instruction signed by all Account holders. In such a case, all Account holders remain liable for any pending settlements at the time of the restriction. Robinhood Financial also may, at the expense of the Account holders, commence or defend any action or proceeding for or in the

nature of interpleader to have the dispute resolved judicially. If a suit or proceeding for or in the nature of interpleader is brought by or against it, Robinhood Financial may deliver the Account into the registry of the court, at which time Robinhood Financial will be deemed to be and will be released and discharged from all further obligations and responsibilities under this Agreement.

23. **Effect of Attachment or Sequestration of Accounts**. You shall not be liable for refusing to obey any orders given by or for Me with respect to any of My Accounts that has or have been subject to an attachment or sequestration in any legal proceeding against Me, and You shall be under no obligation to contest the validity of any such attachment or sequestration.

24. **Event of Death**. It is agreed that in the event of My death or the death of one of the joint Account holders, the representative of My estate or the survivor or survivors shall immediately give You written notice thereof, and You may, before or after receiving such notice, take such proceedings, require such papers and inheritance or estate tax waivers, retain such portion of, or restrict transactions in the Account as You may deem advisable to protect You against any tax, liability, penalty or loss under any present or future laws or otherwise. Notwithstanding the above, in the event of My death or the death of one of the joint Account holders, all open orders shall be canceled, but You shall not be responsible for any action taken on such orders prior to the actual receipt of notice of death. Further, You may in Your discretion close out any or all of the Accounts without awaiting the appointment of a personal representative for My estate and without demand upon or notice to any such personal representative. The estate of any of the Account holders who have died shall be liable and each survivor shall continue to be liable, jointly and severally, to You for any net debit balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by You of the written notice of the death of the decedent or incurred in the liquidation of the Account or the adjustment of the interests of the respective parties, and for all other obligations pursuant to this Agreement. Such notice shall not affect Your rights under this Agreement to take any action that You could have taken if I had not died.

25. **Tax Reporting; Tax Withholding**. The proceeds of sale transactions and dividends paid will be reported to the Internal Revenue Service ("IRS") in accordance with applicable law.

    A. <u>U.S. Persons.</u> This subsection is applicable if I am a U.S. person. Under penalties of perjury, I certify that the taxpayer identification number that I have provided or will provide to You (including any taxpayer identification number on any Form W-9 that I have provided or will provide to You) is My correct taxpayer identification number. I certify that I am not subject to backup withholding and I am a United States Person (including a U.S. resident alien) as such term is defined in section 7701(a)(30) of the Internal Revenue Code of 1986, as amended ("U.S. Person"). If a correct Taxpayer Identification Number is not provided Robinhood Financial, I understand I may be subject to backup withholding tax at the appropriate rate on all dividends, interest and gross proceeds paid to me. Backup withholding taxes are sent to the IRS and cannot be refunded by Robinhood Financial. I further understand that if I waive tax withholding and fail to pay sufficient estimated taxes to the IRS, I may be subject to tax penalties.

Rhfv1.18 2018.1

B. <u>Non-U.S. Persons.</u> This subsection is applicable if I am not a U.S. Person. I certify that I fully understand all the information on any Form W-8BEN that I have submitted or will submit to You. Under penalties of perjury, I declare that (i) I have examined all the information (including all the information in the English language) on any Form W-8BEN that I have submitted or will submit to You and (ii) to the best of My knowledge and belief all such information is true, correct, and complete. I authorize You to provide any such Form W-8BEN to Apex or any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner. I agree that I will submit a new Form W-8BEN to You within 30 calendar days if any certification made on any previously submitted Form W-8BEN becomes incorrect. I understand that the IRS does not require My consent to any provisions of such Form W-8BEN other than the certifications required to establish My status as a non-U.S. Person and, if applicable, obtain a reduced rate of withholding.

26. **Equity Orders and Payment For Order Flow**. SEC rules require all registered broker-dealers to disclose their policies regarding any "payment for order flow" arrangement in connection with the routing of customer orders. "Payment for order flow" includes, among other things, any monetary payment, service, property, or other benefit that results in remuneration, compensation, or consideration to a broker-dealer from any broker-dealer in return for directing orders. I understand that You transmit customer orders for execution to various exchanges or market centers based on a number of factors. These include: size of order, trading characteristics of the security, favorable execution prices (including the opportunity for price improvement), access to reliable market data, availability of efficient automated transaction processing and reduced execution costs through price concessions from the market centers. I further understand that certain of the exchanges or market centers may execute orders at prices superior to the publicly quoted market in accordance with their rules or practices and that while a customer may specify that an order be directed to a particular market center for execution, the order-routing policies, taking into consideration all of the factors listed above, are designed to result in favorable transaction processing for customers. The nature and source of any payments or credits received by You in connection with any specific transactions will be furnished upon written request.

27. **Free Credit Balances**. I authorize You or Apex to invest the free credit balances in My Account in money market funds and, without notice, to redeem My money market fund shares to the extent necessary to satisfy any debits arising in any of My Accounts. Amounts not invested may accrue and may accrue interest on the free credit balances. Any accrued interest will be calculated on a 365-day year and actual days elapsed. The interest rate may vary from time to time without prior notice and may be equal to zero. I understand that Robinhood Financial and Apex shall not be obligated to pay interest on any free credit balance in My Account. I further understand that Robinhood Financial receives rebates from Apex derived from customer margin debt balances, money market accounts, and customer free credit balances.

28. **Fees and Charges**. I understand that there are charges for executing buy and sell orders and for other services provided under this Agreement. I understand that the commissions and fees for trade executions and other services in accounts assigned to a registered representative may be different from the commissions and fees charged to Robinhood

18

Financial's self-directed customers. I also agree to pay all applicable federal, state, local, and foreign taxes. I authorize Robinhood Financial to automatically debit My Account for any such brokerage commissions, charges, fees, and taxes. I agree to pay any such commissions and fees at the then-prevailing rate. I acknowledge that the prevailing rate of commissions and fees may change and that change may occur without notice. I agree to be bound by such changes. I specifically agree to pay a reasonable rate of interest on the principal amount of any debit balance carried with respect to My Account. Interest may be charged against My Account in connection with cash withdrawals, if the proceeds from a security sale are disbursed before the regular settlement date of the sale transaction and late payments. If Robinhood Financial receives My payment for securities purchases in a cash account after the settlement date, I shall be charged a late payment fee of $25 plus a daily interest charge on the debit balance until Robinhood Financial is fully paid. Charges will be calculated using a prevailing interest rate, currently set to the daily rate of "Broker's Call" + 1%. The charges shall accrue until paid and posted to My Account on the day following payment of the debit balance. Interest due on My Account is payable on demand. I also agree to pay such expenses incurred by You in connection with collection of any unpaid balance due on My Accounts including attorney's fees allowed by law.

29. **ACH and International Wire Transfers**.

    A.  <u>ACH Transfers.</u> I authorize Robinhood Financial, at its discretion and without further prior notice, to utilize an electronic check process or Automated Clearing House ("ACH") facility to draft funds in the amount of any of My checks payable to Robinhood Financial, its agents or assigns. Money deposited via ACH is normally not available for withdrawal for five (5) to ten (10) business days. Within calendar 63 days of the date of My ACH deposit, My funds may only be withdrawn to the bank account from which such funds were deposited. I understand that for the ACH transfers to be established, at least one common name must match exactly between My Robinhood Financial and bank accounts. To send and receive ACHs, My bank must be a member of the ACH system. For ACH transactions, I hereby grant You limited power of attorney for purposes of redeeming any shares in My Account and direct You to accept any orders to make payments to an authorized bank account and to fulfill these orders through the redemption of shares in My Account. In addition, if I or any joint account owner decides to rescind an ACH transfer, I hereby direct and grant You power of attorney to redeem any shares necessary to fulfill and make such rescission regardless of whether I incur any loss.

    An ACH bank reversal may occur when (A) there are insufficient funds in My bank account, (B) there is a duplicate transaction, (C) the transaction is denied, or (D) the type of account is incorrect. I acknowledge that in the event of an ACH bank reversal, I will incur a fee. Before making an ACH transfer, I agree to check Robinhood Financial's most recent Commissions and Fees Schedule, available at https://brokerage-static.s3.amazonaws.com/assets/robinhood/legal/RHF%20Retail%20Commisions%20and%20Fees%20Schedule.pdf. I agree that I am solely liable and responsible for any ACH reversal fees that I incur.

    B.  <u>International Wire Transfers; Indemnification.</u>

19

If I arrange for a wire transfer to be directed to My Account, I am responsible for ensuring that such wire is initiated properly, addressed properly, and bears appropriate wire instructions in exactly the form required by You for identification of Me and My Account. I understand that any erroneous, mismatched, or incomplete identifying information on an incoming wire transfer may result in such wire being rejected, lost, posted to an incorrect Account, or returned to the originating bank without notice to Me and I agree to indemnify and hold You, Your Affiliates, and Your and Your Affiliates' respective officers and employees harmless from any Losses arising out of or relating to any erroneous, mismatched or incomplete identifying information on an incoming wire.

By sending You a wire transfer request, I authorize You and Your bank service provider to act on My behalf to initiate the wire transfer or check disbursement. It is My responsibility to ensure that My instructions are accurate before requesting You to initiate a wire transfer. In order to complete My wire transfer request, My name and My address on file in My Account must match what I have on file at the recipient bank; and I must provide the correct recipient bank's name, recipient bank's address, recipient bank account number, and BIC/SWIFT code.

In accepting wire transfer requests, You may rely upon the identifying number (such as routing number, account number and BIC/SWIFT code) of the recipient, the recipient's financial institution or any intermediary bank, as instructed. Also, the recipient's bank in the wire transfer requests may make payment on the basis of the identifying number even if it identifies a person or entity different from the named recipient. I understand that, if I provided You with incorrect instructions or recipient information, I may lose the amount of the wire transfer. I agree to indemnify and hold You, Your Affiliates, and Your and Your Affiliates' respective officers and employees harmless from any Losses arising out of or relating to any erroneous, mismatched or incomplete identifying information on an outgoing wire.

I must have sufficient available balance in My Account to cover the wire transfer amount and the wire transfer fee at the time I send You the wire transfer request. You will not be obligated to make any wire transfer unless I have sufficient available balance in My Account to cover the wire transfer amount and the wire transfer fee at the time I send You the wire transfer request. You have the right to neither send nor process any wire transfer request without notice in the event of insufficient available funds. You also may reject any wire transfer request for any reason or no reason.

All wire transfer requests provided to You are subject to Your review and acceptance. Your confirmation, if any, of the receipt of My wire transfer request is an indication only that You have received My wire transfer request. You reserve the right to refuse to pay any wire transfer recipient whom I designate in the wire transfer request.

A wire transfer request cannot be amended or canceled after You receive it. You may in Your sole discretion attempt to abide by a subsequent request for a change, but You are not obligated to do so. Any acceptance by You of a request by Me to amend, recall, or trace a wire transfer is made conditionally upon the express understanding by Me that You cannot guarantee fulfillment of such a request and that You are not responsible for any failure to change, recall, or trace such wire transfer. I agree to

indemnify and hold You, Your Affiliates, and Your and Your Affiliates' respective officers and employees harmless from any Losses arising out of or relating to an attempt to amend or cancel a wire transfer.

All wire transfer requests received by You after the cutoff time will be reviewed and processed within a commercially reasonable time, generally within one business day. Wire transfer requests entered after the cutoff time may start to process immediately, in Your sole discretion. I understand that any cutoff times referenced in this Agreement reflect the times displayed on Your internal system clocks and may not necessarily be synchronized with the internal clock displayed on My personal device. For this reason, You suggest that I send any wire transfer requests to You sufficiently in advance of such cutoff times to eliminate the possibility of missing the cutoff.

Notwithstanding any information I provide on My wire transfer request to the contrary, You reserve the right to use any funds transfer system and intermediary bank in the execution of My wire transfer request, and You may use any means of executing wire transfer requests that You deem reasonable in the circumstances. I authorize such funds transfer systems and any intermediary or recipient banks to deduct fees from the funds transferred. I understand that You or any intermediary or recipient banks may apply their prevailing currency exchange rate(s) in the conversion and payment of funds. I am aware that currency exchange rates fluctuate over time and I accept the risks of such fluctuation. I also understand that all incoming and outgoing wire transfers must be in U.S. dollars.

I agree that I will not hold You or Your Affiliates liable for any damages resulting from an intermediary or recipient bank's decision not to accept any wire transfer. You and Your Affiliates are not responsible for any fees, delay, misplacement, loss, errors, any act or failure to act by You, Your Affiliates, or an intermediary or recipient bank or any other third party. I agree that My wire transfers are subject to the fees set forth in Your Commissions and Fees schedule, available at https://brokerage-static.s3.amazonaws.com/assets/robinhood/legal/RHF%20Retail%20Commisions%20and%20Fees%20Schedule.pdf. I also agree that I am solely responsible for all such fees, including wire transfer reversal fees for both incoming and outgoing wire transfer requests. Additionally, I agree that I am solely responsible for any additional fees that any originating, intermediary, or recipient banks may charge.

30. **Electronic Delivery of Trade and Account Information; Notice**. All communications, notices, legal disclosures, and other materials related to My Account or this Agreement, including account statements, trade confirmations, margin calls, notices, disclosures, regulatory communications and other information, documents, data and records regarding My Account (the "Communications"), or an alert that any such Communication has been posted to the secure section of the Website or the App, and is available for viewing, may be sent to Me at the mailing address for My Account or the e-mail address that I have given to You in My account application (to either e-mail address in the case of joint accounts where each account holder has given an e-mail address; notice to both e-mail addresses is not required) or at such other address as I may hereafter give You in writing or by e-mail at least ten (10) calendar days prior to delivery, and all communications so sent, whether in writing or otherwise, shall be deemed given to Me personally, whether actually received or not.

31. **Arbitration.**

**A. This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:**

**(1) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
**(2) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**
**(3) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**
**(4) The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**
**(5) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
**(6) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**
**(7) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.**

**B. Any controversy or claim arising out of or relating to this Agreement, any other agreement between Me and You, any Account(s) established hereunder, any transaction therein, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR"). I agree to arbitrate any controversy or claim before FINRA DR in the State of California.**

**C. This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws. If I am a foreign national, non-resident alien, or if I do not reside in the United States, I agree to waive My right to file an action against You in any foreign venue.**

**D. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.**

32. **API**

    A. <u>Overview; Definitions</u>. Robinhood Financial and Robinhood Markets, Inc. (collectively, "Robinhood") may, in Robinhood's sole discretion, provide third parties with an application programming interface and other materials in accordance with any accompanying documentation (collectively, the "API Package") (such third parties, "API Licensees"), to make available certain features and functionality of Robinhood's mobile applications, websites, or technology platform via the API Licensees' products (such

Rhfv1.18 2018.1

products, the "Licensee Products"). The API Package and the Licensee Products are collectively referred to as the "API Products". "Personal Information" means My personally identifiable information (including username, logon password, financial information, trade data, and other financial information) and all data exchanged between Robinhood and the API Products.

B.  <u>Access to My Personal Information</u>. Through My use of any API Products, I may be providing API Licensees with access to My Account and Personal Information. By using any API Products, I acknowledge that such API Products may employ security, policies, procedures and systems of API Licensees which may or may not be less stringent and secure than Robinhood's policies, procedures and systems. I agree that My use of any API Products shall be subject to the terms and conditions of this Agreement, in addition to any other agreements which I executed with respect to any such API Products. I understand and agree that any end user agreement that I executed with any API Licensee is concluded between Me and such API Licensee only, and not with Robinhood; and such API Licensee, not Robinhood, is solely responsible for such Licensee Product and the content thereof. I understand and agree that the API Products may deliver Personal Information to Robinhood, and that Robinhood is authorized to receive and store such Personal Information consistent with Robinhood's then-in-effect policies and procedures. Further, I agree that the API Products may request Personal Information stored by Robinhood, and I consent to Robinhood's disclosure of such Personal Information to the API Products.

C.  <u>No Recommendations</u>. To the extent the Licensee Products or API Licensees express opinions or make recommendations, I understand that such opinions and recommendations are expressed solely by API Licensees and are not the opinions or recommendations of Robinhood. The existence of the API Products and Robinhood's consent to any connectivity between any Licensee Products and Robinhood's technology, the App, the Website, or trading platform(s) does not constitute (i) any recommendation by Robinhood to invest in any security or utilize any investment strategy; or (ii) any representation, warranty, or other guarantee by Robinhood as to the present or future value or suitability of any sale, trade, or other transaction involving any particular security or any other investments. The existence of any and all information, tools and services provided by API Licensees or by the Licensee Products shall not constitute Robinhood's endorsement of API Licensees or the Licensee Products.

D.  <u>Data Provided by Robinhood to API</u>. From time to time, and subject to then-in-effect agreements between Robinhood and API Licensees, Robinhood may, in its own discretion, make market data feeds received from third parties available via the API Products. Robinhood does not make any guarantees in regard to such market data feeds. Furthermore, API Licensees or Licensee Products may make available to Me market data feeds independent of Robinhood. I am aware that from time to time that there may be discrepancy between the market data presented on the App or Website and information provided by any API Products due to a variety of reasons, including the time to update and transmit such data to a mobile application or website and latency caused by such API Product's or My local environment (such as computer set up, connection speed, etc.). Robinhood is not responsible for the accuracy of any market data displayed on any API Products or otherwise made available by API Licensees.

Rhfv1.18 2018.1

E.   Risks; No Liability. I acknowledge that there may be latency between the time an order (or other Personal Information) is submitted from the API Products and the time such order or Personal Information is received by Robinhood. Latency may also affect order modification and order cancellation requests. The time an order or a request is actually received by Robinhood (including for execution) will be the official time, including for the purposes of routing the order to the market for execution. In addition, all orders submitted to Robinhood are subject to order vetting by Robinhood. Orders created and submitted through any API Products are not vetted until they are received by Robinhood. It is possible that Robinhood may reject an order placed through any API Products. Robinhood cannot guarantee that any order will be accepted when such order is routed to the market for execution, and Robinhood cannot guarantee that notifications and Personal Information provided to Me by Robinhood will be successfully delivered to or displayed by any API Products.

Without limiting the generality of any other terms in this Agreement, I agree that:

(i) Robinhood or its Affiliates shall not be liable for any Losses as a result of any issues addressed in this Section 32 of this Agreement, nor shall Robinhood or its Affiliates be liable for any Losses realized for technical issues involving any API Products or API Licensee technology or product offerings (including system outages or downtime).

(ii) Robinhood or its Affiliates shall not be responsible for any investment research provided by any API Licensee or any Licensee Products.

(iii) Robinhood or its Affiliates makes no representations, warranties or other guarantees as to the accuracy, timeliness or efficacy of any market data, information, or other functionality made available by any API Licensee or any API Products.

F.   Intellectual Property. My use of any API Products will not confer to Me any title, ownership interest or intellectual property rights that otherwise belongs to Robinhood or any of its affiliates. The API Package, including content, is protected under U.S. patent, copyright laws, international treaties or conventions, and other laws and will remain Robinhood's exclusive property, as applicable. Names, logos, and all related product and service names, design marks, and slogans displayed by or relating to Robinhood or any of its Affiliates or API Licensees in the context of the API Products shall remain the property of the respective owner, and use of such property by Robinhood or any API Licensee in marketing or provision of any API Products does not grant ownership of or entitle Me to use any such name or mark in any manner.

G.   User's Representations and Warranties. I represent and warrant that:
   (i)      By virtue of utilizing any API Products, I consent to and accept any risk associated with Robinhood's sharing of Personal Information with any API Licensee and shall not hold Robinhood, its Affiliates, or their respective officers, directors, or employees responsible for any Losses resulting from the sharing of such Personal Information.
   (ii)     I agree that My use of any API Products or API Licensee's content, information, technology, or functionality is at My own risk.

24

Rhfv1.18 2018.1

(iii)     I agree that Robinhood may revoke any API Licensee or API Products'
authorization at any time, for any reason, with or without cause and without prior
notice to Me.

33. **Electronic Signatures; Modifications to the Agreement**. I agree to transact business with
You electronically. By electronically signing an application for an Account, I acknowledge and
agree that such electronic signature is valid evidence of My consent to be legally bound by
this Agreement and such subsequent terms as may govern the use of Your services. The use
of an electronic version of any document fully satisfies any requirement that the document be
provided to Me in writing. I accept notice by electronic means as reasonable and proper
notice, for the purpose of any and all laws, rules and regulations. I acknowledge and agree
that Robinhood Financial may modify this Agreement from time to time and I agree to consult
the Website from time to time for the most up-to-date Agreement. The electronically stored
copy of this Agreement is considered to be the true, complete, valid, authentic and
enforceable record of the Agreement, admissible in judicial or administrative proceedings to
the same extent as if the documents and records were originally generated and maintained in
printed form. I agree to not contest the admissibility or enforceability of Robinhood Financial's
electronically stored copy of the Agreement.

34. **Consent to Electronic Delivery of Documents**.

A.   Consent. **By agreeing to electronic delivery, I am giving My informed consent to
electronic delivery of all Account Documents, as defined below, other than those I
have specifically requested to be delivered in paper form.** "Account Documents"
include notices, disclosures, current and future account statements, regulatory
communications (such as prospectuses, proxy solicitations, and privacy notices), trade
confirmations, tax-related documents, and any other information, documents, data, and
records regarding My Account, this Agreement (including amendments to this
Agreement), and the services delivered or provided to Me by Robinhood Financial, the
issuers of the securities or other property in which I invest, and any other parties. I agree
that I can access, view, download, save, and print any Account Documents I receive via
electronic delivery for My records.

B.   Electronic Delivery System. I acknowledge that Your primary methods of communication
with Me include (A) posting information on the Website, (B) providing information via the
App, (C) sending email(s) to My email address of record, and, to the extent required by
law, (D) providing Me with notice(s) that will direct Me to the App or the Website where I
can read and print such information. Unless otherwise required by law, You reserve the
right to post Account Documents on the Website without providing notice to Me. Further,
You reserve the right to send Account Documents to My postal or email address of
record, or via the App or Website. I agree that all Account Documents provided to Me in
any of the foregoing manner is considered delivered to Me personally when sent or
posted by Robinhood Financial, whether I receive it or not.

All e-mail notifications regarding Account Documents will be sent to My e-mail address of
record. I agree to maintain the e-mail address that I have provided You until I provide You
with a new one. I understand that e-mail messages may fail to transmit promptly or
properly, including being delivered to SPAM folders. I further understand that it is My sole
responsibility to ensure that any emails from You or Your Affiliates are not marked as

25

SPAM. Regardless of whether or not I receive an e-mail notification, I agree to check the Website regularly to avoid missing any information, including time-sensitive or otherwise important communication. If I authorize someone else to access the e-mail account I have provided You, I agree to tell them to share the Account Documents with Me promptly, and I accept the risk that they will see My sensitive information.  I understand that if I use a work e-mail address or computing or communications device, My employer or other employees may have access to the Account Documents.

Additionally, I acknowledge that the Internet is not a secure network and agree that I will not send any confidential information, including Account numbers or passwords, in any unencrypted e-mails. I also understand that communications transmitted over the Internet may be accessed by unauthorized or unintended third parties and agree to hold You, Your Affiliates, and Your and Your Affiliates' respective officers and employees harmless for any such access regardless of the cause.

I agree to promptly and carefully review all Account Documents when they are delivered and notify Robinhood Financial in writing within five (5) calendar days of delivery if I object to the information provided (or other such time specified herein). If I fail to object in writing within such time, Robinhood Financial is entitled to treat such information as accurate and conclusive. I will contact You to report any problems with accessing the Account Documents.

C.  <u>Costs</u>. Potential costs associated with electronic delivery of Account Documents may include charges from Internet access providers and telephone companies, and I agree to bear these costs. Robinhood Financial will not charge Me additional online access fees for receiving electronic delivery of Account Documents.

D.  <u>Archival</u>. Upon My request, I may obtain copies of up to six (6) prior years of account statements, and three (3) prior years of trade confirmations.

E.  <u>Revocation of Consent</u>. Subject to the terms of this Agreement, I may revoke or restrict My consent to electronic delivery of Account Documents at any time by notifying Robinhood Financial in writing of My intention to do so. I also understand that I have the right to request paper delivery of any Account Document that the law requires Robinhood Financial to provide Me in paper form. Robinhood Financial will not treat My request for paper copies as a withdrawal of My consent to electronic delivery of Account Documents. I understand that if I revoke or restrict My consent to electronic delivery of Account Documents or request paper delivery of same, Robinhood Financial, in its sole discretion, may charge Me a reasonable service fee for the delivery of any Account Document that would otherwise be delivered to Me electronically, restrict or close My account, or terminate My access to Robinhood Financial's services. I understand that neither My revocation or restriction of consent, My request for paper delivery, nor Robinhood Financial's delivery of paper copies of Account Documents will affect the legal effectiveness or validity of any electronic communication provided while My consent was in effect.

F.  <u>Duration of Consent</u>. My consent to receive electronic delivery of Account Documents will be effective immediately and will remain in effect unless and until either I or Robinhood Financial revokes it. I understand that it may take up to three (3) business days to

26

process a revocation of consent to electronic delivery, and that I may receive electronic notifications until such consent is processed.

G.  Hardware and Software Requirements. I understand that in order to receive electronic deliveries, I must have access to a computer or Mobile Device with Internet access, a valid e-mail address, and the ability to download such applications as Robinhood Financial may specify and to which I have access. I also understand that if I wish to download, print, or save any information I wish to retain, I must have access to a printer or other device in order to do so.

H.  Consent and Representations. I hereby agree that I have carefully read the above information regarding informed consent to electronic delivery and fully understand the implications thereof. Additionally, I hereby agree to all conditions outlined above with respect to electronic delivery of any Account Document. I will maintain a valid e-mail address and continue to have access to the Internet. If My e-mail address changes, I agree to immediately notify Robinhood Financial of My new e-mail address in writing.

35.  **Miscellaneous Provisions.** The following provisions shall also govern this Agreement:

A.  Interpretation. The heading of each provision hereof is for descriptive purposes only and shall not be (1) deemed to modify or qualify any of the rights or obligations set forth herein or (2) used to construe or interpret any of the provisions hereunder. When a reference is made in this Agreement to a Section, such reference shall be to a Section of this Agreement unless otherwise indicated. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." The word "or," when used in this Agreement, has the inclusive meaning represented by the phrase "and/or." Unless the context of this Agreement otherwise requires: (i) words using the singular or plural number also include the plural or singular number, respectively; and (ii) the terms "hereof," "herein," "hereunder" and derivative or similar words refer to this entire Agreement. References to any law shall be deemed to refer to such law as amended from time to time and to any rules or regulations promulgated thereunder.

B.  Binding Effect; Assignment. This Agreement shall bind My heirs, assigns, executors, successors, conservators and administrators. I may not assign this Agreement or any rights or obligations under this Agreement without first obtaining Your prior written consent. You may assign, sell, or transfer My Account and this Agreement, or any portion thereof, at any time, without My prior consent.

C.  Severability. If any provisions or conditions of this Agreement are or become inconsistent with any present or future law, rule, or regulation of any applicable government, regulatory or self-regulatory agency or body, or are deemed invalid or unenforceable by any court of competent jurisdiction, such provisions shall be deemed rescinded or modified, to the extent permitted by applicable law, to make this Agreement in compliance with such law, rule or regulation, or to be valid and enforceable, but in all other respects, this Agreement shall continue in full force and effect.

D.  Website Postings. I agree and understand that Robinhood Financial may post other specific agreements, disclosures, policies, procedures, terms, and conditions that apply

27

to My use of the App, the Website, or My Account on the Website ("Website Postings"). I understand that it is My continuing obligation to understand the terms of the Website Postings, and I agree to be bound by the Web Postings as are in effect at the time of My use.

E.  Entirety of Agreement. This Agreement, any attachments hereto, other agreements and policies referred to in this Agreement (including the Website Postings), and the terms and conditions contained in My Account statements and confirmations, contain the entire agreement between Robinhood Financial and Me and supersede all prior or contemporaneous communications and proposals, whether electronic, oral, or written, between Robinhood Financial and Me, provided, however, that any and all other agreements between Robinhood Financial and Me, not inconsistent with this Agreement, will remain in full force and effect.

F.  Amendment. You may at any time amend this Agreement without prior notice to Me. The current version of the Agreement will be posted on the Website and My continued Account activity after such amendment constitutes My agreement to be bound by all then-in-effect amendments to the Agreement, regardless of whether I have actually reviewed them. Continued use of the App, the Website or any other Robinhood Financial services after such posting will constitute My acknowledgment and acceptance of such amendment. I agree to regularly consult the Website for up-to-date information about Robinhood Financial services and any modifications to this Agreement. You are not bound by any verbal statements that seek to amend the Agreement.

G.  Termination. You may terminate this Agreement, or close, deactivate, or block access to My Account at any time in Your sole discretion. I will remain liable to You for all obligations incurred in My Account, pursuant to this Agreement, or otherwise, whether arising before or after termination. I may terminate this Agreement after paying any obligations owed upon written notice. This Agreement survives termination of My Account.

H.  No Waiver; Cumulative Nature of Rights and Remedies. I understand that Your failure to insist at any time upon strict compliance with any term contained in this Agreement, or any delay or failure on Your part to exercise any power or right given to You in this Agreement, or a continued course of such conduct on Your part, shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise. All rights and remedies given to You in this Agreement are cumulative and not exclusive of any other rights or remedies to which You are entitled.

I.  International Customers. The products and services described on the Website are offered only in jurisdictions where they may be legally offered. Neither the Website nor the App shall be considered a solicitation for or offering of any investment product or service to any person in any jurisdiction where such solicitation or offering would be illegal. I understand that You, in Your sole discretion, may accept unsolicited accounts from non-U.S. residents, depending on the country of residence and other factors. I understand that You are based in the United States and that You accept only U.S. currency in Your customer accounts.

Rhfv1.18 2018.1

J.  <u>Governing Law</u>. This Agreement and all transactions made in My Account shall be governed by the laws of the State of California (regardless of the choice of law rules thereof), except to the extent governed by the federal securities laws, FINRA Rules, and the regulations, customs and usage of the exchanges or market (and its clearing house) on which transactions are executed.

ACCEPTED AND AGREED: I acknowledge that I have read the preceding terms and conditions of this Agreement, that I understand them and that I hereby manifest my assent to, and my agreement to comply with, those terms and conditions by clicking "Submit Application." **I ALSO UNDERSTAND THAT BY CLICKING "SUBMIT APPLICATION" I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 31 HEREIN**.

Rhfv1.18 2018.1